```
 1                  UNITED STATES BANKRUPTCY COURT

 2               FOR THE NORTHERN DISTRICT OF TEXAS

 3                         DALLAS DIVISION

 4                                  )
     WITH PURPOSE, INC.             )
 5                                  ) CASE NO. 23-30246-mv17
              DEBTOR.               ) DALLAS, TEXAS
 6       _____    ) May 22, 2023
                                    ) 1:35 P.M.
 7                                  )
                                    )
 8

 9

10                        MOTIONS HEARINGS

11          BEFORE THE HONORABLE MICHELLE V. LARSON
                UNITED STATES BANKRUPTCY JUDGE
12

13

14   APPEARANCES:

15

     JACKSON WALKER, LLP
16
         ATTORNEYS FOR TOBY NEUGEBAUER
17
         2323 Ross Ave, Suite 600
18
         Dallas, TX  75201
19
     BY:  KENNETH STOHNER, JR, ESQ.
20        CHRISTIAN ELLIS, ESQ.
          JOSH EPPICH, ESQ.
21        C. JOSH OSBORNE, ESQ.
          JOSH ROMERO, ESQ.
22

23

24
       Proceedings recorded by electronic sound recording; transcript
25                 produced by transcription service.
```

```
 1   APPEARANCES, CONTINUED:

 2

 3   ROGGE DUNN GROUP, PC

          ATTORNEYS FOR AYERS FAMILY HOLDINGS, LLC.
 4
          500 N. Akard Street, Suite 1900
 5
          Dallas, TX  75201
 6
     BY:  CHASE POTTER, ESQ.
 7

 8   MUNSCH HARDT KOPF & HARR PC

 9        ATTORNEYS FOR SCHOTT M. SEIDEL, TRUSTEE

10        500 N. Akard Street, Suite 3800

11        Dallas, TX  75201

12   BY:  THOMAS DANIEL BERGHMAN, ESQ.

13
     UNITED STATES TRUSTEE:
14
          Attorneys for United States Trustee
15
          U.S. Trustee
16
          1100 Commerce Street, Room 976
17
          Dallas, TX  75202
18
     BY:  MEREDITH KIPPIS, ESQ.
19

20
     ALSO PRESENT:  SCOTT SEIDEL, MR. ROMERO
21

22   COURT RECORDER:    HAWAII JENG

23
     TRANSCRIPTION SERVICE:   ACORN TRANSCRIPTS, LLC
24                            3572 Acorn Street
                              North Port, FL  35286
25                            (800) 750-5747
```

1

2

C A L E N D E R

3

4   HEARING re Motion to set hearing (related documents 44 Motion
    for Emergency Hearing on Emergency Motion for Entry of an Order
    Enforcing the Automatic Stay Against James Nicholas Ayers, the
5   J. Nicholas Ayers 2021 Irrevocable Trust, and Ayers Family
    Holding, LLC Filed by Interested Party Toby Neugebauer
6
    HEARING re Emergency Motion for Entry of an Order Enforcing the
7   Automatic Stay Against James Nicholas Ayers, the J. Nicholas
    Ayers 2021 Irrevocable Trust, and Ayers Family Holdings, LLC
8   Filed by Interested Party Toby Neugebauer

9   HEARING re Motion for expedited hearing (related documents 51
    Motion for leave) - Motion for Emergency Hearing Filed by
10  Trustee Scott M. Seidel

11  HEARING re Trustee's Emergency Motion for Approval and Entry of
    Stipulation and Agreed Order Regarding Arbitration Filed by
12  Trustee Scott M. Seidel

13

14

15

16

17

18

19

20

21

22

23

24

25

WITH PURPOSE, INC., DEBTOR

1          DALLAS, TEXAS, MONDAY, MAY 22, 2023; 1:35 P.M.

2          THE CLERK:  All rise.  The United States Bankruptcy

3    Court for the Northern District of Texas, Dallas Division, is

4    now in session.  The Honorable Michelle Larson presiding.

5          THE COURT:  Please be seated.  Good afternoon

6    everyone.  We're here on our 1:30 docket.  We have a number of

7    matters set on -- on the 1:30 docket.  Case Number 23-30246,

8    With Purpose, Inc.

9          I'll take appearances for the record.  I'll start

10   with those in the courtroom.

11         MR. BERGHMAN:  Good afternoon, Your Honor.  Thomas

12   Berghman with Munsch Hardt in Dallas, for the trustee, Scott

13   Seidel.  I believe he is going to try to dial in, but as it's

14   an emergency, he's trying to clear some things off his plate.

15         THE COURT:  Okay. Thank you very much, Mr. Berghman.

16         MR. SEIDEL:  Trustee's here, Your Honor.  Thank you,

17   Your Honor.

18         THE COURT:  Good afternoon, Mr. Seidel.

19         MR. SEIDEL:  Afternoon.

20         MR. STOHNER:  Good afternoon, Your Honor.  Ken

21   Stohner from Jackson Walker on behalf of Toby Neugebauer.

22         THE COURT:  Good afternoon.

23         MR. ELLIS:  Your Honor, my name is Christian

24   Ellis. I also represent Toby Neugebauer in the arbitration

25   proceeding.

WITH PURPOSE, INC., DEBTOR

1        THE COURT:  Okay.  Thank you very much.  Good

2   afternoon.

3        MR. ELLIS:  Good afternoon.

4        THE COURT:  I'll now take appearances from Webex.

5        MR. POTTER:  Good afternoon, Your Honor.  This is

6   Chase Potter on behalf of the Ayers party, and that's James

7   Nicholas Ayers.  The J. Nicholas Ayers 2021 Irrevocable Trust

8   and Ayers Family Holdings, LLC.

9        I wish I could be there in person.  It actually, this

10  all occurred at the same time I'm taking a family vacation to

11  Disney World with my family, so that's where I'm appearing

12  from today.

13       THE COURT:  Okay.  So much for the happiest place on

14  Earth, right?  All right.

15       We are having a little bit of trouble with your

16  audio, Mr. Potter.  I could understand everything you said.

17  Let me see if there's anything that we can do to help that.

18       MR. POTTER:  Thank you, Judge.

19       THE COURT:  Okay.  Thank you.

20       Is he on audio and video.

21       THE CLERK:  Yes.  His audio goes in and out.  His

22  bandwidth is limited.

23       THE COURT:  Okay.  Should we have him disconnect from

24  video, perhaps?

25       THE CLERK:  Yes.

WITH PURPOSE, INC., DEBTOR

1      THE COURT:  Okay.  Thank you.

2      So, Mr. Potter, what I'll ask you to do is turn off

3  your video for the hearing and we'll just do audio and

4  hopefully, that will improve the bandwidth.

5      MR. POTTER:  Wonderful, thank you.

6      THE COURT:  Okay.  Thank you.  And we've now reached

7  the extent of my technological experience -- expertise.  So

8  there we go.  All right.

9      Is there anyone else who would like to make an

10  appearance?

11      MS. KIPPIS:  Good afternoon, Your Honor.  Meredith

12  Kippes on behalf of the United States Trustee.  Your Honor, I

13  do not anticipate having much to say, but as this role of the

14  U.S. Trustee, I might have something to say.

15      THE COURT:  Excellent.  Thank you, Ms. Kippes.  Very

16  nice to see you.

17      All right.  Anyone else?  All right.  Hearing no

18  further takers, I'll take opening if there's been any kind of

19  global resolution.  If not, I know we do have two motions to

20  expedite given the incredibly short notice on both of the

21  motions.

22      As I have done in the past, I said both of the

23  Motions to Expedite and the Substantive Motions for today with

24  the intention to take up the Motions to Expedite in first

25  instance.

WITH PURPOSE, INC., DEBTOR

1        But again, if there is anything towards a global

2    resolution or anything like that, I'll hear it first.

3        Mr. Stohner?

4        MR. STOHNER:  Thank you, Your Honor.

5        I do want to express appreciation on behalf of our

6    client for the Court's accommodation in having a hearing today

7    on short notice.

8        The, I -- I believe the matters that are before Your

9    Honor, there's about, well, there are two Motions to Expedite.

10       One is the Motion to Expedite we filed with regard to

11   the Motion, Emergency Motion to Enforce the Automatic Stay.

12   And then, Mr. Berghman filed a Motion to Expedite related to

13   his Motion to Approve Stipulation and Order.

14       The -- there is, and, of course, then, once the Court

15   rules on those if -- if the Court proceeds forward, there is

16   our Motion to Enforce the Stay.  There's the Trustee's Motion

17   for Stipulation and Order.

18       I will note that the -- I received a note from

19   Ms. Harden that with regard to the Order on Sealing, that that

20   would be considered an interim order because it was entered

21   before we filed our response.

22       I don't think that it's urgent that that be taken up

23   today, just because the other matters may be more, are more

24   substantive than that, but that is there, and if Your Honor

25   desires, we can address that after the other two matters.

WITH PURPOSE, INC., DEBTOR

1      THE COURT:  Right.  You know, if parties are prepared

2  to address it, I'm happy to hear the parties' comments.  It's

3  not set for today, but if the parties want to address it, we

4  will.

5      As you're aware, the order with respect to the

6  sealing of your proper motion was done on an interim basis to

7  allow the parties to have further time to brief it, the Motion

8  to Seal.

9      The Ayers' filings, was not technically an interim

10  order, but, of course, the Court has authority to lift a seal

11  at any time.

12      MR. STOHNER:  Right.  So we are prepared to address

13  the Motion to Expedite if that's what Your Honor wants to

14  proceed with.

15      THE COURT:  If we are still in disagreement --

16      MR. STOHNER:  Well, let me --

17      THE COURT:  -- because I know that, as I read the

18  stipulation, and I'm eager to hear from the parties, but as I

19  read the stipulation, it resolves some issues, it does not

20  resolve all the issues, and it doesn't resolve whether or not

21  the depo would go forward tomorrow.

22      So if that is the case, then again, I'll hear the

23  Motions to Expedite.

24      MR. STOHNER:  I think that is the case.  I will

25  report that pursuant to Your Honor's direction through Ms.

WITH PURPOSE, INC., DEBTOR

1    Harden, that the parties did confer yesterday afternoon by

2    telephonic conference and discussed the possibilities to delay

3    this for more time, Your Honor, and the parties to present,

4    but were unable to reach agreement regarding that.

5          Then with regard then, Your Honor, to our Motion to

6    Expedite, the matters - the Motion to Expedite - is somewhat

7    intertwined with the Motion itself, but I'll try not to get

8    too deeply into the -- the underlying Emergency of Motion to

9    Enforce Stay.

10         But some of it will be, Your Honor, I don't know if

11   you had a chance, did you receive our exhibits?

12         THE COURT:  I received your witness and exhibit

13   lists, while I have them, I have not reviewed them, unless

14   they were attached to the original filing.

15         MR. STOHNER:  I sent these out to the parties, and I

16   have extra copies here.  I will say that when we filed and

17   sent the -- we filed the exhibits just because Your Honor had

18   entered sealing motions, we filed the exhibits under seal.

19         I then did send an email to all counsel of record

20   representing parties to include the unsealed exhibits so they

21   would have those.

22         I will report that as to both Mr. Dunn and Mr.

23   Potter, I ultimately received a return that it was too big.  I

24   mean, everybody else received it, but for whatever reason,

25   maybe their firm's system, did not receive that.  So that is

10

WITH PURPOSE, INC., DEBTOR

1    the situation that we're in.

2              THE COURT:  But they'll have access to them on ECF.

3              MR. STOHNER:  And I will say, and represent to Your

4    Honor, the exhibits in the volume, I just thought it would

5    make for an easier presentation, are all exhibits to either

6    our motion that we filed, or they are exhibits to the Ayers'

7    party response that they filed, except for the one document,

8    and that's the Scheduling Order entered in the arbitration

9    proceeding.

10             THE COURT:  Okay.

11             MR. STOHNER:  But otherwise, so they are all, the

12   parties have seen them all, those exhibits.

13             THE COURT:  Okay.

14             MR. STOHNER:  So I would begin, Your Honor, because

15   they are filings that have been made with the Court, relative

16   to the two motions and responses, I would offer Exhibits 1

17   through 7.

18             THE COURT:  Okay.  Is there any objection to the

19   admission of Exhibits 1 through 7?  And for sake of the

20   record, this is the Witness and Exhibit List filed at Docket

21   59.

22             MR. POTTER:  Your Honor, this is Chase Potter on the

23   Webex.  The Ayers' parties have no objection.  Just wanted to

24   insure, since it's all done so quickly, that it was filed

25   under seal, that's my understanding, so that it doesn't

WITH PURPOSE, INC., DEBTOR

1    prejudice our rights under the Motions to Seal.

2            THE COURT:  Okay.  Thank you, very much, Mr. Potter.

3    And I can confirm from the docket perspective that they were

4    all filed under seal.

5            MR. POTTER:  Thank you, Your Honor.

6            THE COURT:  You're welcome.  Anyone else?

7            Okay.  Hearing no objections, Mr. Toby Neugebauer's

8    Exhibits 1 through 7 are hereby admitted, and those are found

9    at Docket 59, under seal.

10           (Exhibits 1 through 7 received in evidence.)

11           Mr. Stohner.

12           MR. STOHNER:  Thank you, Your Honor.  With regard to

13   our Motion to Expedite, the reason for it is fairly simple and

14   straightforward.

15           That is, in this arbitration, and just maybe to back

16   up because this is on such short time for Your Honor to have

17   taken this all in, there was an arbitration proceeding filed

18   by With Purpose, Inc., against Ayers, back, I think, about a

19   year ago, maybe, in June of '22.

20           Then, subsequently, there was a bankruptcy proceeding

21   filed by With Purpose, Inc. in February of this year in the

22   arbitration proceeding.  And the original complaint is Exhibit

23   1 in the binder.

24           And then shortly after, I'll call it the original

25   complaint, was filed, Nick Ayers filed an original

WITH PURPOSE, INC., DEBTOR

1    counterclaim and third-parties original Statement of Claims.

2         So in addition to Nick Ayers, the other third parties

3    also filed claims.  They filed both counterclaims against WPI,

4    the debtor, in this case, and then also filed affirmative

5    third-party claims against Mr. Neugebauer.

6         The arbitration proceeded, and at the core of the

7    current issue is that after the bankruptcy was filed, again,

8    that's - I don't know what it was - eight months or so, maybe,

9    after the arbitration, some -- some number of months, Mr.

10   Dunn, or I don't know which attorney, but the counsel for the

11   Ayers' parties issued a subpoena, or a Deposition Notice, for

12   Mr. Neugebauer.

13        There was communication, and that's reflected, Your

14   Honor, in Exhibit 3, or excuse me, Exhibit 4.  There was some

15   communications occurring back in February of '23 relative to

16   this issue and sort of a deposition notice between Clay Young,

17   who is representing the debtor, and --

18        THE COURT:  Clay Taylor?

19        MR. STOHNER:  I'm sorry?

20        THE COURT:  Clay Taylor?

21        MR. STOHNER:  Clay Taylor, I'm sorry.

22        Clay Taylor, who is representing the debtor, and then

23   Mr. Chase Potter, who is one of the attorneys representing the

24   Ayers' parties.

25        The, if Your Honor looks at page 6 of that exchange

WITH PURPOSE, INC., DEBTOR

1   of emails and letters, and this is in exhibit, again from the

2   Ayers' parties response, you'll see a writing on that page to

3   Mr. Dunn from Clay Taylor, stating that: He will not be

4   proceeding with the deposition of Mr. Neugebauer on Monday, as

5   you know the case is stayed due to the bankruptcy of With

6   Purpose, Inc.  My understanding is that Mr. Neugebauer will

7   not be appearing on Monday.

8          And then, Mr. Dunn replied back, if you look on page

9   4 of that exchange, basically claiming that the stay, that he

10  was only proceeding against Mr. Neugebauer individually,

11  separate and apart, from claims against With Purpose, Inc.

12         And that then embark- -- so that Mr. Neugebauer

13  believed from that point on that there was a stay of the

14  arbitration.

15         And that began a series of Mr. Dunn, or Mr. Potter,

16  issuing further Deposition Notices that ultimately culminated

17  with a motion by Mr. Dunn, filed requesting sanctions.  And

18  that motion, Your Honor, is Exhibit Number 5.

19         THE COURT:  So I'm a little confused, Mr. Stohner.

20  You said that after this email exchange, Mr. Neugebauer

21  thought that there was a stay, and that they were not going to

22  proceed?

23         MR. STOHNER:  He understood, and -- and I need to

24  sta- if I could take one step back so Your Honor can know –

25         THE COURT:  Sure.

WITH PURPOSE, INC., DEBTOR

1           MR. STOHNER: -- the positions of these attorneys that

2    are here before you.

3           Our firm was not involved in the arbitration

4    proceeding; didn't file it.  Not involved with it whatsoever

5    at any point in time.

6           When this Motion for Sanctions was set by the

7    arbitrator for -- for a hearing, and that Motion for

8    Sanctions, when you look at it, contains sanctions for

9    damages, it included death penalty-type sanctions for striking

10   pleadings, etc.

11          After a contact by Mr. Neugebauer, two attorneys from

12   Jackson Walker appeared, I think, virtually, relative to this

13   conference that was held by the arbitrator.  And we'll get to

14   that conference.

15          But at that conference, statements were made that

16   there is a stay, and in particular, a stay because there are

17   derivative-type claims included in the claims asserted against

18   Mr. Neugebauer.

19          And then at that hearing, the trustee commented that

20   he knew that the claims directly against the debtor, WPI, were

21   stayed.  And he understood the point that derivative claims

22   may be stayed  but he wasn't sure about that.  And he was

23   going to set the deposition out a couple of weeks and the

24   parties could seek a ruling from the bankruptcy court because

25   he was not a bankruptcy attorney, and he would abide by that

WITH PURPOSE, INC., DEBTOR

1    ruling.

2          So we first became involved, Jackson Walker, at that

3    point in time.  And then I first became involved with seeking

4    to put together the motion that was filed before Your Honor,

5    dealing with this request.

6          THE COURT:  So that is the hearing from which the May

7    9th sanctions order emanates?

8          MR. STOHNER:  That's correct, Your Honor.

9          THE COURT:  Okay.

10         MR. STOHNER:  That's correct.  And I think that

11   hearing may have been on that same date.

12         THE COURT:  Oh, okay.  Good for him.  Pretty quick.

13         MR. STOHNER:  I'm sure Your Honor is familiar with

14   Judge Harlin Martin, who served on the District Court bench

15   for a number of years.  And then, after retiring from that,

16   has gone into JAMS mediation.

17         So the reason for the expedited hearing is very

18   simple and that is this order was issued.  The arbitrator made

19   the comments I just relayed to Your Honor.  We filed this

20   motion under that order.  The deposition is scheduled for

21   tomorrow, May 23.

22         Now in the response to the Motion to Expedite, the

23   Ayers' parties, primarily and almost solely, relate to the

24   sequence of events after they started seeking the deposition

25   of Mr. Neugebauer, and claim in their response that Mr.

16

WITH PURPOSE, INC., DEBTOR

1    Neugebauer, or his attorney's, should have come in earlier to

2    ask the Court to deal with the stay issue.

3            And the first significant point on this, and the

4    first significant substantive difference in opinion, is that

5    Mr. Dunn, or Mr. Potter, in preparing that response seek to

6    take the position that the onus is on a party that might

7    potentially be subject to a violation of a stay, to go to the

8    Court to seek to have a determination made, which is not the

9    case.  It's the exact opposite.

10           If someone is going forward that is a violation of

11   the stay, or a potential violation of the stay.  The burden is

12   on that party to come to this bankruptcy court to seek a

13   determination or more appropriately, that we all see all the

14   time, a Motion to Lift the Automatic Stay, or seek a

15   Modification of the Automatic Stay.

16           So the response, and the response to the expedited

17   hearing is essentially all about saying that this is too late,

18   it should have been done in motion.  This same motion should

19   have been filed a month ago, or two months ago, but that is

20   reversing what is the burden under these type of facts.

21           And so from that standpoint, we don't think that is

22   an effective response to the Motion to Expedite.  The Motion

23   to Expedite was filed after the issue was pointed out to the

24   arbitrator about why the stay would apply.

25           And the arbitrator expressly stated that -- that the

WITH PURPOSE, INC., DEBTOR

1  issue about derivative - he understood the argument, but he

2  simply wasn't a bankruptcy lawyer.  But he would defer if --

3  if we sought a determination by the bankruptcy court, he would

4  absolutely defer to that determination.

5        THE COURT:  So at this hearing on the motion for

6  sanctions, did anyone tell the arbitrator that they believe

7  that proceeding on the motion was a violation of the Automatic

8  Stay?

9        MR. STOHNER:  Proceeding on which motion?

10        THE COURT:  The Motion for Sanctions.  Because I can

11  only assume, I mean, follow me here.  I can only assume that

12  if the sanctions for violating a discovery obligation in an

13  arbitration, if that's the same discovery that you're telling

14  me shouldn't go forward because of the Automatic Stay, I can

15  only assume that the argument was made in the arbitration,

16  that proceeding on that discovery motion would have been a

17  violation of the automatic stay.

18        MR. STOHNER:  I think, let me -- let me say, Your

19  Honor, I did not participate in that.  Two of my partners

20  participated.  One of them, I think, may be on the call, and

21  -- and they can respond if Your Honor wants further response

22  on that.

23        But the whole issue about the stay existing, to me,

24  the interpretation of that argument, whether it was stated to

25  be both the deposition and this hearing and the seeking of

WITH PURPOSE, INC., DEBTOR

1    discovery, I think it was presented in a general context as

2    Your Honor is stating.

3         Now --

4         MR. ROMERO:  Your Honor, Josh Romero here.  I didn't

5    anticipate speaking, but I did attend the arbitration hearing,

6    and so I'm happy to discuss that with Your Honor if you'd

7    like.  Sorry to interrupt.

8         THE COURT:  Is this your partner, Mr. Stohner?

9         MR. STOHNER:  Yes.

10        THE COURT:  Mr. Romero, please go ahead.

11        MR. ROMERO:  Yes, Your Honor.

12        So I -- I did attend the arbitration hearing.  And

13   that was the first point we made was that we believed the

14   entirety of the proceeding was stayed.

15        The arbitrator commented that he certainly is not a

16   bankruptcy lawyer by any stretch, but he understood that the

17   direct claims against WPI, the counterclaims and the claims

18   that we're asserting were stayed, and I made the argument that

19   all of the other claims were stayed for example, the fiduciary

20   duty claims were stayed because those were derivative.

21        He said, I understand that and if you go to the

22   bankruptcy court and get a stay, then we will certainly abide

23   by that.  And -- and that's where, kind of, the bankruptcy

24   discussion stopped.

25        THE COURT:  Okay.  Thank you very much, Mr. Romero.

WITH PURPOSE, INC., DEBTOR

1          MR. ROMERO:  Thank you, Your Honor.

2          THE COURT:  Mr. Stohner.

3          MR. STOHNER:  I want to complete the picture relative

4   to counsel.  As I indicated, we may, we -- we have not, never

5   been counsel to anyone in the arbitration proceeding.  We

6   appear, we Jackson Walker, appeared for that limited purpose.

7          But since then, and since the filing of this motion,

8   Mr. Christian Ellis, and the Bonds Ellis firm have been

9   engaged, formally engaged, by Mr. Neugebauer.

10         So they are here, and I guess you might say they are

11  really in the driver's seat, if you will, as it relates to

12  Mr. Neugebauer's involvement in this arbitration, and this may

13  be an appropriate time.

14         Well, let me just add that along the way, Mr. Dunn

15  would make comments and send a letter saying that -- that the

16  bankruptcy only stayed claims against WPI, the debtor, and

17  that he was not going to be proceeding with claims against the

18  debtor, but he would proceed with claims against Mr.

19  Neugebauer.

20         Now the problem is, but first of all, and Mr. Dunn

21  seems to take the position that having announced that, that

22  that should be the end of it, and that puts the burden on you,

23  Mr. Neugebauer, to go to the court.

24         But like I said, Your Honor, that's reversing the

25  burden.  The burden is, was on, and is -- continues to be on

WITH PURPOSE, INC., DEBTOR

1   the Ayers' parties to see this Court's modification of the

2   stay because there are clearly, without question, claims

3   asserted in the arbitration against Mr. Neugebauer that are

4   claims of the estate that the trustee holds, and that Mr.

5   Berghman can address.

6           Now I think at this point, a lot of the argument

7   would then go into the law as to why that is true, and I think

8   that is ultimately going to be fairly black and white.

9           So I won't try to get into the legal argument about

10  why the stay does exist because it, the first instance, Your

11  Honor, is looking to grant the Expedited Motion to then

12  consider the substantive underlying issues on the Motion to

13  Enforce Stay.

14          I do think it would be appropriate, maybe, to hear a

15  brief comment, from Mr. Ellis, since they have been involved

16  with Mr. Neugebauer in recent days, and he can add anything

17  that I may not (sic) have missed, based on his involvement

18  with Mr. Neugebauer.

19          THE COURT:  Okay.  Thank you.  And I'd be happy to

20  hear from Mr. Ellis.  Mr. Stohner, one quick question.

21          Taking a look at the sanctions order, which is your

22  Exhibit 6, and I think Exhibit G to the -- to the Ayers'

23  filing.  At the time of the hearing on the sanctions order,

24  your client was unrepresented, he was proceeding pro se?

25          MR. STOHNER:  Yes.

WITH PURPOSE, INC., DEBTOR

1          THE COURT:  Okay.

2          MR. STOHNER:  Yes.

3          THE COURT:  Thank you very much.

4          MR. STOHNER:  Yeah, on my - yes, that is correct,

5    Your Honor.

6          THE COURT:  Okay.  Thank you.

7          Mr. Ellis.

8          MR. ELLIS:  May it please the Court.

9          Your Honor, again, my name is Christian Ellis.  I

10   represent Toby Neugebauer, and I should have said this

11   earlier, but I am joined by my partner, Josh Eppich, and also

12   my partner, Josh Osborne, as well.  And they may well speak

13   here today, potentially regarding some of these issues

14   depending on the depth to which we -- we reach them.

15         I did want to say a few things as it relates to the

16   case from an arbitration standpoint.  We, Mr. Stohner, is

17   correct, we have been engaged.  We have made an appearance

18   within the arbitration itself.

19         This morning, we wrote the arbitrator a letter

20   containing our pleadings, or Jackson Walker's pleadings, and

21   the trustee's pleadings as well, just to keep the arbitrator

22   apprised of the situation.

23         In terms of moving forward, and what we're asking for

24   here today, there's -- there's a few things that -- that we're

25   asking for, and a few things we think that -- that the Court

WITH PURPOSE, INC., DEBTOR

1    needs to know.

2         First of all, we've just been engaged.  Our

3    engagement is as of middle of last week.  So we have been

4    furiously trying to figure out, you know, what this is, where

5    we are, and what's happening.  This firm was counsel for With

6    Purpose during the Chapter 7 all the way up to the 341

7    creditor meeting.

8         And we freely state that we told Mr. Neugebauer, in

9    his capacity with With Purpose, at the time, regarding this

10   arbitration, that we felt as if it was stayed.

11        And we have the allegations in the arbitration in the

12   record.  We can provide them or comment on them.  But there's

13   a little question that -- that the lawsuit, which was styled

14   With Purpose, you know, versus Ayers, and then a counterclaim

15   against Neugebauer, with all manner of claims against Mr.

16   Neugebauer associated with his dealing with With Purpose was

17   stayed.  I mean, there was little to no doubt in our mind.

18        And I wasn't heavily involved with the Chapter 7, but

19   I was involved with communicating with Mr. Potter and Mr. Dunn

20   regarding the issue.  We informed them that we felt the case

21   was stayed.

22        We knew these issues were really intertwined, and --

23   and we had told Mr. Neugebauer something to the effect of,

24   typically what will happen is that there will be a Motion to

25   Lift the Stay filed with bankruptcy court, and there will be

WITH PURPOSE, INC., DEBTOR

1   some sort of dealing with that.

2          And then that was essentially the end of our

3   involvement with the arbitration until just a few days ago.

4   Mr. Neugebauer has proceeded pro se.  And my understanding,

5   essentially, he took those words to the bank and said, okay,

6   this is essentially stayed.

7          And I think that it's important.  I actually have a

8   brief demonstrative of -- of a timeline that I would like to

9   be able present to the Court, just because I think it will aid

10  you in just understanding, briefly, the timeline of events

11  because I think that is important.  And I have one for

12  opposing counsel as well if I can provide that.

13          THE COURT:  Do you have the ability to put it on the

14  screen?  Because Mr. Potter is, Mr. Potter is remote.

15          MR. ELLIS:  I bet you -- may I ask Mr. Osborne?

16          THE COURT:  Sure.  Take your time.

17          MR. ELLIS:  Josh, do you have that electronically

18  that we could plug into?

19          MR. OSBORNE:   (No audible response.)

20          MR. ELLIS:  Okay.  He's working on -- on finding

21  that.  I can certainly just call it out for the time being.

22          THE COURT:  Okay.  Let's do that.  I'm happy to take

23  one for, as a demonstrative, for the benefit of the Court, but

24  I'll let you work on it so that we can get it to Mr. Potter as

25  well.

24

WITH PURPOSE, INC., DEBTOR

1          MR. ELLIS:  Thank you, Your Honor.  May I approach?

2          THE COURT:  Yes, please.

3          So, Mr. Potter, while Mr. Osborne attempts to join

4    the Webex in order to share the document I'll just make sure

5    that Mr. Ellis just states orally what's contained on what's

6    entitled A Demonstrative Timeline of Relative Events.  It's

7    just a series of dates and what happened.

8          So again, I'll have him go through them with

9    particularity while we're pulling the demonstrative up.

10         MR. ELLIS:  Thank you, Your Honor.

11         MR. POTTER:  Thank you, Your Honor.

12         (Indiscernible) have our own timeline as well as

13   indicated in the brief, but thank you so much.  Appreciate it.

14         THE COURT:  Thank you.

15         MR. ELLIS:  So in August of 2022 is when the suit was

16   commenced against Toby Neugebauer.  Obviously, the arbitration

17   was originally brought by With Purpose, the debtor in this

18   case.

19         Then, a counter-complaint was made against Mr.

20   Neugebauer, discussed allegations of breaches of fiduciary

21   duty, and essentially that was the primary crux.  60, 70

22   paragraphs of essentially discussions of breaches of fiduciary

23   duty and related facts.

24         All of them, we believe, are owned by the estate.

25   And so that was the state of the pleading until May 1st, and

WITH PURPOSE, INC., DEBTOR

1    that's pretty critical, because then we have to look and see

2    what happened between August and May 1st.

3           On February 8th, the Petition for Bankruptcy is

4    filed.  On the 15th of February, the Ayers' party, having

5    gotten word of the bankruptcy, notified the arbitrator in the

6    bankruptcy case.

7           February 20th, the Ayers' parties go ahead and send a

8    Notice of Deposition to Mr. Neugebauer on these claims which,

9    in this proposed stipulation that the Ayers' parties have

10   signed, admit are property of the estate.

11          And I would point out I've actually had a chance to

12   grab the Scheduling Order for the arbitration, now that I've

13   appeared, and I have JAMS access, and all those things, I

14   actually have it with me.

15          It's interesting, the date for just the exchange of

16   initial documentation of, just, here's our paperwork, here's

17   our disclosures, was February 28th.

18          So they -- they proceed --

19          MR. STOHNER:  That's Exhibit 7.  Do you want the

20   exhibit number?

21          MR. ELLIS:  Yes, it is Exhibit 7 in our book.

22          THE COURT:  Yes, thank you.

23          MR. ELLIS:  And so -- and so this arbitration

24   apparently took off in rocket speed regarding this case

25   against this pro se litigant prior to even disclosures being

WITH PURPOSE, INC., DEBTOR

1  sent on  a -- on a arbitration that's set for January of next

2  year.

3           And by the way, I do understand that we have pulled

4  up the -- the timeline now.

5           THE COURT:  Yes, yes, he can see it -- I assume.

6           Mr. Potter, can you see the document now?

7           MR. POTTER:  I can.  Thank you, Judge.

8           THE COURT:  Okay.  Thank you.

9           MR. ELLIS:  So the bankruptcy gets filed.  They

10 haven't even exchanged documents or disclosures yet, and

11 immediately, let's go ahead and have this pro se litigant

12 testify on claims that are stayed.  Okay.

13          So then, February 22nd through 24th, we're talking

14 with them about it.  You have those emails in the record.

15 We're saying this case is stayed.  We're counsel for With

16 Purpose, and this firm says the case is stayed.

17          And again, told Mr. Neugebauer, we may be getting a

18 Motion to Lift and those kinds of things.  Okay.

19          Well, unbeknownst to -- to us, on the 27th, they file

20 a Motion to Compel, again, these are all on these stayed

21 claims.  March 23rd, an order is entered in the arbitration

22 compelling the deposition.

23          They also filed a Motion for Sanctions against him

24 regarding these.  Then, eventually, the Motion to Get Set,

25 it's not until May 1st, that the Ayers' party supplement their

WITH PURPOSE, INC., DEBTOR

1   complaint, and by the way, within the Scheduling Order, it

2   actually says that they're not allowed to amend their claims

3   without leave after February 15th, but they do it anyway in

4   this arbitration.

5        And now they supplement their claims, and now they

6   say, okay, we have these individual claims for defamation, and

7   business disparagement, and tortious interference, which is

8   the, in speaking with them, and leading up to this hearing,

9   having the -- the opportunity to confer, and have a full, sort

10  of, discussion of what we're doing here that's essentially

11  what Mr. Dunn has -- has talked about, is well, you know, we

12  have these defamation claims.  You know, we get to ask about

13  these.

14       Well, the entirety of everything that has happened in

15  this arbitration is in violation, in our view, of this stay.

16  This wasn't about a personal defamation claim, or a personal

17  business disparagement claim.  This was about, from the timing

18  of the -- of the Deposition Notices, all the way to the Motion

19  for Sanctions, right up to the eve of the hearing on the

20  motion, this was about, admittedly, stayed claims.

21       And so Mr. Neugebauer had not, and did not,

22  participate in the arbitration from a discovery standpoint,

23  and did not violate the stay in and of himself.  He did not

24  make defenses; he did not make claims.  He did not engage in

25  discovery.  And did not violate the stay.  And did not seek to

WITH PURPOSE, INC., DEBTOR

1    compel discovery in violation of the stay.

2         So now we find ourselves, essentially, having to

3    reverse engineer what, in our view, was, you know, should have

4    happened a -- a while ago.

5         And having to do so on a really rapid-fire basis,

6    I've gone through the JAMS file, I could be wrong, I still

7    haven't seen a disclosure yet, you know, from -- from opposing

8    counsel.  They may have filed it, I don't know.  I haven't

9    been able to see it or find it.

10        And so what we really have is a rocket ship way to

11   try to de- -- try to depose a pro se litigant before documents

12   and disclosures have been made on a case that's stayed.

13   That's really our view right now.

14        And so from our perspective, we need some time to be

15   able to catch a breath, get our legs under us, and figure out,

16   all right.  What is really happening here.

17        What is this stipulation mean that they're seeking.

18   First of all, is it even going to be entered.  We think the

19   case is stayed up un- -- for certain, up until the time any

20   stipulation is entered.

21        The stipulation says that there's going to be at

22   least five days for them to -- to dismiss whatever they're

23   going to dismiss, and so that wouldn't happen by tomorrow.

24        And so we certainly want at least that period of time

25   just to see, okay, what are you going to dismiss within your

WITH PURPOSE, INC., DEBTOR

1    five-day period.

2           We want to be able to sit down and say, okay, what

3    does this practically mean for the estate, for the bankruptcy.

4    What is the foundation of your claims.

5           And later in the hearing, if you would like, I can go

6    through and point out, you know, yes, there's a lot of detail

7    in the Breach of Fiduciary Duty claims, but there's almost no

8    detail on these Defamation of Disparagement claims, I mean,

9    what is this even about.  We don't even know.

10          How do those relate to the stay, and how - will the

11   estates claims or properties be compromised.  We need to -- to

12   work this out with the trustee, with Mr. Dunn and Mr. Potter,

13   with our firm, and have a reasonable discussion on this.  Get

14   off the rocket ship we've been on, now we don't have a pro se

15   litigant anymore.

16          And so let's go ahead and take some time, keep this

17   arbitration stayed for a short period of time so we can gather

18   our legs and figure it out, and then orderly proceed in

19   whatever we're going to proceed to do.

20          I'll also say that over the weekend, and even today,

21   we've been looking at -- at whether or not this case should

22   even be in arbitration at all.

23          I mean, it turns out that Mr. Neugebauer is not a

24   signatory to an arbitration agreement as far as we can tell.

25   And so we're -- we're a little bit scratching our head

WITH PURPOSE, INC., DEBTOR

1    thinking why are we even in arbitration at all.

2            Now we're talking about a stipulation which would

3    just leave him, essentially, orphaned in this -- in this

4    arbitration.  Now really how is he involved if he's not a

5    signator.  So we're going to be, I -- I have other partners

6    working on that.  I've been concentrating on this.

7            And so those other partners are working on figuring

8    that out, and they'll be filing things, you know, today or in

9    coming days to try to figure that out, whether with a court or

10   an arbitration, we're still sorting, but we don't even know

11   that this is properly in front of an arbitrator.

12           We also believe that all the actions taken by the

13   arbitrator during the pendency of this stay, which we believe

14   is in effect even as I speak, are void, because again, this

15   wasn't about the defamation and disparagement claims.  That

16   didn't happen until after the Motion for Sanctions was filed.

17           This is about, has been about, admittedly stayed

18   claims.  And so we would certainly like something for the

19   record that those actions are void.  This matter has been

20   stayed up until this moment.  And give us some sort of buffer

21   to be able to sort out these issues, not only for Mr.

22   Neugebauer, but also, I imagine, in protection of the estates,

23   and their claims and properties.

24           That's our position here today.  Thank you, Judge.

25           THE COURT:  Thank you, Mr. Ellis.  I mean, obviously,

WITH PURPOSE, INC., DEBTOR

1   for sake of the record, first we're beginning on the Motions

2   to Expedite and I'll take those.  And if we get to the Motions

3   substantively, we'll address those.

4          I don't have a motion with respect to stay violations

5   before me, I have a Motion to Enforce the Automatic Stay and

6   to prohibit further action, but I don't have anything before

7   me to punish for violations of previous actions.

8          MR. ELLIS:  Yes, Your Honor, we have not filed such a

9   thing.  We recognize that.  Thank you.

10          THE COURT:  Okay.  Thank you so much.  All right.

11          Does it make sense for me to put Mr. Potter on next

12  and then have you respond to the extent you want to with

13  respect to the Motion to Expedite at the end, Mr. Berghman?

14          MR. BERGHMAN:  Your Honor, I think that makes sense.

15          THE COURT:  Okay.  Thank you.

16          Mr. Potter.

17          MR. POTTER:  Yes, Your Honor, can you hear me okay?

18          THE COURT:  Yes, I can.  Actually it's much better

19  than before, so I think turning off the video was the secret.

20          MR. POTTER:  Wonderful.  Great idea, and I appreciate

21  that.

22          And I'm going to try to take us back to what was my

23  understanding as what the Court wanted us to address here

24  initially, and that's the request to consider Mr. Neugebauer's

25  motion on an expedited basis.

WITH PURPOSE, INC., DEBTOR

1      But quickly, before I do, I can't leave the comments

2  from Mr. Ellis, at the end, who -- I'm not even sure if he's

3  actually representing Mr. Neugebauer in this capacity in this

4  Court or not.

5      But notwithstanding that, I recognize that it has

6  been a revolving door of attorneys for Mr. Neugebauer with

7  respect to the arbitration, but to imply that this has been a

8  pro se party from the beginning is just wrong.

9      Mr. Neugebauer had the fine firm of Stenson

10 representing him individually in this arbitration at relevant

11 times until they withdrew.

12     We were told that the firm Quinn Emanuel was going to

13 come in, that never happened.  And when that didn't happen, we

14 started dealing with Mr. Neugebauer individually.

15     And since that time, he has done everything he could

16 in his power to delay and derail the arbitration against them

17 that was, including the claims of my client individually,

18 against Mr. Neugebauer, individually.

19     And, Your Honor, to suggest that this is a pro se

20 party who had no means of finding attorneys or anything like

21 that, this is a self-proclaimed billionaire, Mr. Neugebauer,

22 who lives on Strait Lane, in a replica of the White House.

23     So to suggest that this is a pro se party that the

24 Court should have pity on and just give a little bit more time

25 is, in our view, a non-starter.

WITH PURPOSE, INC., DEBTOR

1       And we should really look at the intent of Mr.

2   Neugebauer here, and that is to delay sitting for his

3   deposition on claims that are very clearly individual claims

4   of our clients that are being asserted against Mr. Neugebauer

5   in his individual capacity, and if we get to the issue of the

6   stipulation that we worked very hard on to, you know, while we

7   were traveling on family vacation.  Mr. Dunn was going down

8   for his daughter's graduation, to reach a stipulation with the

9   trustee's counsel, to ensure that the trustee is comfortable

10  that these claims proceeding in the arbitration are just that,

11  individual claims of our clients against Mr. Neugebauer

12  individually, and thus have no impact on the estate

13  whatsoever.

14       In fact, the proposed stipulation, that I'm sure

15  we'll get to, states at the end, for the avoidance of doubt,

16  it is the intent and purpose of it to allow those very claims

17  to proceed without impacting the estate.

18       And the real question I have is, if the trustee's

19  comfortable with that, then why does Mr. Neugebauer get to

20  stand up and say, hold on, wait a minute.  It's actually

21  claims of the estate.

22       So we think that once we get to that, that that will

23  become clear, and these claims should proceed.  However,

24  looking at the issue of the expedited nature of this

25  "Emergency Motion" filed by Mr. Neugebauer, that we believe is

WITH PURPOSE, INC., DEBTOR

1    an emergency of his own creation.

2              As the Court knows, GloriFi, the company, filed for

3    bankruptcy, I believe now, it's been over 100 days, since the

4    filing of that.  It was back on February 8th of this year.

5              Your Honor, it should be -- it can't be overlooked

6    that that was a bankruptcy filing of the company, GloriFi.

7    Not Mr. Neugebauer, individually.  He is not a debtor in this

8    case.  Mr. Ayers is not a debtor.

9              These are claims in the arbitration that are being

10   pursued by a non-debtor against a non-debtor.  February 15th

11   comes around when we notify, it's 91 days before Mr.

12   Neugebauer files this "Emergency Motion", and that's when my

13   partner Rocky Dunn sends an email to, or letter, to JAMS and

14   Judge Martin, notifying the arbitrator that we have become

15   aware of the filing of a bankruptcy proceeding by GloriFi, who

16   at that time was a party to the arbitration.

17             We state in that letter that we recognize all claims

18   by or against GloriFi, are stayed, because of the Automatic

19   Stay.  We were very careful, and trying not to do anything

20   that would violate the stay or impact the stay.

21             But as this Court is well aware and per the case law,

22   or briefing, that -- for instance, this is the Texas Supreme

23   Court, but it's citing Federal Court saying, "Courts have

24   recognized that an express severance is not required for the

25   proceedings to continue against the non-debtor", whether that

1    non-debtor is a -- a co-tort teaser, or anything of the sort.

2        And so, Mr. Neugebauer, who's copied on this email,

3    or letter, 91 days before the filing of this Emergency Motion,

4    sees very clearly that we intend to continue prosecuting the

5    claims, the individual claims of Mr. Ayers against Mr.

6    Neugebauer.

7        February 17th is 89 days before the filing of the

8    Emergency Motion, and that's when we send the first of, I

9    believe it was five, requests for Mr. Smith (indiscernible;

10    audio cuts out) for his deposition.  Now Mr. Neugebauer claims

11    that he thought, oh, well, this thing is stayed.

12        He responded to us on multiple occasions, kind of

13    getting in a few jabs, and saying, I can't wait to sit for my

14    deposition.  We're going to spend a lot of time together, all

15    that kind of nonsense, and then he has done everything he can

16    to avoid that deposition since that time period.

17        But he responds on multiple occasions, never gives an

18    available date for the deposition.  And so we moved forward,

19    and as we told him we would, we served a Notice for his

20    Deposition that was to occur on -- later that month.

21        February 22nd, which is 84 days before the filing of

22    the alleged Emergency Motion, is when we first received

23    contact from Mr. Taylor and Mr. Ellis.  I can't remember who

24    left a voice mail, who sent an email.  The email is in the

25    materials and -- and the exhibit to our response briefing

WITH PURPOSE, INC., DEBTOR

1   (indiscernible; audio break) out and trying to figure out

2   what's going on with this arbitration.  They say that they're

3   not actually representing Mr. Neugebauer in the arbitration.

4          And as -- as I can't remember which timeline it was

5   from proceeding counsel before me, but the response from

6   -- that I sent to counsel for Mr. - well, at that time, I

7   guess they weren't for Mr. Neugebauer, for GloriFi, we say

8   however, the claims in the JAMS proceeding against Mr.

9   Neugebauer, who is not the debtor in the Chapter 7 proceeding,

10  are not stayed.

11         We get to February 24th, two days later.  This is

12  still 82 days before Mr. Neugebauer files what he calls, an

13  Emergency Motion.

14         And my partner, Mr. Dunn, sends an email to Mr.

15  Taylor and Mr. Ellis, and we also copy the trustee and the

16  trustee's counsel.  So 82 days before the filing of this

17  Emergency Motion, we're copying these lawyers who are reaching

18  out on behalf of Mr. Neugebauer and who now represent Mr.

19  Neugebauer in the arbitration, and also trustee and trustee's

20  counsel, so everybody's aware of this email.  82 days before

21  the motion to stay, Mr. Dunn says, the claims against Mr.

22  Neugebauer personally, who is not the debtor in the Chapter 7

23  proceeding, are not stayed.

24         So once again, we say that it's our belief, it's our

25  position, we're continuing to prosecute the claims against Mr.

WITH PURPOSE, INC., DEBTOR

1    Neugebauer, a non-debtor.

2         Which case law is very clear that unless in very rare

3    circumstances, the stay does not extend to this non-debtor.

4    And like that case law that I just cited saying that I take

5    issue with -- with opposing counsel's argument that it -- the

6    onus was on us to go and seek a Motion to Lift the Stay.  It's

7    our position the stay never extended to Mr. Neugebauer to

8    begin with.

9         And case law says we, in fact, did not have to go

10   seek a severance or anything else with the proceeding, and we

11   could move forward with the individual claims of Mr. Ayers

12   against Mr. Neugebauer.

13        And that's what we're doing, and have been trying to

14   do since early February, when Mr. Neugebauer has implemented

15   this scheme to delay and hide from the claims against him in

16   an attempt to hide behind the law of the Automatic Stay that

17   only provides protection to GloriFi.

18        On March 23rd  -- excuse me, I'll go back here a

19   little bit, we file a motion with the arbitrator, because Mr.

20   Neugebauer failed to attend the deposition on March 17th.  And

21   Judge Martin signs a - excuse me, I knew I went too far in

22   advance.

23        I'm, like I said, here at Disney World, trying to do

24   my best from a hotel room.

25        THE COURT:  Take your time.  Take your time.

WITH PURPOSE, INC., DEBTOR

1    MR. POTTER:  And so on February 27th, we file a

2    Motion to Compel Mr. Neugebauer's deposition, and this is the

3    first time we involved the arbitrator in the deposition issue

4    because of the fact that Mr. Neugebauer did not attend the

5    properly noticed deposition when we sent him a depo notice.

6        On March 2nd, Judge Harlin Martin signs an order

7    compelling Mr. Neugebauer to sit for his deposition on the

8    17th of March.  And in that order, it states that "the stay

9    does not apply to the individual, Toby Neugebauer, and Ayers

10   is entitled to proceed to prosecute his claims against Mr.

11   Neugebauer".

12       And so Judge Martin considered the very issue of

13   whether or not the individual claim against Mr. Neugebauer

14   (break in audio), he expressly stated that we were allowed to

15   do so.

16       Mr. Neugebauer received, I know he received copies

17   of -- of the Motion to Compel and the later motions we filed

18   because we filed them via JAMS access, and sent it to his

19   email account to which he responded to us on numerous

20   occasions.

21       And so, Mr. Neugebauer knew that this case was

22   proceeding, and he intentionally delayed, delayed, delayed,

23   and ignored the orders from the arbitrator, until the time

24   that he was finally sanctioned, and we're getting there.

25       On March 23rd, we file the Motion for Sanctions

WITH PURPOSE, INC., DEBTOR

1   against Mr. Neugebauer, because he failed to attend the March

2   17th deposition that was ordered by Judge Martin.

3        And so on April (indiscernible), giving him a

4   significant amount of time to retain counsel and respond, do

5   whatever Mr. Neugebauer was going to do, Judge Martin signs an

6   order requiring Mr. Neugebauer to appear on May 3rd for his

7   deposition.

8        In that order, it says, Neugebauer's failure to

9   comply with this order will result in sanctions, and that's

10  when Mr. - that's when Judge Martin also set the May 8th

11  status conference so that we could let Judge Martin know

12  whether or not Mr. Neugebauer did in fact, finally comply with

13  his order, which, of course, he did not.

14       On May 5th, so this is literally months after this

15  issue first arose, whether or not we could proceed with this

16  deposition, we receive a call from one of the lawyers at

17  Jackson Walker saying that they were going to appear at the

18  status conference with "the limited purpose of attending the

19  hearing", which I wasn't sure what that meant, but they did in

20  fact show up with -- with Mr. Neugebauer and were present at

21  the time that the issues were considered.

22       And I don't want to quibble about -- with opposing

23  counsel who admitted he wasn't on the call and was making

24  summaries as to what Judge Martin was saying or what he wasn't

25  saying.

40

1        What I know for certain, that I know that no one will

2   disagree with, is that the issue of May 23rd, tomorrow, for

3   the deposition, was discussed with Judge Martin and it was

4   ordered for that date.  Mr. Neugebauer didn't say anything

5   about, oh, that date doesn't work for me or anything like

6   that.

7        And then they wait 9 days after -- after that hearing

8   to file this alleged Emergency Motion seeking to, not enforce

9   the stay, Your Honor, but extend the stay to a non-debtor who

10  we believe is not entitled to the protections of the

11  bankruptcy stay that applies to GloriFi.

12       Now once that -- once that motion was finally filed,

13  more than 90 days after we informed Mr. Neugebauer that it was

14  our position that the arbitration was not stayed, and that as

15  to the claims against Mr. Neugebauer, we have never taken the

16  position that the arbitration is not stayed as to anything

17  related to GloriFi, whether it be claims of GloriFi, claims

18  against GloriFi, or any things that -- claims that impact the

19  estate.

20       After this emergency motion was filed, I immediately

21  reached out to our -- we touched base with trustee's counsel,

22  Mr. Berghman, and we tried very diligently to reach some type

23  of stipulations.  And this -- this argument by Mr. Ellis that

24  we have admitted that we violated the stay by agreeing to give

25  the -- the trustee some certainty, and non-suiting without

WITH PURPOSE, INC., DEBTOR

1   prejudice the Breach of Fiduciary Duty claim in the

2   arbitration which, by the way, we don't need any additional

3   time to determine what's going to be dismissed pursuant to

4   that stipulation.

5          Clearly in the stipulation itself that's before this

6   Court that's proposed, that was agreed to by the trustee's

7   counsel that we would make a statement on the record in the

8   arbitration that any claims against the debtor, GloriFi, which

9   is no longer listed as a party in the Supplemental Statement

10  of Claims, or any of the orders from the arbitrator that came

11  after Judge Martin said that the claims were stayed as to

12  GloriFi.

13         And so now it is styled Ayers versus Neugebauer.

14  Non-debtor versus non-debtor.  And to give the trustee's

15  counsel and the trustee some assurances that, hey, we have no

16  intention of doing anything to harm the estate in this case,

17  irrespective of when these claims were filed.

18         Claims for defamation, tortious interference with

19  business relationships and perspective business relationships,

20  and business disparagement by Mr. Ayers against Mr.

21  Neugebauer, there could be no logical claim to say that those

22  are claims of the estate, somehow derivative claims of the

23  estate, or against the estate in any way.  Mr. Neugebauer

24  knows that.

25         But -- and then also, we have a claim for Fraudulent

WITH PURPOSE, INC., DEBTOR

1   Inducement that's going to stand, and that's with respect to

2   the $1.5 million of our client's money, individually, he put

3   into the company that we allege he was fraudulently induced

4   into doing by Mr. Neugebauer personally, and we're seeking a

5   judgement against Mr. Neugebauer.  These claims do not impact

6   the estate in any way.

7          But -- kind of back to where I started, Judge, we now

8   have a stipulation, and yeah, we moved very quickly to get to

9   that stipulation because it was the fire drill created by Mr.

10  Neugebauer himself in waiting around, delaying, delaying,

11  delaying, until he couldn't delay anymore.

12         Finally engaging lawyers, and then having them file

13  these alleged Emergency Motions, yes, we worked very quickly

14  and diligently with the trustee's counsel, and we now have a

15  stipulation that says, at the end of it, that this stipulation

16  is being entered for the purpose of allowing Mr. Ayers to

17  continue his claims against the -- against Mr. Neugebauer in

18  the arbitration, individually.

19         Trustee's counsel has told us they don't want to

20  stand in the way of Mr. Ayers pursuing his individual claims

21  against Mr. Neugebauer.  And we don't want to stand in the way

22  of the estate being (indiscernible; audio break) any claims it

23  may have against anybody.  And that's the reason for this

24  stipulation that's before this Court.  We think that that

25  resolves everything to the extent there was any question.

WITH PURPOSE, INC., DEBTOR

1        Again, we don't believe that any of the claims that

2   we pursued or filed against Mr. Neugebauer somehow are

3   derivative claims or anything of the nature.

4        But the trustee told us that, hey, I would like for

5   you to dismiss without prejudice those -- the Breach of

6   Fiduciary Duty claim.  We said, fine, we'll do that to ensure

7   that everyone is comfortable, by everyone -- I mean the

8   trustee, and the trustee's counsel, who are the ones

9   representing the estate, that nothing is impairing the estate.

10  That's what we've done, Your Honor.

11       That's why we think one, that the Emergency Motion is

12  not an emergency, it's a manufactured emergency by Mr.

13  Neugebauer's own wrongdoing, and delay tactics.  And two, even

14  if these things were considered, simply entering the

15  stipulation, which the trustee's ask you to do today, we think

16  makes us very comfortable that we could move forward with this

17  deposition tomorrow.  And with the arbitration against Mr.

18  Neugebauer in general, without any concerns about violating

19  the stay, even though we had none to begin with.  Thank you,

20  Judge.

21       THE COURT:  Thank you, Mr. Potter.  One question for

22  you.  Oddly enough, the arbitration pleadings aren't all

23  dated, or at least in a way that the Court can easily find.

24       So I'm looking at your Claimant Supplemental

25  Statement of Claim against respondent, and these are all noted

WITH PURPOSE, INC., DEBTOR

1    as Supplemental Claims.  Not in place of all of the counter

2    claims that were brought in the original complaint.

3           So if you have agreed by stipulation that certain of

4    those counter claims that you originally brought are property

5    of the estate, then my question is, is there any clarity of

6    what you want to go forward on tomorrow?

7           MR. POTTER:  Sure.  Absolutely, Your Honor.  And we

8    have worked, and that's a great point.  And that's what Mr.

9    Berghman raised when we were having discussions.

10          And so the -- what we would do pursuant to the

11   stipulation, is dismiss, without prejudice, without

12   prejudicing our client's rights to, you know, for instance,

13   bring any claims he may have as proof of claims against the

14   estate and the bankruptcy proceeding.

15          To state that those claims are no longer a part of

16   the arbitration, even though they have been, as we indicated

17   in all correspondence to the arbitrator and the arbitrator

18   responded back to us, that those have all been stayed since

19   the filing of the bankruptcy proceeding to begin with.

20          But to provide everybody clarity, we would be

21   dismissing without prejudice, all the claims that are the

22   counter claims that we had -- our clients had against the

23   entity, GloriFi.  And we would also be dismissing, without

24   prejudice, the Breach of Fiduciary Duty (indiscernible; break

25   in audio) and then we would be moving forward on Fraudulent

WITH PURPOSE, INC., DEBTOR

1   Inducement, we'd be moving forward on defamation, tortious

2   interference, and business disparagement.

3           THE COURT:  Okay.  And when did --

4           MR. POTTER:  I think there's exemplary

5   (indiscernible).

6           THE COURT:  When did you file the Supplemental

7   Statement of Claims?

8           MR. POTTER:  I believe it was in, maybe the first of

9   this month.  May 1st.

10          THE COURT:  May 1st.  Okay.

11          MR. POTTER:  I think that's it or thereabouts.

12          THE COURT:  Okay.  And that's when you filed the

13  Supplemental Statement alleging causes of action for business

14  disparagement, tortious interference, etcetera?  And so has --

15          MR. POTTER:  And defamation.

16          THE COURT:  Yes, yes.

17          MR. POTTER:  I'm sorry.

18          THE COURT:  And has the time period run to respond to

19  the Supplemental Statement?

20          MR. POTTER:  I would have to look back at the JAMS

21  rules, and I know where you're headed, Your Honor, and that's

22  one thing I wanted to address about Mr. Ellis's position.

23          Is to the extent that Mr. Ellis believes he needs

24  more time (indiscernible; break in audio) or respond, or

25  prepare his client for a deposition in the arbitration, I

WITH PURPOSE, INC., DEBTOR

1    respectfully think that those are matters for the arbitrator

2    to decide.

3           The question for the Court is whether or not the

4    Automatic Stay should apply to prevent the arbitration from

5    moving forward.

6           If the answer to that question is no, then Mr. Ellis

7    needs to go to the arbitrator and make whatever claims he may

8    have for further delay, or claiming that there's -- the claims

9    are not arbitrable which, by the way, Mr. Ayer- -- or Mr.

10   Neugebauer already filed an answer in the arbitration when he

11   was represented by Stenson, and so I think that those claims

12   are waived.

13          But once again, there's no reason to burden this

14   Court with those type of arguments.  Those are clearly issues

15   for the arbitrator.

16          THE COURT:  I certainly appreciate that.  And the

17   Court has no interest in sticking her fingers in arbitration,

18   but it does seem like people have been sticking their fingers

19   in my bankruptcy.

20          So with all due respect, just trying to get a good

21   statement of the lay of the land.  So I'll turn to Mr.

22   Berghman.  Thank you very much, Mr. Potter.  And again, I'm so

23   sorry we're interrupting your vacation.

24          I have sat where you sat, maybe not in that exact

25   same hotel room at Disney World, but I know what's it's like

WITH PURPOSE, INC., DEBTOR

1    to do it from vacation.  So I'm sorry it came to this.

2         So Mr. Berghman.

3         MR. POTTER:  No, absolutely.  Thank you.  Thank you,

4    Judge.

5         THE COURT:  You're welcome.

6         MR. BERGHMAN:  Good afternoon, Your Honor.  Thomas

7    Berghman for the trustee, Scott Seidel.

8         And I think we probably strayed a little bit away

9    from the reasons to expedite or not expedite.  So I'll try to

10   touch on the major points.

11        And I'll start by saying that -- that the trustee has

12   generally been aware that there was prepetition arbitration

13   pending, and we were advised by debtor's counsel that they

14   believed that the arbitration was stayed.

15        So this is right when the case filed.  Mr. Taylor

16   reached out to us.  We had multiple conversations about the

17   case, and he told us there was this arbitration, but -- but

18   that case is stayed.

19        THE COURT:  And there was a Suggestion of Bankruptcy

20   filed, I assume, in the --

21        MR. BERGHMAN:  I -- I believe that's correct.  And so

22   although we did receive an email in late February, and I think

23   it's one of the exhibits here, regarding the arbitration that,

24   you know, the Ayers' parties believe that the personal claims

25   are not stayed.  We really were not aware of any further

WITH PURPOSE, INC., DEBTOR

1    activity in the arbitration until we had a meeting with Mr.

2    Neugebauer on May 12th, so Friday before last.

3            And he told us, I'm being compelled to sit for this

4    deposition and our ears sort of collectively perked up, and we

5    said, we thought this was stayed -- what's going on there.

6    And so on Monday following Friday before last, on the 15th, I

7    reached out to Mr. Potter, and we sort of went from there.

8            And it -- it really, you know, the estates and the

9    trustee's concerns, I think, are obvious.  I mean, there

10   were -- there were claims directly asserted against the debtor

11   in the counterclaims.

12           There are estate claims being asserted, I think

13   nobody would argue the Breach of Fiduciary Duties is anything

14   but an estate claim.  That the trustee and only the trustee

15   can -- can assert at this point in time, and then, obviously,

16   you know, a deposition coming up.  With these issues

17   presumably still live in the arbitration, and those are a

18   continuation of a proceeding against the debtor.  I think

19   that's all undisputed.  I think it's very simple.  I don't

20   know what the JAMS procedural rules are.

21           Normally, I would have liked to have seen a dismissal

22   of some sort.  And had I received a copy of, you know, a

23   dismissal in the arbitration that advised that the following

24   claims have been dismissed without prejudice, we may not even

25   be here today.

49

WITH PURPOSE, INC., DEBTOR

1      I -- I believe Mr. Potter when he says that they are

2   trying to navigate the Stay issues and trying to be respectful

3   and careful of -- of, you know, of the stay, and of the

4   estates claims and claims against the debtor, I -- I believe

5   him.

6      And -- and that's why we, that's why I said, like,

7   let's just reach a stipulation where we can delineate what --

8   what you're doing and what you're not doing.

9      And I think the stipulation does a good job of that,

10  but I understand, also, that Mr. Neugebauer has concerns about

11  having to sit for a deposition where he was deeply involved

12  with the debtor.  Where he will probably test- -- I mean, all

13  these claims revolve around what happened with the debtor.

14     And so naturally, parties are going to touch on what

15  happened with the debtor and if people are under oath, then

16  they need to tell the truth, and that has an impact in later

17  litigation that's, you know, somewhere filed that may be or

18  that may not be, right.

19     I mean, if -- if he testifies tomorrow, assuming it

20  goes forward, about something happened or didn't happen, he's

21  under oath and he needs to tell the truth.

22     And so there may be other litigation at some point

23  between Mr. Ayers and Mr. Neugebauer in some other deal where

24  they talk about the debtor.  Well, we -- we can't sort of

25  infinitely try to say, well, because it relates to the debtor

WITH PURPOSE, INC., DEBTOR

1    it's stayed and we can't proceed, right.

2         And so that's why we need the stipulation that we

3    think it gets rid of the claims against the debtor.  It takes

4    care of the estate claims, and it also says none of the

5    findings in the arbitration, or findings by the arbitrator are

6    binding on the estate.  And nor will an arbitration judgement

7    be binding against the, or be res judicata, or collateral

8    estoppel or any of those things, right.

9         And so that's at least as between the Ayers parties

10   and the estate.  I understand there are other parties here

11   that are not signing onto that stipulation.  I don't know what

12   other counter claims that they may have against Mr. Ayers that

13   they may bring in the future and maybe those will potentially

14   run afoul of the stay or not.  I'm sure that they would

15   consult with us.

16        And so where that leaves us today, Your Honor, is

17   that I do think the posture is awkward, and I think it's a

18   little bit backwards.  All right.

19        Normally, you would expect a litigant who has

20   counterclaimed against a debtor and a non-debtor, to come to

21   this Court and say, Judge, we would like for, you know, an

22   order -- a comfort order, a 362-J order, something to that

23   effect that gives them comfort to go forward.  And that didn't

24   happen here.

25        But that also doesn't mean that there isn't another

WITH PURPOSE, INC., DEBTOR

1   way to get to the same place.  And -- and really, I'll get to

2   the motivation for expediting this, and why we think moving

3   quickly makes some sense.  Although this is moving extremely

4   quickly.

5          We're trying to avoid being caught in the middle of

6   two well-funded, aggressive, non-debtor litigants, who want to

7   have what looks like a rock fight somewhere else.

8          And we're just trying to stay out of that and make

9   sure that the estates claims are being preserved and

10  unaffected.  That certainly no claims against the debtor or

11  the estate proceed, and that any collateral impact of such a

12  proceeding is limited as to the debtor.

13         The -- the estate and the trustee have no intent of

14  proceeding in this arbitration.  It's $7,000 a day.  This

15  estate has less than $30,000 in it.

16         We believe that the estate has non-arbitrable claims.

17  We think that there are, under, you know, Federal law, that

18  are not arbitrable.  And then separately, also, the estate has

19  claims that wouldn't even fall within this arbitration

20  agreement.

21         I understand Mr. Neugebauer believes, maybe, the

22  arbitration in its entirety may not even be subject to -- to

23  the arbitration agreement.

24         So the trustee has no intent to be involved in the

25  arbitration, but this is the type of proceeding where the

WITH PURPOSE, INC., DEBTOR

1    estate really stands nothing to gain, and all we're doing is

2    running up administrative costs.

3           And I'm just wary that delaying these issues is just

4    going to be more of an administrative burden on the estate to

5    deal with, where the estate has very little to gain.

6           The trustee is conducting his own investigation into

7    both of the sets of parties that are here today.  We believe

8    there are collateral claims against both sets of parties.  We

9    will bring those in the appropriate venue when -- when the

10   time is right.  We are interviewing litigation counsel to do

11   so.

12          So I think Your Honor will understand our inclination

13   to extract the estate from whatever is going on there and have

14   a stipulation that protects the estate as much as we can.

15          And we did do it quickly.  I think it works.  But I,

16   you know, I will also say that I'm not sure that I understand

17   why this deposition has to go forward tomorrow as opposed to a

18   week from tomorrow.

19          There were conversations about that, can we kick this

20   by a week and give everybody some more time to get

21   comfortable.  I will say the trustee is comfortable standing

22   here today, but I understand there are other parties affected

23   by this and that's it's moving quickly.

24          So when it comes to the expedite, it's to avoid

25   delay.  Expense that does not benefit the creditors.  That's

WITH PURPOSE, INC., DEBTOR

1    why expediting this makes some sense to us, and also to give

2    the estate and the trustee clarity and comfort quickly that we

3    don't need to start appearing in this JAMS proceeding just to

4    make sure that the estate's rights aren't being affected.

5           And we think with this stipulation, we can trust and

6    go forward that we're not going to get ambushed down the road

7    by something that happened in -- in that proceeding and be

8    prejudiced by that.

9           So that's why moving quickly makes some sense to us,

10   and I, you know, if the Court doesn't grant the expedite, and

11   there's no orders entered today, I will caution all the

12   parties that proceed, and including JAMS.  I think proceeding

13   tomorrow, I think risks a stay violation if there are live

14   pending claims that are property of the estate that are

15   against the debtor, I would caution the parties to be careful.

16          And I will also finish by saying the stipulation

17   doesn't include any releases, right.  And so to the extent

18   folks want to continue in that other venue, and fight, that's

19   fine.  But, you know, they ought to be mindful that there's a

20   bankruptcy case, and that there is a stay.  And that, you

21   know, nobody's been released from anything.  Thank you.

22          THE COURT:  Thank you, Mr. Berghman.

23          All right.  Does anyone wish to have any -- just one

24   moment, Mr. Osborne, and I'll -- as movement, I will return to

25   you.

WITH PURPOSE, INC., DEBTOR

1       Do the parties believe that there's a need for any

2   separate argument with respect to the Motion to Expedite the

3   stipulation, or do we think that we've covered the same

4   reasons?

5       MR. STOHNER:  I didn't.  I'm going to object to that.

6       THE COURT:  Yeah, let's come to the mic.  Thank you.

7       MR. STOHNER:  My concern was, and we -- that their

8   stipulation should not be taken up or expedited if the motion

9   is not taken up.  But if you're taking up both, I think that

10  we could respond to concerns or issues relative to the

11  stipulation if that's clear.

12      THE COURT:  Okay.  Thank you, Mr. Stohner.

13      Anything further with respect to argument on the

14  Motion to Expedite the Motion to Enforce the Stay?  In

15  response, or?

16      MR. STOHNER:  No, I don't want to burn the car with

17  more time.  I would just say that Mr. Potter never addressed

18  the issue under 362(a)(3) about claims.

19      And that's what *SI Acquisition* and all of its

20  progeny, which are a number of them say, that is a stay

21  violation.  And he has consistently tried to say, we didn't

22  violate stay, we didn't violate stay, we didn't violate the

23  stay.  We always said we were pursuing just Neugebauer.

24      That totally ignores 362(a)(3).  And that's a key

25  issue, and Your Honor, and I think that it's -- it's paramount

WITH PURPOSE, INC., DEBTOR

1    to what's before us.  And there's more than just the Breach of

2    Fiduciary Duty.  I'll just note that.

3            THE COURT:  Okay.  Thank you, Mr. Stohner.

4            All right.  Here's what the Court's going to do with

5    respect to the Motion to Expedite.  Actually with respect to

6    both motions.  I'll be frank with you guys, I don't think

7    either of these motions is ripe to be heard today,

8    substantively.

9            There has been no motion set before the Court to go

10   forward in the arbitration.  The Court has, frankly, no

11   clarity what is going forward at all.  I don't think the

12   parties have any clarity about what's going forward at the

13   depo; which claims are being heard, which claims are not being

14   heard.

15           They will be no ability to get the dismissal of any

16   of the claims that, again, not before me, but as I read *SI*

17   *Acquisitions*, and I read these counterclaims, I see some

18   problems.  Okay.

19           I think that we need a lot more clarity, and we need

20   to proceed with purpose with respect to knowing exactly what

21   we're doing going forward.

22           I think that in the Court's estimation, going forward

23   in the arbitration, whether that be on the point of Mr.

24   Neugebauer, or whether that be on the point of the Ayers'

25   parties continuing to go forward in that arbitration without

WITH PURPOSE, INC., DEBTOR

1    ever coming back to the bankruptcy court and saying, there was

2    an arbitration.  I think it's stayed; I think it's not.

3           You are proceeding with so much risk there.  You're

4    proceeding with risk if you're Mr. Neugebauer, you're

5    proceeding with risk if you're the Ayers' parties.  And I

6    personally believe at this juncture that moving quickly is in

7    no one's best interest at this point.

8           You know, Mr. Potter, what I'll tell you on behalf of

9    the Ayers' parties is the Court's reasoning today with respect

10   to the Motion to Expedite is just that, it is with respect to

11   whether or not expedition is appropriate.  And I don't believe

12   that expedition is appropriate today on the Motion to Enforce

13   the Automatic Stay because I think that the parties need time

14   to sit down and talk, especially since there is new counsel

15   representing Mr. Neugebauer.

16          I also believe that someone needs to press the pause

17   button to see what's going forward and there needs to be some

18   clarity because I can't see it in the pleadings that were

19   brought to me.  I don't know what's going forward and what's

20   not.

21          I see that earlier this month you filed a new

22   Supplemental Notice of Claims.  I see that there's a new style

23   in the caption, but that doesn't tell me, okay, someone's been

24   severed, someone hasn't been severed.  These belong to the

25   estate, and, essentially what's truly happening.

WITH PURPOSE, INC., DEBTOR

1      And whether it's *SI Acquisition, Lothian Oil*, *Reliant*

2   *Energy vs Enron Canada,* or, frankly, even *In Re: Chestnut*,

3   what the Fifth Circuit has said time and time again is, ask

4   for permission, not for forgiveness.

5      And so I don't want folks running in here with

6   motions for Stay violations, and candidly I don't want on

7   shortened notice for folks to have to run in here for Motions

8   to Enforce the Stay.

9      I think that everyone needs to act more cautiously,

10  and with particularity, as to what's going forward.  So if the

11  parties wish to be heard on the stipulation today, if you feel

12  like you've had enough time with that, then I'll take it up.

13     If not, what I'm going to do is I'm going to set both

14  Motions Substantively and again, on an interim basis, in that

15  time, I am going to stay the deposition.  Again, to allow

16  folks to have time to just determine -- I'm not saying that

17  the deposition isn't appropriate.  These are two non-debtors,

18  and they're very -- and I'll be honest, just so you are fully

19  armed at the substantive hearing.

20     I'm going to have a hard time getting to the point

21  where going forward against Mr. Neugebauer, necessarily, that

22  the stay should be extended as to him.

23     When I extend stays as directors and officers, it's

24  usually because we're in Chapter 11s and it would have an

25  impact on a restructuring.  We don't have that here.

58

1        That's going to be a hard standard to bear, but with

2   that said, I also am cognizant of the trustee's perspective

3   that, if you're deposing Mr. Neugebauer on one thing, it's

4   really easy to delve into what would have otherwise been

5   estate claims.

6        So I am going to stay the deposition.  And again,

7   my intention would be to stay it for a short period of time to

8   allow the parties to have these motions heard.  And I'd like

9   them heard on full notice.

10       I don't want folks to have to brief these things on

11  just a few days' notice.  I'll basically put a pox on both

12  houses and say, from Mr. Neugebauer's perspective I would have

13  certainly wished this motion would have come to me much

14  sooner.  Okay.  Obviously, but by the time you get a motion

15  for a sanctions order on discovery, things have been a-

16  brewing.  Okay.

17       And if folks thought the stay was in place, and the

18  other side is telling you, oh, no it's not, well, then come to

19  me on a Motion for a Stay Violation rather than a Motion to

20  Enforce the Automatic Stay on a day's notice.  Okay.

21       I'll say that.  And I'll say to Mr. Potter, and the

22  Ayers' folks, again, I recognize, and I understand your

23  argument on the law as to what you believe from your client's

24  perspective as going forward.  But just realize that you're

25  playing with fire.  Okay.  The Automatic Stay is not something

WITH PURPOSE, INC., DEBTOR

1   to be toyed with, and please don't hear me as saying that you

2   have violated the stay.  But what I will say is that

3   everything that's gone forward that I can see in the last

4   month, is really putting your toe on the line of the

5   Automatic Stay.  And I don't think that's in anyone's best

6   interest, either, from the Ayers' side or from the

7   Neugebauer's side.

8          And so what I'm going to do, is I'm going to stay the

9   deposition for 30 days.  And that's not to say that the

10  deposition will occur on June 23rd, or anything like that.

11  I'm not saying that.  I'd like it to be set at a mutually

12  agreeable time, if it can, but I'm going to stay it just to

13  allow this to be heard.

14         And at the end of that hearing, depending on kind of

15  where we wind up, the folks can talk offline because obviously

16  that's in the arb, y'all can talk offline about the reset

17  there, but in the meantime I'm going to set the motions out on

18  full notice.

19         Again, unless the Neugebauer side wants to take up

20  the stipulation today.

21         MR. STOHNER:  I think what Your Honor said is a fair

22  and appropriate result.

23         THE COURT:  Okay.  All right.  So again, there's no

24  magic to the Court's 30 days that just allows the parties to

25  get with Ms. Harden, get these motions on the docket for full

WITH PURPOSE, INC., DEBTOR

1    notice and hearing.

2          Again, if folks want to file any supplemental

3    pleadings, given the extra time that I'm giving the parties,

4    I'd like these fully briefed about a week ahead of hearing if

5    I could.  All right.

6          MR. STOHNER:  Will Your Honor enter an order; you

7    want me to prepare an order for your review?

8          THE COURT:  If you can prepare an order, circulate it

9    to the other side, and then upload it, I'd be --

10         MR. STOHNER:  We'll do that.

11         THE COURT:  Yeah, if it's an agreed order, based upon

12   the Court's ruling, then the Court will be happy to enter it.

13   All right.

14         MR. STOHNER:  Thank you, Your Honor.

15         MS. KIPPES:  Your Honor?

16         THE COURT:  Oh, yes, Ms. Kippes.

17         MS. KIPPES:  Hi.  This is only tangentially related

18   to these motions that, an important point to make, and I've

19   made it in emails, but I wanted -- I'm -- I'm not sure that

20   everybody who is in the hearing or on the call has been on the

21   emails.

22         With regard to Motions to Seal, which I think we'll

23   probably see more of, the U.S. Trustee always has language

24   that we ask be included in the sealing order.

25         It basically says that any document that is sealed

WITH PURPOSE, INC., DEBTOR

1   will be shared with the U.S. Trustee, and the U.S. Trustee is

2   advised of and subject to the Sealing Order.  And that the

3   order doesn't limit any parties, including U.S. Trustee's

4   ability to use any sealed document or testimonies related to

5   the sealed document in connection with any criminal or ethical

6   violation referral.

7         We ask that every time there's a Motion to Seal, and

8   Mr. Potter has agreed to include that language in his Sealing

9   Orders, and I would just request that all the other parties be

10  aware of that language, and include that language as well to

11  the extent that they also file wishes to seal.

12        THE COURT:  Thank you very much, Ms. Kippes.

13        Mr. Stohner?

14        MR. STOHNER:  Can I also suggest, and maybe the

15  parties can come to an agreement, that there still is -- is an

16  open issue on the stay order?  Can that be set at the same

17  time?

18        THE COURT:  Yes, Ms. Kippes jogged my memory.  I

19  think that what would probably be a good idea is to set along

20  with the setting on these two motions, essentially a status

21  conference on the sealing of the documents.

22        If the parties can reach an agreement on whether or

23  not they should be sealed or unsealed, then we can present

24  that at that time.  If not, if the parties are still opposed,

25  perhaps we'll hear argument on that day on whether or not they

WITH PURPOSE, INC., DEBTOR

1    should be sealed.

2            Obviously, I think, I'm not even sure that Mr. Potter

3    has properly had the opportunity to brief why he thinks it

4    should be sealed on a fulsome basis.

5            Obviously, you know, this came about in rapid order,

6    but let's just go ahead and set that for the same hearing.

7    All right.

8            MR. STOHNER:  Very good.  Thank you, Your Honor.

9            THE COURT:  Anything else ladies and gentleman?  All

10   right.

11           MR. POTTER:  Nothing from me, Judge.  Thank you.

12           THE COURT:  Oh, you're very welcome.  Okay.  So

13   again, have a great vacation, Mr. Potter.  So sorry, we had to

14   do this, but other than that, I will look forward to seeing it

15   on the docket.  All right.

16           MR. STOHNER:  Thank you, Your Honor.

17           MR. BERGHMAN:  Thank you, Judge.

18           THE COURT:  You guys have a great day.  Court will

19   stand adjourned for the day.

20           THE CLERK:  All rise.

21       (WHEREUPON these proceedings were concluded at 03:00 p.m.)

22

23

24

25

WITH PURPOSE, INC., DEBTOR

1

2                                I N D E X

3

HEARING re Motion to set hearing (related documents 44 Motion
4      for Emergency Hearing on Emergency Motion for Entry of an
Order Enforcing the Automatic Stay Against James Nicholas
5      Ayers, the J. Nicholas Ayers 2021 Irrevocable Trust, and Ayers
Family Holding, LLC Filed by Interested Party Toby Neugebauer

6
HEARING re Emergency Motion for Entry of an Order Enforcing
7      the Automatic Stay Against James Nicholas Ayers, the J.
Nicholas Ayers 2021 Irrevocable Trust, and Ayers Family
8      Holdings, LLC Filed by Interested Party Toby Neugebauer

9      HEARING re Motion for expedited hearing (related documents 51
Motion for leave) - Motion for Emergency Hearing Filed by
10     Trustee Scott M. Seidel

11     HEARING re Trustee's Emergency Motion for Approval and Entry
of Stipulation and Agreed Order Regarding Arbitration Filed by
12     Trustee Scott M. Seidel

13
RULINGS:
14
DEPOSITION STAYED                                    59
15

16
EXHIBITS:
17
Exhibit 1 through 7                                  12
18

19

20

21

22

23

24

25

64

WITH PURPOSE, INC., DEBTOR

1

2

C E R T I F I C A T I O N

3

4

     I, Nancy B. Gardelli of Acorn Transcripts, LLC., a

5

federally-approved transcription service, hereby certify that

6

the foregoing is a correct transcript, to the best of my

7

ability, from the official electronic sound recording of the

8

proceedings in the above-entitled matter.

9

10

11

12

13

/s/ *Nancy B. Gardelli*    DATE:  May 23, 2023

14

Nancy B. Gardelli

15

Acorn Transcripts, LLC

16

3572 Acorn Street

17

North Port, FL  34286

18

19

My commission expires:

20

June 28, 2023

21

22

23

24

25