Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas D. Berghman, Esq.
Texas Bar No. 24082683
Conor P. White, Esq.
Texas Bar No. 24125722
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 4000
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

ATTORNEYS FOR
SCOTT M. SEIDEL, TRUSTEE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | § |
| | §  Chapter 7 |
| WITH PURPOSE, INC., | § |
| | §  Case No. 23-30246-mvl-7 |
| Debtor. | § |

**TRUSTEE'S AMENDED MOTION FOR ENTRY OF (I) AN ORDER
(A) APPROVING BID AND NOTICING PROCEDURES, (B) SCHEDULING AN
AUCTION AND HEARING, AND (C) GRANTING RELATED RELIEF; AND
(II) AN ORDER (A) APPROVING SALE OF ESTATE CAUSES OF ACTION
FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND
<u>INTERESTS, AND (B) GRANTING RELATED RELIEF</u>**

**NO HEARING WILL BE CONDUCTED HEREON, AND ANY HEARING SCHEDULED HEREON MAY BE CANCELLED WITHOUT FURTHER NOTICE, UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT, 1100 COMMERCE STREET, SUITE 1254, DALLAS, TEXAS 75242 BEFORE CLOSE OF BUSINESS ON <u>MAY 3, 2024</u>, WHICH IS AT LEAST 21 DAYS FROM THE DATE OF SERVICE HEREOF.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.**

**IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING**

---

**THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN, AND THE HEARING SCHEDULED ON THIS MOTION MAY BE CANCELLED, WITHOUT FURTHER NOTICE.**

TO THE HONORABLE MICHELLE V. LARSON,
UNITED STATES BANKRUPTCY JUDGE:

COMES NOW Scott M. Seidel (the "Trustee"), the trustee in the above styled and numbered bankruptcy case (the "Bankruptcy Case") of With Purpose, Inc. (the "Debtor") in the above styled and numbered bankruptcy proceeding, and files this *Amended Motion for Entry of (I) an Order, (A) Approving Bid and Noticing Procedures, (B) Scheduling an Auction and Hearing, and (C) Granting Related Relief; and (II) an Order (A) Approving Sale of Estate Causes of Action Free and Clear of All Liens, Claims, Encumbrances and Interests, and (B) Granting Related Relief* (the "Motion"), respectfully stating as follows:

## I.   PROCEDURAL BACKGROUND

1. On February 8, 2023, the Debtor filed its voluntary petition for relief under chapter 7 of title 11 of the United States Code, thereby creating the debtor's estate (the "Estate").

2. The Trustee is the duly appointed Chapter 7 trustee of the Estate.

3. This Court has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. § 1334. The District Court's jurisdiction has been referred to this Court pursuant to 28 U.S.C. § 157 and the District Court's Miscellaneous Order No. 33, *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 3, 1984. Consideration of this Motion is a core proceeding under 28 U.S.C. § 157(b), which may be heard and finally determined by this Court. Venue before this Court is appropriate under 28 U.S.C. §§ 1408 and 1409. The

statutory predicates for the relief requested in the Motion are 11 U.S.C. §§ 105(a) and 363, and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure.

4. A motion to approve bid procedures and the sale of certain of the Debtor's assets was previously filed on November 29, 2023. [Docket No. 152]. OnPoint Companies, LLC ("OnPoint"), as collateral agent for certain debt of the Debtor, objected to the sale of its purported collateral. Following a hearing, and taking into account statements made on the record and in discussions with various parties, the *Motion for Approval of Settlement Agreement With OnPoint Companies, LLC* (the "OnPoint Settlement Motion") [Docket No. 172] was filed seeking to settle certain claims and issues which would have provided for the sale of non-litigation assets of the Estate. Several parties objected to the OnPoint Settlement Motion and such objections were not resolved. Accordingly, the OnPoint Settlement Motion has been withdrawn.

5. Only the Estate's litigation assets are the subject of this amended motion.

## II. RELIEF REQUESTED

6. By this Motion, *first* the entry of an order in substantially the form attached hereto as Exhibit A (the "Procedures Order") is sought:

   a. authorizing and approving the noticing and bid procedures set forth below in connection with the sale (the "Sale") of the Estate's litigation assets, namely the Causes of Action (defined below);

   b. approving the form of notice of sale and auction (the "Auction Notice");

   c. scheduling an auction and a hearing (the "Sale Hearing") with respect to the Sale of some or all of the Causes of Action;

   d. establishing deadlines for filing of a proposed order approving one or more Sales (the "Sale Order"); and

   e. granting related relief.

7. *Second*, at the conclusion of the Sale Hearing, the Trustee may seek entry of the Sale Order:

    a. Authorizing and approving the Sale of some or all of the Causes of Action to one or more successful bidders on the terms set forth in the successful bid(s) and free and clear of liens, claims, encumbrances, and other interests; and

    b. granting related relief.

8. The Trustee reserves the right to file and serve any supplemental pleading or declaration that the Trustee deems appropriate or necessary, including any pleading summarizing the bidding and sale process and the results thereof, in support of the request for entry of the Sale Order before the Sale Hearing.

## III. DISCUSSION

### A. The Causes of Action

9. The Debtor, under the moniker GloriFi, aimed to provide a comprehensive package of financial products including credit cards, banking, insurance, mortgage, and brokerage services to 100 million Americans looking for such services from a company that shared their ideals and values. The Debtor, initially, had strong support and financial backing from high net worth individuals and entities that shared the Debtor's vision and goals for the enterprise. With seed money and the protections afforded by, among other things, non-disclosure agreements, non-compete provisions, non-disparagement clauses and common law fiduciary duties, the Debtor began the arduous tasks of developing the technology and marketing strategy for the business and raising the additional capital necessary to sustain the business.

10. Unfortunately for many of those that loaned money or provided services to the Debtor, the Debtor was plagued by infighting, self-dealing, and other conduct that damaged the Debtor and its valuable business prospects. The Trustee, with the assistance of his counsel, has

undertaken a review of hundreds of thousands of pages of discovery and Debtor materials and has identified potential claims and causes of action (the "Causes of Action") against many of those who were in positions of power or influence within the Debtor's organization.  "Causes of Action" includes any claims, causes of action, interests, damages, remedies, demands, rights, actions (including actions under chapter 5 of the Bankruptcy Code), suits, debts, sums of money, obligations, judgments, liabilities, accounts, defenses, offsets, counterclaims, crossclaims, powers, privileges, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, now existing or hereafter arising, contingent or non-contingent, liquidated or unliquidated, choate or inchoate, secured or unsecured, assertible, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise, owned by or otherwise accruing to the Debtor and the Estate, whether arising before or on the Petition Date, against any current or former officer, director, advisor, shareholder, lender or noteholder, any party to contract including confidentiality, non-disclosure, non-compete, non-disparagement or similar provisions, and any affiliate, current or former officer or director, or representative of any of the above.

11. In particular, the Trustee has developed facts that likely support potential Causes of Action related to the demise of the Debtor against the 4 to 6 upper tier management and investor parties ("Tier One Parties") that were primarily involved in strategy and direction of the Debtor (the "Management Causes of Action").  These Management Causes of Action include, but are not limited to, breach of fiduciary duty and breach of contract.

12. Early investors in the Debtor (the "Founders") developed a Monopoly board of businesses the Debtor would build and market under the GloriFi brand.  In the fall of 2021, certain of the Founders and Debtor management recruited additional like-minded and wealthy individuals

to invest in the Debtor and participate in management. A short 2 to 3 months later, disagreements emerged among investors, members of management and the Debtor's board of directors regarding how to manage the business and how to raise the additional needed capital. The Trustee is aware of multiple credible allegations that fiduciary duties and contracts were breached as the Debtor faced multiple liquidity crises and as businesses once on the Debtor's Monopoly board appeared in the market – backed by those who had access to the Debtor's confidential information. On the other hand, the Trustee is also aware of allegations of mismanagement, self-dealing and other misconduct that amplified the Debtor's already existing concerns. The Management Causes of Action against the Tier One Parties are valuable assets and the monetization of the same is in the best interest of creditors of this Estate.

13. In addition to the Management Causes of Action, the Debtor also holds other potential Causes of Action against parties who are not identified as Tier One Parties. For the avoidance of doubt, nothing in this Motion is intended to sell, or cause the Estate to part with, any interest in property that is subject to a purported lien for the benefit of OnPoint Companies, LLC.

### B. Proposed Auction and Sale of the Causes of Action

14. The Trustee has been approached by a number of parties interested in pursuing Causes of Action and/or acquiring all of the Estate's assets. To date, the Trustee has received offers, including from at least one of the Tier One Parties, in the range of $2 million to $2.5 million in cash plus 15%-20% of net recovery following reasonable expenses upon liquidation of the Causes of Action. An auction and sale of the Causes of Action currently represents the best option available to maximize value for creditors in this chapter 7 proceeding. While there may still be matters to resolve regarding the Estate's non-litigation assets, the Causes of Action are viable, ready for sale, and can be severed from the Estate's non-litigation assets. Accordingly, by this

Motion, the Trustee seeks authority to auction and sell the Estate's Causes of Action. For the avoidance of doubt, the Trustee is reserving, and not selling, the right to object to claims asserted against the Estate by any party.

15. To maximize potential proceeds for the Estate, the Causes of Action will be categorized in three parts – (i) Management Causes of Action, (ii) Other Causes of Action, and (iii) All Causes of Action. First, a minimum required bid amount (i.e. a reserve) for each Management Cause of Action will be identified on an exhibit to the Auction Notice upon its service. Second, any subject of an Other Cause of Action may submit a bid for Causes of Action against itself. Third, any Management Cause of Action or Other Cause of Action that is not the subject of a successful Bid will be included within the All Causes of Action set of claims sold to a successful bidder.

### C. Bidding Procedures

16. The Auction shall be held following notice and according to certain bidding and auction procedures (the "Bidding Procedures"), the approval of which is requested by this Motion. By this Motion, it is requested that the Court approve the following Bidding Procedures to govern the Auction:

(i) Marketing. The Estate's Causes of Action shall be marketed by notice of this Motion upon the entire matrix and, specifically, by informing the Tier One Parties and all other parties who have expressed an interest to the Trustee in acquiring some or all of the Causes of Action, of the Auction and the Bidding Procedures, including by providing the same with a copy of the Auction Notice and Procedures Order.

(ii) Announcement of Auction. Within one (1) business day following the entry of the Procedures Order, the Auction Notice and the Procedures Order shall be served by U.S. Mail First Class, postage prepaid on all known creditors and parties-in-interest having appeared in the Bankruptcy Case; potential litigation targets, including the Tier One Parties; parties requesting notice in the Bankruptcy Case; and any other party who has expressed an interest to the Trustee in acquiring some or all of the Estate's Causes of Action.

(iii) <u>Due Diligence</u>. Any interested party shall be provided reasonable due diligence during normal business hours to review non-privileged books and records related to the Estate's Causes of Action.

(iv) <u>Qualified Bidder and Deadline.</u> Only a Qualified Bidder may participate in the Auction. In order to become a Qualified Bidder, an interested party or group must tender to the Trustee, by the Bid Deadline: a Bid Letter specifying the Causes of Action covered by the Bid; the Bid Deposit; and a Qualified APA. To be a Qualified Bidder, each Bidder further agrees that its Bid, if not chosen as the Successful Bidder, shall serve, without modification, as a Back-up Bidder (as defined below) as may be designated by the Trustee at the Sale Hearing, in the event the Successful Bidder fails to close as provided in the Successful Bidder's purchase agreement, as modified, if at all, and the Sale Order.

(v) <u>Bid Deadline</u>. The Bid Deadline shall be 12:00 p.m. on May 24, 2024.

(vi) <u>Bid Deposit</u>. The Bid Deposit shall be 30% of the cash portion of the Bid by wire transfer received in advance of the date set for the Auction.

(vii) <u>Proposed APA</u>.

Each bidder shall submit its form Proposed APA tailored to the Causes of Action made the subject of the Bid. The Trustee shall retain the right to reject a Proposed APA in his business judgment. A Proposed APA acceptable to the Trustee shall be a Qualified APA. The following shall be required of any Qualified APA:

  a. If the Qualified Bidder is a group, it must contain a disclosure of all members of the group and a representation that the members of the group did not engage in collusive behavior;

  b. If the Bid is for one or more Management Causes of Action, it must include an offer of no less than the cash price and other consideration identified in the exhibit to the Auction Notice;

  c. It must not be subject to any due diligence;

  d. It must not be subject to any financing contingency;

  e. It must disclose whether the bidder or any of its affiliates or insiders are insiders of the Debtor, as defined in 11 U.S.C. § 101(a)(31);

  f. It must not contain any break-up fee or expense reimbursement; and

  g. It must provide for a closing no later than two (2) business days after the day on which the Court enters the order approving the Sale, unless such order is stayed.

(ix) <u>Auction Commencement</u>. The Auction shall commence at 9:00 a.m. CT on June 5, 2024, and shall take place at the offices of Munsch Hardt Kopf & Harr, P.C. or as otherwise designated by the Trustee. The Auction shall be open only to those having submitted a Qualified Bid. At least one agent of each Qualified Bidder must be personally present to bid and to execute documents.

(xi) <u>Treatment of Bids at the Auction</u>.

*Overbid and Bid Increments.* The first overbid, and each successive bid, must be in increments of at least an additional 10% of the applicable Starting Bid. The Trustee may conduct rounds of bidding in his discretion.

*Successful Bidder and Back-up Bidder.* The Trustee shall announce one or more Successful Bidders at the conclusion of the Auction. At the conclusion of the Auction, the party(ies) with the next highest or otherwise best Qualified Bid for any particular Cause of Action or Causes of Action, shall be required to serve as backup bidder (the "<u>Back-up Bidder</u>"). The Back-up Bidder shall be required to keep its final Bid(s) open and irrevocable until the later of 4:00 p.m. (prevailing Central Time) on the date that is five (5) days after the date of the Sale Hearing or the closing of the transaction with the Successful Bidder. Following entry of the Sale Order, if the Successful Bidder fails to consummate an approved transaction because of a breach or failure to perform on the part of such Successful Bidder, the Trustee may designate the Back-up Bidder to be the new Successful Bidder, and the Trustee will be authorized, but not required, to consummate the transaction with the Back-up Bidder without further order of the Bankruptcy Court. Each Successful Bidder and Back-Up Bidder must be prepared to participate at the Sale Hearing and present such arguments, representations, or evidence as may be required by the Court, although the Trustee, at his burden and expense, shall otherwise take the lead in conducting the Sale Hearing.

(xiii) <u>Bid Deposit Returns</u>. The Bid Deposits of all bidders other than the Successful Bidder(s) and the Back-Up Bidder(s) shall be promptly returned following the conclusion of the Auction. The Bid Deposits of Successful Bidder(s) and Back-Up Bidder(s) shall be retained, returned, or applied as otherwise provided for in their Qualified APAs. For the avoidance of doubt, the Bid Deposit of a Successful Bidder and/or the Back-Up Bidder shall be forfeited to the Estate if the Trustee proceeds to a closing, and all conditions precedent are satisfied, yet the Successful Bidder and/or the Back-Up Bidder fails to close.

## IV.    ARGUMENT AND AUTHORITIES

### A. Noticing and Bid Procedures Should be Approved

17.  The Trustee requests that the Court approve the proposed noticing, form of Auction Notice, and Bid Procedures to govern the sale of Causes of Action. The Trustee's business judgment applies to all aspects of a proposed disposition. *See, e.g., Institutional Creditors of Continental Air Lines Inc. v. Continental Air Lines Inc. (In re Continental Air Lines Inc.),* 780 F.2d 1223, 1226 (5th Cir. 1986). This requires the Trustee to present "some articulated business justification," whereupon his judgment should not be lightly disturbed. *See In re ASARCO LLC*, 650 F.3d 593, 601 (5th Cir. 2011).

18.  The paramount goal in any proposed disposition of property of the estate is to maximize the proceeds received by the estate. *See, e.g., Four B. Corp. v. Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *Official Committee of Subordinated Bondholders v. Integrated Resources, Inc.*, 147 B.R. 650, 659 (S.D.N.Y. 1992). To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy dispositions. *See, e.g., Integrated Resources*, 347 B.R. at 659 (such procedures "encourage bidding and maximize the value of the debtor's assets"). *See also In re Financial News Network Inc.*, 126 B.R. 152, 156 (S.D.N.Y. 1991) ("court-imposed rules for the disposition of assets . . . provide an adequate basis for comparison of offers, and [ ] provide for a fair and efficient resolution of bankrupt estates").

19.  Here, the proposed notice, bidding and auction procedure is designed to engage the most likely acquirors of the Causes of Action - the Tier One Parties and others who have already expressed an interest in acquiring one or more Causes of Action. Further, the auction process is

structured to maximize value of the Estate's assets by accepting and weighing proposed bids for various Causes of Action, thereby attracting bidders with differing goals and interests.

### B. Sale of Estate's Causes of Action Should be Approved

20. This Court may authorize the sale of the Estate's Causes of Action pursuant to Section 363(b)(1) of the Bankruptcy Code. 11 U.S.C. § 363(b)(1). The sale of the assets of a debtor outside the ordinary course of business may be approved by a bankruptcy court when: (i) there is a sound business reason for the sale; (ii) accurate and reasonable notice is provided to interested parties; (iii) the price is fair, reasonable and adequate; and (iv) the sale is made to the purchaser in good faith. *See, e.g., In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991); *In re Stroud Ford, Inc.*, 163 B.R. 730, 732 (Bankr. M.D. Pa. 1993); *In re Titusville Country Club*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Industrial Valley Refrigeration and Air Conditioning Supplies, Inc.*, 77 B.R. 15, 21 (Bankr. E.D. Pa. 1987). As recognized by the Fifth Circuit, the Trustee is entitled to use his business judgment in determining whether to sell assets outside the ordinary course. *See Institutional Creditors of Continental Air Lines Inc. v. Continental Air Lines Inc. (In re Continental Air Lines Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986).

21. Here, a Sale is a sound exercise of the Trustee's business judgment, for at least the following reasons:

- the Causes of Action are uncertain and could result in no recovery to the Estate; conversely, a sale of the Causes of Action both makes likely a recovery for creditors while retaining potential upside of litigation pursued and funded by third parties;

- prosecuting the Causes of Action would be extremely expensive given the litigious nature of the parties and the factual nature of the Causes of Action;

- any judgment would be further subject to years of appeals, during which rights would remain uncertain;

- the Sale will be exposed to the market, such as it is, and the Auction will therefore ensure that the final purchase price for a particular Cause of Action or all the Estate's Causes of Action is reasonable, fair, and appropriate.

22. Accordingly, the Trustee requests that the Court approve the Sale determined by the highest and best offer at the Auction.

## IV. NOTICE

23. Notice of this Motion and, if approved, the Auction Notice and the Procedures Order, shall be served on (i) creditor matrix; (ii) potential litigation targets, including the Tier One Parties; (iii) parties requesting notice in the Bankruptcy Case; and (iv) any other party who has expressed an interest to the Trustee in acquiring some or all of the Estate's Assets. The Trustee submits that, under the circumstances, no other or further notice of this Motion is required.

## V. PRAYER

WHEREFORE, PREMISES CONSIDERED, the Trustee respectfully requests that the Court enter an order: (i) approving the Bidding Procedures and form of Auction Notice; (ii) setting the Auction on the terms and dates requested above; (iii) setting the Sale Hearing; (iv) following the Sale Hearing, entering an order approving one or more Sales; and (v) granting the Trustee such other and further relief to which he may be justly entitled.

RESPECTFULLY SUBMITTED this 10th day of April 2024.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: */s/ Thomas Berghman*
Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas D. Berghman, Esq.
Texas Bar No. 24082683
Conor P. White, Esq.
Texas Bar No. 24125722
500 N. Akard Street, Suite 4000
Dallas, Texas 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

**ATTORNEYS FOR
SCOTT M. SEIDEL, TRUSTEE**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this the 10th day of April, 2024, true and correct copies of this document were electronically served by the Court's CM/ECF system on parties entitled to notice thereof and that, additionally, he caused true and correct copies of this document to be served by U.S. first class mail, postage prepaid, on the parties listed on the attached Service List.

By: */s/ Conor White*
Conor P. White