# SETTLEMENT AGREEMENT

This Settlement Agreement (this "Agreement") dated as of July 16, 2024 (the "Execution Date"), is made by and among all of the parties listed in (i)-(vii) below, who collectively are referred to herein as the "Parties") or in the singular case as a "Party."

i.   SCOTT M. SEIDEL as the chapter 7 trustee of With Purpose, Inc. (the "Trustee");

ii.   WITH PURPOSE, INC. (the "Debtor");

iii.   WPI COLLATERAL MANAGEMENT, LLC ("Collateral Agent");

iv.   TOBY NEUGEBAUER ("Neugebauer");

v.   BANZAI CAPITAL PARTNERS, LLC ("Banzai Capital");

vi.   BANZAI ADVISORY GROUP, LLC ("Banzai Advisory");

vii.   NEUGEBAUER FAMILY ENTERPRISES, LLC ("Enterprises").

Neugebauer, Banzai Capital, Banzai Advisory, and Enterprises are referred to herein collectively as the "Neugebauer Parties" and together with Collateral Agent, the "Adversary Defendants". References to the Collateral Agent for periods prior to the appointment of WPI Collateral Management, LLC as collateral agent under the Series II Notes (defined below), shall also include reference to OnPoint Companies, LLC in its capacity as collateral agent prior to the appointment of WPI Collateral Management, LLC. The "DE Litigation Plaintiffs" shall refer to the Neugebauer Parties. The "GA Litigation Plaintiffs" shall each refer to the Neugebauer Parties and the Collateral Agent.

## RECITALS

**WHEREAS**, on February 8, 2023 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 7 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court"), thereby initiating the bankruptcy case styled *In re With Purpose, Inc.*, Case No. 23-30246-mvl7 (the "Bankruptcy Case" and the estate thereof being referred to as "Estate");

**WHEREAS**, prior to the Petition Date, on or about January 5, 2023, the Collateral Agent asserts that it effected, and the Debtor consented to, a strict foreclosure (the "Foreclosure") on certain collateral of the Collateral Agent pursuant to that certain Guaranty and Collateral Agreement dated as of September 30, 2022 (the "Collateral Agreement") between the Debtor and the Collateral Agent acting on behalf of certain holders of those certain Series II Notes of various dates issued by the Debtor in favor of the holders thereof (the "Series II Notes" and holders thereof, the "Series II Holders");

**WHEREAS**, on May 17, 2024, the DE Litigation Plaintiffs filed a complaint in the United States District Court for the District of Delaware (the "Delaware Court"), thereby initiating Civil Proceeding 1:24-cv-00599 pending before that court (the "Delaware Litigation");

**WHEREAS**, on May 17, 2024, the GA Litigation Plaintiffs filed a complaint in the United States District Court for the Northern District of Georgia (the "Georgia Court"), thereby initiating Civil Proceeding 1:24-cv-02148 pending before that court (the "Georgia Litigation" and together with the Delaware Litigation, the "DEGA Litigation" and claims asserted in such litigation being the "DEGA Claims");

**WHEREAS**, on May 20, 2024, the Collateral Agent filed a motion for relief from the automatic stay [Bankr. Case Docket No. 199] (the "Computer Systems Claim Lift Stay Motion") to pursue certain tort claims that the Collateral Agent asserts were foreclosed upon pursuant to the Foreclosure;

**WHEREAS**, on May 22, 2024 the Collateral Agent filed a motion for relief from the automatic stay [Bankr. Case Docket No. 201] (the "Contract Claims Lift Stay Motion" and, together with the Computer Systems Claim Lift Stay Motion, the "Lift Stay Motions") seeking relief from the automatic stay to foreclose upon certain causes of action for breach of contract;

**WHEREAS**, on May 30, 2024, the Trustee filed a complaint against the Adversary Defendants in the Bankruptcy Court, thereby initiating Adversary Proceeding 24-03038-mvl pending before the Bankruptcy Court (the "Adversary Proceeding");

**WHEREAS,** on July 10, 2024, the Debtor filed a motion to convert [Bankr. Case Docket No. 217] (the "Motion to Convert") the Bankruptcy Case to a case under Chapter 11 of the Bankruptcy Code;

**WHEREAS**, the Collateral Agent filed a proof of claim [Claim No. 44] (the "Collateral Agent PoC") asserting a first priority secured claim pursuant to the Collateral Agreement as Collateral Agent for the Series II Holders.

**WHEREAS**, Blackstone Investments I, Ltd. filed a proof of claim [Claim No. 54] (the "Unreimbursed Expense Claim") asserting an unsecured claim for expenses paid on the Debtor's behalf

**WHEREAS**, Banzai Advisory filed a proof of claim [Claim No. 56] (the "Advisory PoC") asserting a claim for reimbursement of credit card receivables.

**WHEREAS**, Enterprises filed a proof of claim [Claim No. 52] (the "Enterprises GUC PoC") asserting an unsecured claim for moneys loaned by Enterprises to the Debtor.

**WHEREAS**, Neugebauer filed a proof of claim [Claim No. 50] (the "Neugebauer GUC PoC" and together with the Unreimbursed Expense Claim, the Enterprises GUC PoC, and the Advisory PoC, the "Neugebauer Parties' Claims") asserting a claim owed to Neugebauer on account of indemnity and contribution obligations of the Debtor.

**WHEREAS,** the Parties have bona fide disagreements pertaining to, *inter alia*, (i) the ownership of certain of the DEGA Claims, (ii) the effectiveness of the Foreclosure, (iii) propriety of the Motion to Convert, (iv) the Neugebauer Parties' Claims (defined below), (v) the Collateral Agent PoC (defined below), and (vi) the collateral under the Collateral Agreement;

**WHEREAS**, in an effort to efficiently and amicably resolve the contested issues in a cost-effective manner, the Parties and their counsel entered into ongoing settlement negotiations, including the exchange, review and analysis of documents, legal analysis, ongoing settlement negotiations, written settlement proposals, conference calls, and in-person meetings;

**WHEREAS**, the Parties assert that their respective positions in the disputed matters have merit, but each Party recognizes the complexity of the claims and issues and the number of parties involved will require significant time and expense to prosecute or defend, as the case may be, and it is difficult at this point to assess the probability of success in the various disputes;

**WHEREAS**, as a result of the Parties' negotiations, and without admitting the validity of any allegations or any liability in respect thereto, the Parties have reached an agreement, the terms of which are set forth in this Agreement, providing for a global settlement of all claims asserted in the Adversary Proceeding, the Lift Stay Motions, and the Motion to Convert on the terms and subject to the conditions set forth below (the "Settlement");

**WHEREAS**, the Parties have determined that the Settlement is fair, reasonable, and adequate, and is in the best interest of the Parties and the Estate; and

**WHEREAS**, the Parties intend this Agreement to be a binding agreement that sets forth the terms and obligations of the Parties for the complete and final resolution of the Adversary Proceeding, the Lift Stay Motions, and the Motion to Convert;

**NOW, THEREFORE**, in consideration of the foregoing recitals, and the terms, agreements, representation, and covenants set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

## A G R E E M E N T

### CONDITIONS PRECEDENT & SETTLEMENT STRUCTURE

1. <u>Recitals</u>. The recitals and prefatory phrases and paragraphs set forth above are incorporated in full and made part of this Agreement.

2. <u>Effective Date</u>. Unless otherwise stated, the obligations, representations and warranties stated in this Agreement shall become effective on the date upon which all of the following conditions precedent have occurred (the "Effective Date"):

    a) the Bankruptcy Court has entered an order in the Debtor's Bankruptcy Case, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), in a form reasonably acceptable to the Parties, approving this Agreement and making

findings of fact and conclusions of law to the extent required to give effect to this Agreement and such order has not been stayed, modified, or amended (the "9019 Order");

b)  the Bankruptcy Court shall have entered an order authorizing the employment of the Texas Trial Group as special litigation counsel ("Special Counsel") to the Estate to pursue the Estate Causes of Action (defined below);

c)  the Trustee, the Collateral Agent, and the Neugebauer Parties shall have executed a Joint Prosecution Agreement substantially in the form attached hereto as **Exhibit A** (the "Joint Prosecution Agreement"); and

d)  the Bankruptcy Court shall enter Agreed Judgments with respect to the pending preference and fraudulent transfer claims contained in the Adversary Proceeding in a form similar to Exhibits B and C.

3.    Appeals.  In the event this 9019 Order is stayed pending appeal, the Collateral Agent shall be under no obligation to fund the Settlement Payment or Initial Litigation Funding.

4.    Bankruptcy Court Approval.  Unless otherwise agreed to in writing by the Parties, within one (1) business day of execution of this Agreement the Trustee shall file all appropriate motions, notices and proposed orders seeking Bankruptcy Court approval of this Agreement, and must secure and obtain the Bankruptcy Court's 9019 Order approving the Settlement on or before the date that is 35 days following the Execution Date. The Trustee shall be responsible for drafting the 9019 motion and proposed 9019 order to be filed in the Debtor's Bankruptcy Case, subject to the Collateral Agent's and the Neugebauer Parties' approval as to form, such approval not to be unreasonably withheld. The Collateral Agent shall file a motion to expedite the motion for entry of the proposed 9019 Order pursuant to applicable Local Rules, seeking consideration of the motion not later than August 1, 2024.

5.    Non-Approval. In the event the Agreement is not approved by the Bankruptcy Court on or before August 20, 2024, unless agreed to by the Parties:  (a) nothing herein shall be deemed a representation or admission by any Party as to any issue, (b) this Agreement will be deemed null and void, including the validity of any and all instruments executed by any of the Parties for its performance and implementation prior to its approval and the Effective Date, and (c) the Parties shall be returned to the status quo each Party held prior to entry into this Agreement.

6.    Non-Occurrence of the Effective Date.  In the event that the 9019 Order has been entered, but the Effective Date shall have not occurred, then any Party may seek to enforce rights and obligations under this Agreement by seeking relief from the Bankruptcy Court—including relief for specific performance of other Parties' obligations hereunder. If the Effective Date shall not have occurred by September 1. 2024, this Agreement shall be null and void unless otherwise extended in writing by the Parties.

7.    Final Order.  Waiver of the fourteen day stay shall be requested.

## COLLATERAL AND FORECLOSURE

8.      <u>Collateral Agent Security Interests in Collateral</u>. Subject to the priming superpriority liens securing the Litigation Funding, the Collateral Agent shall be deemed to have first priority, properly and fully perfected and unavoidable liens and security interests in the Collateral (as defined in the Collateral Agreement).  The 9019 Order shall provide that such first priority, properly and fully perfected security interest in the Collateral shall not be subject to subsequent challenge by any party in interest.

9.      <u>Assets Foreclosed Upon</u>. On the Effective Date, the Software and Software Assets (as defined in the notice of Foreclosure) shall be deemed property of the Collateral Agent, for the benefit of the Series II Noteholders, and all other Collateral shall be deemed property of the Estate subject to the Collateral Agent's security interest as set forth above.  The amount of the Collateral Agent PoC shall be increased by $3.5 million (out of the $7.5 million originally deducted from the balance of the Collateral Agent's secured Series II Notes as a result of the Foreclosure).

## CAUSES OF ACTION AND AUCTION

### Definitions

10.     "<u>Cause of Action</u>" means any (a) claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, in tort, law, or equity, (b) all rights of setoff, counterclaim, or recoupment and claims on contracts or for breaches of duties imposed by law (c) the right to object to or otherwise contest claims or interests, (d) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (e) such claims and defenses as fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code.

11.     "<u>Contract Causes of Action</u>" means any Cause of Action related to breach of, conspiring to breach, and/or tortiously interfering with any of the Relevant Contracts (as defined in the Contract Claims Lift Stay Motion), along with statutory claims arising out of the alleged breaches of the Relevant Contracts.

12.     "<u>Estate Causes of Action</u>" means Causes of Action owned by the Estate; *provided*, *however*, that notwithstanding the foregoing, Estate Causes of Action shall not include the Estate-Neugebauer Causes of Action.

13.     "<u>Estate-Neugebauer Causes of Action</u>" means any potential Estate Cause of Action against Toby Neugebauer for breach of fiduciary.

14.     "<u>IP Causes of Action</u>" means any Cause of Action seeking to recover damages to the value of GloriFi's trade secrets or intellectual property including, but not limited to, alleged violations of the Lanham Act and the state and federal versions of the Racketeer Influenced and Corrupt Organizations Act (RICO).

15. "<u>Neugebauer Personal Causes of Action</u>" means any Cause of Action asserted by Toby Neugebauer, Banzai Capital Partners, LLC, Banzai Advisory Group, LLC, or Neugebauer Family Enterprises, LLC to recover damages where they allege harm distinct from harm suffered equally by all shareholders in, or lenders to, GloriFi including, but not limited to, loss of future income, loss of payment for any "control premium" in a future GloriFi financing transaction, and other personal damages such as those resulting from disparagement, defamation or emotional distress. The parties take no position on whether Neuegebauer has any direct claims for loss of dollars invested in With Purpose, Inc. against any person. For the avoidance of doubt, all causes of action currently asserted by the Neugebauer Parties (except any claim asserting damages for lost dollars invested in GloriFi) in the Delaware Litigation and the Georgia Litigation are Neugebauer Personal Causes of Action.

16. "<u>Shared Causes of Action</u>" means the IP Causes of Action and the Contract Causes of Action.

### *Retention and Sale of Estate Causes of Action*

17. <u>Retention By Estate; Sole Trustee Authority</u>. Notwithstanding any other provision of this Agreement, the Estate-Neugebauer Causes of Action shall not be released or waived and shall be retained by the Estate. The Trustee shall have sole authority to prosecute, not prosecute, negotiate, settle or otherwise dispose or not dispose of the Estate-Neugebauer Causes of Action. The Neugebauer Causes of Action are free and clear property of the Estate.

18. <u>Marketing and Auction of Estate-Neugebauer Causes of Action</u>. The Trustee shall market and auction (the "<u>Sale</u>") the Estate-Neugebauer Causes of Action, which Sale process shall be completed on or before the date that is 90 days after the entry of the 9019 Order (the "<u>Outside Closing Date</u>"). The minimum bid for the Estate-Neugebauer Causes of Action (the "<u>Auctioned Causes of Action</u>") at the auction shall be no less than $2 million.

19. <u>Prosecution, Settlement, or Release of the Estate-Neugebauer Causes of Action</u>. If a Sale shall not have been consummated on or prior to the Outside Closing Date, then the Trustee shall either (a) prosecute such causes of action, (b) seek to recover on such causes of action from any source of insurance recovery, (c) settle such causes of action, and/or (d) release such causes of action, in each case of foregoing clauses (a) through (d), on or before the date that is 60 days after the Outside Closing Date (the "<u>Outside Claim Resolution Date</u>"). Upon the occurrence of the Outside Claim Resolution Date, any Estate-Neugebauer Cause of Action that is uncommenced, unsettled, unliquidated or otherwise unresolved shall be released and forever waived by the Estate.

### <u>SETTLEMENT PAYMENT, FINANCING, USE OF PROCEEDS, ALLOWANCE OF CLAIMS</u>

### *Settlement Payment*

20. The Collateral Agent shall pay the Estate $2.25 million in settlement of the Adversary Proceeding (the "<u>Settlement Payment</u>"). Payment shall be made within 5 days of the Effective Date. The Settlement Payment shall be free and clear funds of the Estate.

*Litigation Funding*

21.    <u>Generally</u>.  In addition to the Settlement Payment, the Collateral Agent shall provide to the Estate a $2.25 million multi-draw term loan (the "<u>Initial Litigation Funding</u>").  The Initial Litigation Funding shall be secured by an unavoidable first priority, priming superpriority lien and security interest in all of the assets of the Debtor and the Estate.

22.    <u>Terms</u>.

a)  *Interest Rate*.  The Initial Litigation Funding shall bear interest at an initial rate of 10% per annum, compounded quarterly, payable in kind until maturity.  To the extent Additional Litigation Funding (defined below) is obtained pursuant to a future litigation funding order ("Additional Litigation Funding Order"), the repayment terms of the Initial Litigation Funding shall automatically adjust to terms identical to the Additional Litigation Funding.

b)  *Repayment*.  The Estate shall repay the Initial Litigation Funding consistent with the terms of this Agreement and/or any Additional Litigation Funding Order.  In advance of, or in connection with, the execution of any Additional Litigation Funding (defined below), repayment of the Initial Litigation Funding is to be made from available and distributable cash proceeds of the Estate resulting from the prosecution and/or settlement of the Estate Causes of Action, but not from the sale, prosecution, and/or settlement of the Estate-Neugebauer Causes of Action.

c)  *Events of Default*.  The occurrence of one or more of the following shall constitute an event of default under the Initial Litigation Funding: (i) the invalidation or modification of the Joint Prosecution Agreement, in each case, in any way, without the advanced written consent of the Collateral Agent; (ii) the removal of the Trustee as the chapter 7 trustee of the Bankruptcy Case; (iii) the removal of the Texas Trial Group as counsel, unless by prior written consent of the Collateral Agent and the Neugebauer Parties; (iv) default under the Joint Prosecution Agreement; (v) any variance from the budget prepared in a form and substance approved by the Collateral Agent in all respects in its sole and absolute discretion; or (vi) if the 9019 Order shall be reversed, modified, or amended without the written consent of the Collateral Agent.

23.    <u>Additional Litigation Funding Credit Agreements</u>.  Subject to Bankruptcy Court approval, the Collateral Agent shall have the right to itself propose, or obtain on behalf of the Estate, additional litigation funding ("<u>Additional Litigation Funding</u>") in excess of the $2.25 million provided in this Agreement to cover anticipated costs of litigation including, but not limited to, the hourly portion of attorneys' fees, local counsel fees, expert witness fees, document repository fees, court reporting fees, travel, document reproduction fees, and all other typical

litigation expenses ("Litigation Expenses") on market terms in the litigation financing industry pursuant to a "Litigation Funding Credit Agreement".

24.    Security Interests and Priority; Perfection; Order.  The obligations owing under the Litigation Funding shall be secured by first priority, priming, superpriority liens and security interests in all of the assets of the Debtor and its Estate, including, for the avoidance of doubt, Causes of Action arising under Chapter 5 of the Bankruptcy Code.  Such liens and security interests shall be deemed unavoidable, fully and properly perfected by this Agreement and/or terms of any Additional Litigation Funding Order, which order shall be entered contemporaneously with Court approval of this Agreement.  For the avoidance of doubt, nothing in this Agreement prejudices or determines any collateral issues related to any Additional Litigation Funding.

*Use of Proceeds*

25.    The proceeds of the Settlement Payment and the Initial Litigation Funding shall be used as follows:

a.    pay the Initial Secured Creditor Distribution;

b.    $1 million (the "Litigation Expenses Allotment") shall be reserved for present and future Litigation Expenses pursuant to a budget prepared at the discretion of the Collateral Agent and shall not be used for any other purpose; and

c.    Following the application and allowance of the administrative expense claims of professionals retained in the Bankruptcy Case, the Trustee shall be entitled to use such proceeds to satisfy such claims consistent with this Agreement and any applicable order of the Bankruptcy Court.  The Collateral Agent and the Neugebauer Parties waive any and all rights to seek disgorgement of payment of administrative expenses accrued as of the date of the 9019 Order, including in the event of administrative insolvency of the Estate.

26.    The first $1 million in proceeds from the Estate-Neugebauer Causes of Action shall be reserved for future distribution to general unsecured creditors of the Estate.  If deficiency claims exist at the time of filing of a motion for final decree or notice of distribution of all assets, then the deficiency claims shall be classified and deemed general unsecured claims and treated as general unsecured claims for purposes of distribution.  The next $750,000 in proceeds from the Estate-Neugebauer Causes of Action, shall be reserved for present and future Litigation Expenses pursuant to a budget prepared at the discretion of the Collateral Agent.  Any remaining proceeds from the Estate-Neugebauer Causes of Action shall be free and clear property of the Estate.

*Allowance of Claims and Interests*

27.    Series II Notes Secured Claims.  Each of the claims of the holders of the Series II Notes shall be deemed allowed in the amounts set forth in Schedule 1a along with interest accruing pursuant to the terms of each Series II Note until payment in full.  Additionally, the Collateral Agent PoC shall be allowed in the amount set forth on Schedule 1a, as adjusted based on paragraph 8, plus interest accruing on each note as set forth in the preceding sentence; *provided*, *however*, for the avoidance of doubt, recovery on account of the claims of the holders of the Series II Notes

Docusign Envelope ID: 648394D0-1F28-4519-87DF-02609BA4D523

Case 23-30246-mvl7 Doc 223-1 Filed 07/17/24 Entered 07/17/24 07:07:10 Desc
Exhibit A - Settlement Agreement Page 9 of 24

set forth on Schedule 1a and on account of the Collateral Agent PoC shall be without duplication, with recoveries to Series II Holders being paid by and through (and satisfied by) the payments remitted to the Collateral Agent. The allowed Series II Notes claims and the allowed Collateral Agent PoC shall be deemed secured in first priority (subject to the Initial Litigation Funding) to the Collateral (as defined in the Collateral Agreement).

28.     <u>No Challenge</u>.  The 9019 Order shall provide that none of the claims or interests allowed pursuant to this Agreement and the 9019 Order shall be subject to subsequent challenge by any party in interest.

### Distribution to Holders of Allowed Series II Notes Secured Claims

29.     Not later than one business day following the disbursement of funds to the Trustee from the Collateral Agent pursuant to this Agreement, the Trustee shall pay to the Collateral Agent $2.5 million ($2,500,000) in immediately available funds pursuant to wire instruction furnished by Collateral Agent to counsel for the Trustee (the "<u>Initial Secured Creditor Distribution</u>").  The Initial Secured Creditor Distribution payable to the Collateral Agent shall be on account of and in partial, ratable satisfaction of the Series II Holders' allowed secured claims, which satisfaction, for the avoidance of doubt, shall partially satisfy the allowed Collateral Agent PoC.

### Objection to Certain Claims

30.     Pursuant to the Joint Prosecution Agreement, the Collateral Agent and the Trustee shall jointly object to claims as appropriate.  The Collateral Agent may unilaterally assert, file and prosecute claims objections and is authorized to do so without further order of the Court.

### EXISTING DISPUTES; JOINT PROSECUTION AGREEMENT; FUTURE LITIGATION

31.     <u>No Adjustment to Temporary Injunction</u>.  The Trustee agrees that it will not seek to extend or modify the temporary injunction established pursuant to that certain Order for Temporary Injunction [Adv. Proc. Docket No. 40] (the "<u>Temporary Injunction</u>") without the prior written consent of each of the Neugebauer Parties and the Collateral Agent.

32.     <u>Dismissal of Adversary Proceeding; Withdraw of Lift Stay Motions; Withdraw of Motion to Convert</u>.  Within seven (7) days of the Effective Date (a) the Trustee shall file all appropriate documents and effectively dispose, with prejudice and without costs, of the Adversary Proceeding in its entirety, and each Party shall provide any necessary consents or approval of such documents consistent with this Agreement; (b) the Collateral Agent shall have withdrawn the Lift Stay Motions; and (c) the Debtor shall have withdrawn the Motion to Convert without prejudice.

33.     <u>Joint Prosecution Agreement</u>.  The Collateral Agent and the Trustee shall enter into the Joint Prosecution Agreement substantially in the form attached hereto as **Exhibit A**.  The Joint Prosecution Agreement shall vest discretion and authority to prosecute the Estate Causes of Action in the Collateral Agent; *provided*, *however*, that any settlement of an Estate Cause of Action in an amount of more than $5 million shall be subject to Bankruptcy Court approval. For the avoidance of doubt, the Trustee acknowledges that the Collateral Agent shall be empowered and entitled to bring suit for Estate Causes of Action in the name of and on behalf of Trustee and shall be further empowered to add the Trustee as a party to existing litigation or substitute the Trustee as a party

to existing litigation. In the event the Collateral Agent is grossly negligent in the prosecution of Estate Causes of Action, the Trustee may seek relief from the Bankruptcy Court from this provision and the Joint Prosecution Agreement. Major Decisions require the Trustee's approval, which approval shall not be unreasonably withheld. Major Decisions are limited to non-suiting, dismissing, or settling Estate Causes of Action.

The Trustee and his counsel shall be kept apprised of all litigation of Estate Causes of Action and are entitled to advise, but not direct, the Collateral Agent's prosecution of any Estate Cause of Action. The Collateral Agent agrees to indemnify the Trustee and his counsel in the event any sanctions are entered against the same as a result of the Collateral Agent's actions, inactions, omissions, and the like in the prosecution of any litigation controlled by the Collateral Agent.

34. <u>Special Litigation Counsel; Other Estate Professionals</u>. Contemporaneously with filing the motion for entry of the 9019 Order, the Trustee shall file an application (the "<u>Employment App</u>") to employ Special Counsel as special litigation counsel to pursue the Estate Causes of Action. It shall be a default under this agreement if the Court does not enter an order granting the Employment App upon terms reasonably acceptable to the Collateral Agent contemporaneously with its 9019 Order. The Trustee shall employ further other professionals to provide services to the Estate as may be reasonably requested by the Collateral Agent or Special Counsel.

35. <u>Delaware Litigation</u>. The Trustee agrees and acknowledges that the Collateral Agent will cause the Trustee to join the Delaware Litigation as a Plaintiff and may—pursuant to the Joint Prosecution Agreement—assert Estate Causes of Action in the Delaware Litigation. Neugebauer shall cause the substitution of the Trustee as plaintiff for any causes of action that are not Neugebauer Personal Causes of Action. The Trustee agrees to not disrupt, interfere with or object to the prosecution of Neugebauer Personal Causes of Action in the Delaware Litigation.

36. <u>Georgia Litigation</u>. The Trustee agrees and acknowledges that the Collateral agent will cause the Trustee to be substituted as a plaintiff in the place of the Collateral Agent pursuant to the Joint Prosecution Agreement and may—pursuant to the Joint Prosecution Agreement—assert Estate Causes of Action in the Georgia Litigation. The Trustee agrees to not disrupt, interfere with or object to the prosecution of Neugebauer Personal Causes of Action in the Georgia Litigation.

37. <u>Sharing Agreement</u>. In exchange for the consideration set forth in this Agreement, the Collateral Agent, the Neugebauer Parties, and the Trustee agree to the sharing of proceeds of certain Causes of Action. Specifically, the Neugebauer Parties agree to distribute 5% of their net proceeds from the Neugebauer Personal Causes of Action in the Georgia Litigation and Delaware Litigation (and including any other litigation related to GloriFi to which any of the Neugebauer Parties are a party) (after payment of all attorneys' fees and expenses) to the Estate, which shall be free and clear of liens. The Trustee shall distribute Net Secured DEGA Proceeds in accordance with the table below. As used in this Agreement, "<u>Net Secured DEGA Proceeds</u>" shall mean the proceeds obtained from the Shared Causes of Action less: (i) payment of the Trustee Fee, (ii) payment of the Estate's counsel's fees in the litigation pursuant to the Joint Prosecution Agreement, and (iii) reimbursement of the Initial Litigation Funding (and any Additional

Litigation Funding, if applicable) pursuant to its terms. Net Secured DEGA Proceeds will be paid to the Estate for distribution after payment of the amounts in subsections (i)-(iii) of the preceding sentence. A portion of such Net DEGA Proceeds available for distribution will be shared with the Estate in the percentages set forth in the table below:

| Net Secured DEGA Proceeds | Estate Share | Collateral Agent |
|---|---|---|
| Up to Allowed Collateral Agent PoC | 12.5% | 87.5% |
| 100% Allowed Collateral Agent PoC to 100% Allowed Collateral Agent PoC plus $20MM | 50% | 50% |
| 100% Allowed Collateral Agent PoC plus $20MM to 100% Allowed Collateral Agent PoC plus $30MM | 60% | 40% |
| >100% Allowed Collateral Agent PoC plus $30MM | 100% | 0% |

The Trustee stipulates and agrees that all funds recovered from the Shared Causes of Action up to the amount of the Collateral Agent's claims (including principal, interest, fees, costs, etc.), except for the Estate Share are the Collateral Agent's cash collateral, subject to the distribution to the Estate set forth in this paragraph.

The Estate's share of Net Secured DEGA Proceeds will be deemed property of the Estate free and clear of the Collateral Agent's liens. All distributions to the Collateral Agent or on its behalf shall be credited to the Collateral Agent's PoC until the Collateral Agent's PoC is satisfied in full, and any additional amounts from any of the sharing provisions above or other terms herein shall be retained by the Collateral Agent. All distributions to the Collateral Agent and counsel under this paragraph shall be paid within thirty (30) days of the Estate's receipt of DEGA Proceeds without further action or order of the Court. Except as otherwise provided in this Agreement, all distributions under this paragraph or otherwise shall be subject to the Trustee Fee, which will be deducted and held by the Estate prior to the distribution.

## RELEASES AND WAIVERS OF CLAIMS

38.     General.  As part of the Settlement, the Parties agree to provide broad releases from any and all claims and causes of action including those that are currently pending or could be filed or asserted against one another, unless otherwise specifically excepted in this Agreement. This Settlement is intended to make the releases set forth below to be self-effectuating so that the 9019 Order shall be deemed as the approval and effectiveness of such releases for all intents and purposes.

39.     Estate's Release of the Neugebauer Parties.  Upon the Effective Date, the Debtor, the Trustee, and the Estate, for and in consideration of the mutual promises and consideration given herein, the receipt and sufficiency of which is acknowledged and confessed, on behalf of themselves and all persons acting by or through them, do fully RELEASE, ACQUIT, AND FOREVER DISCHARGE each of the Neugebauer Parties and each of their respective affiliates, successors, officers, directors, executives, employees, attorneys, agents, representatives, fiduciaries, distributors, predecessors, subsidiaries, heirs, administrators, executors and assigns, of and from any and all legal claims, counterclaims, demands, rights, setoffs, defenses, contracts, accounts, suits, debts, outstanding notes, claims, agreements, actions, causes of action, sums of

money, bills, specialties, covenants, promises, damages, executions, judgments, findings, controversies, Causes of Action and disputes, whether known or unknown, in law or in equity, and any past, present or future duties, responsibilities, or obligations, of whatever kind or nature, asserted or unasserted, suspected or claimed, and whether based in tort, contract, common law, statute or other theory of recovery, including, without limitation, any claims that were or could have been raised by the Debtor, the Trustee, or the Estate in connection with the Bankruptcy Case, the Adversary Proceeding, and any other litigation against any of the Neugebauer Parties, and any rights or claims under Section 502(d) or Section 510 of the Bankruptcy Code. This Release shall not apply to those obligations that remain as set forth in and pursuant to this Agreement, or the 9019 Order, to the extent not already entered, after reasonable notice and a hearing, unless agreed to by the affected parties.  Notwithstanding the foregoing, nothing contained in this agreement shall be deemed to release, waive or otherwise affect the Estate-Neugebauer Causes of Action.

40.    Estate's Release of the Collateral Agent.  Upon the Effective Date, the Debtor, the Trustee, and the Estate, for and in consideration of the mutual promises and consideration given herein, the receipt and sufficiency of which is acknowledged and confessed, on behalf of themselves and all persons acting by or through them, do fully RELEASE, ACQUIT, AND FOREVER DISCHARGE the Collateral Agent and each of its respective affiliates, successors, officers, directors, executives, employees, attorneys, agents, representatives, fiduciaries, distributors, predecessors, subsidiaries, heirs, administrators, executors and assigns, of and from any and all legal claims, counterclaims, demands, rights, setoffs, defenses, contracts, accounts, suits, debts, outstanding notes, claims, agreements, actions, causes of action, sums of money, bills, specialties, covenants, promises, damages, executions, judgments, findings, controversies, Causes of Action and disputes, whether known or unknown, in law or in equity, and any past, present or future duties, responsibilities, or obligations, of whatever kind or nature, asserted or unasserted, suspected or claimed, and whether based in tort, contract, common law, statute or other theory of recovery, including, without limitation, any claims that were or could have been raised by the Debtor, the Trustee, or the Estate in connection with the Bankruptcy Case, the Adversary Proceeding, and any other litigation against the Collateral Agent, and any rights or claims under Section 502(d) or Section 510 of the Bankruptcy Code. This Release shall not apply to those obligations that remain as set forth in and pursuant to this Agreement, or the 9019 Order, to the extent not already entered, after reasonable notice and a hearing, unless agreed to by the affected parties.

41.    Collateral Agent's and Neugebauer Parties, Release of the Estate and the Trustee. Upon the Effective Date, the Collateral Agent, the Neugebauer Parties, and Toby Neugebauer (except as to all issues related to the Estate-Neugebauer Causes of Action retained by the Estate), for and in consideration of the mutual promises and consideration given herein, the receipt and sufficiency of which is acknowledged and confessed, on behalf of themselves and all persons acting by or through them, do fully RELEASE, ACQUIT, AND FOREVER DISCHARGE each of the Debtor and the Trustee and each of their respective affiliates, successors, officers, directors, executives, employees, attorneys, agents, representatives, fiduciaries, distributors, predecessors, subsidiaries, heirs, administrators, executors and assigns, of and from any and all legal claims, counterclaims, demands, rights, setoffs, defenses, contracts, accounts, suits, debts, outstanding notes, claims, agreements, actions, causes of action, sums of money, bills, specialties, covenants, promises, damages, executions, judgments, findings, controversies, Causes of Action and disputes, whether known or unknown, in law or in equity, and any past, present or future duties,

12

responsibilities, or obligations, of whatever kind or nature, asserted or unasserted, suspected or claimed, and whether based in tort, contract, common law, statute or other theory of recovery, including, without limitation, any claims that were or could have been raised by the Collateral Agent or the Neugebauer Parties in connection with the Bankruptcy Case, the Adversary Proceeding, and any other litigation against the Trustee or the Estate, other than claims Toby Neugebauer could raise in connection with the Estate-Neugebauer Causes of Action. This Release shall not apply to those obligations that remain as set forth in and pursuant to this Agreement, the 9019 Order, or other orders entered by the Bankruptcy Court, to the extent not already entered, after reasonable notice and a hearing, unless agreed to by the affected parties.

42.     _Waiver of Unknown Claims_.  The Parties understand, acknowledge, and agree that they or their attorneys may hereafter discover facts different from or in addition to the facts that they or their attorneys now know or believe to be true with respect to the subject matter of the foregoing releases, but that their intention is to fully and finally release each other to the full extent of the foregoing releases, including claims which are unknown, unsuspected, or which have not been asserted relating to the operation of the Debtor and the Estate; _provided however_, that nothing herein shall release any claims expressly reserved or allowed pursuant to this Agreement, the 9019 Order, or other binding orders, if any.

43.     _No Third-Party Releases_.  Except as expressly provided herein, this Agreement provides NO THIRD PARTY WITH ANY RELEASES, and nothing contained herein shall be deemed to establish any rights or benefits for any third persons. This Agreement releases ONLY the Parties and related parties identified herein, and ONLY to the extent provided herein. All persons and/or entities providing and benefitting from releases herein intend that any and all releases shall be mutual and where there exists any contradiction with respect to mutuality, the drafters and signors agree that the intent of the document is to read all releases as mutual

44.     _Covenant Not to Sue_. Each releasing Party covenants and agrees never, individually or with any person or in any way, to commence, aid in any way, prosecute, cause, facilitate, or permit to be commenced or prosecuted any action or other proceeding, including, without limitation, an arbitration or other alternative dispute resolution procedure, based upon any claim, demand, cause of action, obligation, damage, or liability that is the subject of this Agreement (including its attachments). Each Party represents and agrees that it has not and will not make or file or cause to be made or filed any claim, charge, allegation, or complaint, whether formal, informal, or anonymous, with any governmental agency, department or division, whether federal, state or local, relating to in any manner, including without limitation, any claims released pursuant to the foregoing releases.

45.     _Abatement and Dismissal of Adversary Proceeding_.  The Parties agree to abatement of all dates and deadlines in the Adversary Proceeding pending the Parties' efforts to effectuate all of the requirements of this Agreement. By no later than one day after the Execution Date, Trustee shall request the Bankruptcy Court enter an Order, in a form mutually acceptable to the other Parties abating the Adversary Proceeding consistent with this paragraph.

46.     _Timing of Releases_.  The releases contained in this Agreement shall in no event become effective at any time prior to the Effective Date; _provided further_ that the releases

Docusign Envelope ID: 64839420-1F28-4510-87DF-02609844D523

Case 23-30246-mvl7 Doc 223-1 Filed 07/17/24 Entered 07/17/24 07:07:10 Desc
Exhibit A - Settlement Agreement Page 14 of 24

contained in this Agreement shall not be effective unless and until the 9019 Order becomes a Final
Order.

## MISCELLANEOUS TERMS

47. <u>Entire Understanding</u>. This Agreement has been prepared after negotiations among
the Parties and contains the entire understanding and agreement among the Parties with respect to
the Claims, and any and all claims that have arisen or which could have arisen in connection with
the Claims. No other representations, covenants, undertakings, or other prior or contemporaneous
agreements, whether verbal or written, which are not specifically incorporated in this Agreement,
shall be deemed in any way to exist or bind the Parties. The Parties acknowledge that no Party has
executed this Agreement in reliance on any promise, representation, or warranty not expressly
contained in this Agreement.

48. <u>Confidentiality</u>. Other than to the extent disclosed as may be necessary for
enforcement of this Agreement or in seeking approval of this Agreement and the entry of the 9019
Orders or related orders, and except as may otherwise be agreed to by the Parties in writing or as
required in the Debtor's Bankruptcy Case the Parties agree to keep the terms of this Agreement
confidential. The Parties also agree to keep any settlement discussions leading up to this
Agreement confidential consistent with this paragraph.

49. <u>Attorneys' Fees and Costs</u>. Unless otherwise provided in this Agreement, the
Parties shall bear their own costs and attorneys' fees incurred in connection with the Adversary
Proceeding, the Bankruptcy Case, and the negotiation of this Agreement and consummation of the
Settlement. Notwithstanding the foregoing, if any Party is required to enforce its rights under this
Agreement, then the prevailing Party or Parties of any such action shall be entitled to its reasonable
attorneys' fees and costs from the non-prevailing Party or Parties. Subject to Court approval,
reasonable attorneys' fees incurred by the Neugebauer Parties and the Collateral Agent in
preparing the Georgia Litigation and the Delaware Litigation prior to Court approval of this
Agreement shall be reimbursable from any Additional Litigation Funding.

50. <u>Execution by Client or Counsel</u>. By execution below, consistent with this
Agreement, each Party agrees and affirmatively represents that it has the full capacity and authority
to execute, perform, and be bound by each and every term of this Agreement; and that if its
undersigned counsel is executing this Agreement on its behalf, that such counsel is qualified and
has the authority to do so and to bind its client to the terms of this Agreement as if the Party had
actually signed the Agreement.

51. <u>Related Claims</u>. If any action is filed in any court asserting claims that are related
to the subject Claims herein prior to final Bankruptcy Court approval of the Settlement, the Parties
shall cooperate in obtaining the dismissal, withdrawal, or mutual settlement of such related
litigation, provided that Estate shall not be obligated to incur any legal or other expenses therewith.

52. <u>Rescission of Entire Agreement</u>. In the event that the Bankruptcy Court or any other
court of competent jurisdiction declares the Agreement, or any material provision of the
Agreement, invalid or unenforceable, the entire Agreement will be deemed rescinded and void ab
initio, including all waivers and releases herein.

Docusign Envelope ID: 648394D0-1F38-4519-87DF-026098A4D523

Case 23-30246-mvl7   Doc 223-1   Filed 07/17/24   Entered 07/17/24 07:07:10   Desc
Exhibit A - Settlement Agreement   Page 15 of 24

53.    <u>Ownership of Claims Subject To Release</u>. Each of the Parties acknowledges that the consummation of the Settlement is conditioned on each Party confirming, by virtue of signing this Agreement, that any Party entering into this Agreement and the Releases contained herein is the lawful owner of all rights, title, and interest in and to all matters to be released herein, and that it has not heretofore assigned or transferred, or purported to assign or transfer, any of such released matters, in whole or in part, to any other person or entity, and that it has the authority to enter into this Agreement, the Settlement, and the Releases contained herein and to bind each Party to its terms, subject to approval of the Bankruptcy Court.

54.    <u>Insurance</u>.  Any obligation of any insurer to pay any Defense Costs is not a condition to the effectiveness of this Agreement, and the insurer's failure to pay any Defense Costs shall not affect the force and validity of this Agreement, any obligation of any insurer, or the Releases provided herein in favor of the Trustee and his related parties.  The Trustee shall not oppose a motion by Neugebauer to lift the automatic stay to allow any With Purpose, Inc. insurer to pay defense and/or settlement costs with respect to any covered claims under their insurance policies.

55.    <u>Notice to Parties</u>. Unless otherwise agreed to in writing, all notices or communications under this Agreement by any Party to the other Parties shall be in writing, sent via email, and mailed by certified mail, return-receipt requested, or by overnight courier with a parcel tracking system, to counsel for the Parties. Notices shall be deemed to have been given as of the date sent. Notice shall be sent as follows:

To Trustee:                                              Scott Seidel, Trustee
                                                         6505 W. Park Blvd. Ste. 306
                                                         Plano, Texas 75093

With copies, which shall not constitute              Munch Hardt Kopf & Harr, P.C.
notice, to:                                          Davor Rukavina, Esq.
                                                     Thomas D. Berghman, Esq.
                                                     500 N. Akard Street, Suite 4000
                                                     Dallas, Texas 75201
                                                     Phone: (214) 855-7500

To Collateral Agent:                                 WPI Collateral Management, LLC
                                                     2112 Indiana Ave.
                                                     Lubbock, Texas 79410
                                                     jpmanning@lubbocklawfirm.com

| To Trustee: | Scott Seidel, Trustee |
| | 6505 W. Park Blvd. Ste. 306 |
| | Plano, Texas 75093 |

| With copies, which shall not constitute notice, to: | Bonds Ellis Eppich Schafer Jones LLP |
| | Attn: Joshua Eppich |
| | 420 Throckmorton Street, Ste. 1000 |
| | Fort Worth, Texas 76102 |
| | Phone: (817) 405-6905 |
| | Joshua@BondsEllis.com |

| To Neugebauer Parties: | |
| | Toby Neugabauer |
| | Banzai Capital Partners, LLC |
| | Banzai Advisory Group, LLC |
| | Neugebauer Family Enterprises, LLC |
| | c/o Toby Neugabauer |
| | 10777 Strait Lane, |
| | Dallas, Texas 75229 |
| | toby@doradocp.com |

| With copies, which shall not constitute notice, to: | Bonds Ellis Eppich Schafer Jones LLP |
| | Attn: Joshua Eppich |
| | 420 Throckmorton Street, Ste. 1000 |
| | Fort Worth, Texas 76102 |
| | Phone: (817) 405-6905 |
| | Joshua@BondsEllis.com |

56.     <u>Execution in Counterparts</u>. The Parties may execute this Agreement in counterpart originals in any number of actual, faxed, telecopied and/or PDF scanned counterparts. Each executed counterpart will be considered an original, and all of them together will constitute a singular Agreement. No counterpart shall be altered or interlined and all of them together shall constitute but one and the same instrument. Each Party may secure the signature of the attorney or their respective client. However, if the executing party is just the attorney, then the attorney's signature is an affirmative representation that he/she has reviewed the Agreement with his/her client; that the client has ratified this Agreement; and the attorney has been duly authorized to execute and legally bind his/her client to this Agreement.

57.     <u>Governing Law</u>. This Agreement will be interpreted and construed under the laws of the State of Texas, the Bankruptcy Code and Bankruptcy Rules, regardless of the domicile of any Party or conflict of laws principles, and will be deemed for such purposes to have been made, executed, and performed in the State of Texas.

58.     <u>Construction</u>. This Agreement shall be construed as if the Parties jointly participated in the preparation of this Agreement and any uncertainty and/or ambiguity shall not be interpreted against any one Party.

59.    <u>Headings</u>. The section titles, captions, and headings contained in this Agreement are inserted as a matter of convenience and for reference, and shall in no way be construed to define, limit, or extend the scope of this Agreement or the effect of any of its provisions.

60.    <u>Jurisdiction and Venue</u>. The Bankruptcy Court shall retain jurisdiction to enforce the terms of this Agreement. Venue relating to this Agreement shall be proper in the Bankruptcy Court for the Northern District of Texas.

61.    <u>No Admission of Liability</u>. Nothing in this Agreement shall be construed as an admission of liability or any agreement to subject a Party to the personal jurisdiction of any particular court, except and solely to the extent necessary to enforce or interpret this Agreement. The Parties' agreement to settle is made without admitting any claims or contentions of liability or defenses.

62.    <u>Binding on Successors, Assigns, and Others</u>. This Agreement and the covenants and conditions it contains shall be jointly and severally binding upon the Parties and their respective heirs, executors, administrators, conservators, plan administrators, agents, trustees, servants, employees, committees, beneficiaries, predecessors, successors, attorneys, insurers, transferees, and assigns.

63.    <u>Amendments and Waivers</u>. Any amendment to this Agreement shall be in writing and shall conform to the same formalities as exhibited in this Agreement. No failure to exercise, nor delay in exercising, any right, remedy or power under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy or power under this Agreement preclude any other or further exercise thereof, or the exercise of any other right, remedy or power provided herein or by law or in equity.

64.    <u>Further Assurances</u>. Each of the Parties agrees to execute such other documents and to take such other action as may be reasonably necessary to further the purposes of this Agreement.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be effective as of the last date of its full execution, and it shall be effective on the Effective Date.

[<i>Signature Page Follows</i>]

Docusign Envelope ID: 648394D0-1F38-4510-87DF-026098A4D523

Case 23-30246-mvl7    Doc 223-1    Filed 07/17/24    Entered 07/17/24 07:07:10    Desc
Exhibit A - Settlement Agreement    Page 18 of 24

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective authorized officers as of the day and year first above written.

SIGNATURE PAGE TO
SETTLEMENT AGREEMENT

Docusign Envelope ID: 6483940D-1F38-4510-87DF-026098A4D523

Case 23-30246-mvl7   Doc 223-1   Filed 07/17/24   Entered 07/17/24 07:07:10   Desc
Exhibit A - Settlement Agreement   Page 19 of 24

**SCOTT M. SEIDEL AS CHAPTER 7 TRUSTEE OF THE ESTATE OF WITH PURPOSE, INC.**

By: _____
Name: Scott M. Seidel

**BANZAI CAPITAL PARTNERS, LLLC**

By: _____
Name: Toby Neugebauer
Title: Authorized Signatory

**TOBY NEUGEBAUER**

By: _____
Name: Toby Neugebauer

**BANZAI ADVISORY GROUP, LLC**

By: _____
Name: Toby Neugebauer
Title: Authorized Signatory

**WPI COLLATERAL MANAGEMENT, LLC**

By: _____
Name: J. Paul Manning
Title: Sole Member

**NEUGEBAUER FAMILY ENTERPRISES, LLC**

By: _____
Name: Toby Neugebauer
Title: Authorized Signatory

## Schedule 1

### a. *Allowed Secured Notes Claims*

| Holder | Allowed Amount |
|---|---|
| WPI Collateral Management, LLC | $32,015,552 |
| Charles Lynn Hamilton | $1,000,000 |
| Matthew Malouf | $750,000 |
| Jake E. McAlister | $1,000,000 |
| The Peus Family Trust | $250,000 |
| Pfluger Revocable Trust | $1,000,000 |
| The Kevin and Kendra Granger Trust | $2,000,000 |
| JR Purvis | $100,000 |
| Richard H. Coats | $1,500,000 |
| Dalton B. Donaldson & Susan P. Donaldson | $100,000 |
| OnPoint GloriFi II, LP | $2,600,000 |
| Neugebauer Family Enterprises, LLC | $3,025,000 |
| Banzai Capital Partners, LLC | $3,000,000 |
| OnPoint GloriFi II, L.P. | $1,000,000 |
| Neugebauer Family Enterprises, LLC | $4,125,000 |
| CCR FLP Holdings LP | $300,000 |
| J. Paul Manning | $100,000 |
| D. Nevill Manning | $100,000 |
| Toby & Melissa Neugebauer | $5,840,552 |
| Word B. Wilson Investments, LP | $1,000,000 |
| OnPoint GloriFi II, LP | $500,000 |
| Magic Rise Group Ltd. | $500,000 |
| JNW Family LP | $100,000 |
| Neugebauer Family Enterprises, LLC | $750,000 |
| Lynwood Partners LLLC | $200,000 |
| DRJ Properties Ltd | $200,000 |
| Neugebauer Family Enterprises, LLC | $275,000 |
| Neugebauer Family Enterprises, LLC | $750,000 |
| Moriah Investment Partners | $300,000 |
| DRJ Properties Ltd. | $200,000 |
| Magic Rise Group Ltd. | $1,000,000 |
| Spencer Beal | $2,000,000 |
| Reemo Family LLC | $100,000 |
| Charles Lynn Hamilton | $175,000 |
| Neugebauer Family Enterprises, LLC | $175,000 |

Docusign Envelope ID: 648394D0-1F38-4510-87DF-026098A4D523

Case 23-30246-mvl7    Doc 223-1    Filed 07/17/24    Entered 07/17/24 07:07:10    Desc
Exhibit A - Settlement Agreement    Page 21 of 24

## <u>Exhibit A</u>

### *Joint Prosecution Agreement*

Docusign Envelope ID: 64B39AD0-1F38-4510-87DF-026098A4D523

Case 23-30246-mvl7 Doc 223-1 Filed 07/17/24 Entered 07/17/24 07:07:10 Desc
Exhibit A - Settlement Agreement Page 22 of 24

# JOINT PROSECUTION AGREEMENT

This JOINT PROSECUTION AGREEMENT (this "Joint Prosecution Agreement"), dated as of July 16, 2024, is made between Scott Seidel as Chapter 7 Trustee for the Estate of With Purpose, Inc., a Delaware Corporation (the "Trustee"), WPI Collateral Management, LLC, a Texas Limited Liability Company (the "Collateral Agent"), and the "Neugebauer Parties," which are comprised of Toby Neugebauer, Banzai Capital Partners, LLC, Banzai Advisory Group, LLC, and Neugebauer Family Enterprises, LLC.

## RECITALS

A.      WHEREAS, the Trustee, the Collateral Agent, and the Neugebauer Parties have entered into that certain Settlement Agreement, executed as of July 16, 2024 (the "Agreement"), pursuant to which the Trustee, the Collateral Agent, and the Neugebauer Parties have agreed to enter into this Joint Prosecution Agreement to prosecute the Estate Causes of Action and the Neugebauer Personal Causes of Action.  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Agreement.

B.      WHEREAS, the Agreement contemplates that prior to the Effective Date of the Agreement, the Trustee, Collateral Agent, and the Neugebauer Parties will enter into this Joint Prosecution Agreement to, among other things, pursue the Estate Causes of Action on behalf of and in the name of the Trustee and the Estate.

C.      WHEREAS, the Agreement further contemplates that this Joint Prosecution Agreement shall provide for and account for costs incurred in the prosecution of the Estate Causes of Action borne by the Estate; and

D.      WHEREAS, the Agreement further contemplates that the parties shall prosecute the Neugebauer Personal Causes of Action as incidental to the Estate Causes of Action; and

E.      WHEREAS, the Agreement further contemplates that this Joint Prosecution Agreement shall provide for a distribution of the proceeds from the Estate Causes of Action and the Neugebauer Personal Causes of Action to the Estate.

F.      THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## AGREEMENT

1.      The foregoing recitals are incorporated herein as if fully set forth herein.

2.      The Trustee hereby appoints the Collateral Agent as the exclusive agent of the Trustee to investigate, commence, prosecute (including obtaining litigation financing on market terms to cover hourly attorneys' fees and expenses of litigation), manage public relations, settle, and liquidate each of the Estate Causes of Action, in each case, in the name of the Trustee, including, for the avoidance of doubt, substituting Trustee as a party in the Georgia Litigation and

Docusign Envelope ID: 648394D0-1F28-4510-87DF-026098A4D523

Case 23-30246-mvl7    Doc 223-1    Filed 07/17/24    Entered 07/17/24 07:07:10    Desc
Exhibit A - Settlement Agreement    Page 23 of 24

adding Trustee as party in the Delaware Litigation, filing additional claims for RICO, breach of fiduciary duty, tortious interference with contract, and tortious interference with prospective business relations and/or adding or substituting Trustee as a party in any other existing litigation or filing new litigation consistent with the terms of this Joint Prosecution Agreement seeking to recover $4.95 billion for the Estate; *provided*, *however*, that any settlement shall, to the extent necessary to effect such settlement, shall be approved by the Bankruptcy Court pursuant to Bankruptcy Rule 9019 and any applicable Local Rule.  Major Decisions require the Trustee's approval, which approval shall not be unreasonably withheld.  Major Decisions are limited to non-suiting, dismissing, or settling Estate Causes of Action.

3.      Subject to the limitations of paragraph 2, the Collateral Agent is authorized to investigate, commence, prosecute, settle, and liquidate the Estate Causes of Action, or any portion thereof, in the business judgment of Collateral Agent without further approval from Trustee or the Court, except as explicitly set forth in the 9019 Order or the Agreement.

4.      The Neugebauer Parties retain the sole and exclusive right to prosecute, settle, and/or liquidate the Neugebauer Personal Causes of Action.

5.      For the avoidance of doubt, nothing contained in this Joint Prosecution Agreement shall be construed (a) to obligate the Collateral Agent to investigate, commence, prosecute settle, or liquidate any one of the Estate Causes of Action, or (b) to create any agency as to the Estate-Neugebauer Causes of Action.

6.      All proceeds derived from the investigation, commencement, prosecution, settlement, or liquidation of each of the Estate Causes of Action shall be payable and distributed to the Estate and paid to creditors thereof consistent with the Bankruptcy Code terms of the Court's 9019 Order concerning the Adversary Proceeding between the Estate, the Collateral Agent, and the Neugebauer Parties.

7.      All proceeds derived from the investigation, commencement, prosecution, settlement, or liquidation of each of the Neugebauer Personal Causes of Action shall be the sole property of the Neugebauer Parties, with the exception of 5% of the net proceeds from the Neugebauer Personal Causes of Action after payment of attorneys' fees, which shall be payable and distributed to the Estate and paid to creditors thereof consistent with the Bankruptcy Code.

8.      This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns; *provided*, *however*, that neither party hereto shall be permitted to assign its interest in this Joint Prosecution Agreement without the prior written consent of the other party.

9.      This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of Texas, without regard to the laws of any other jurisdiction that might be applied because of the conflicts of laws principles of the State of Texas.

10.     This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which, when taken together, shall constitute one and the same instrument.

*[The remainder of this page has been intentionally left blank.]*

4861-0186-5936v.2

Docusign Envelope ID: 648394D0-1F28-4519-87DF-026098A4D523

Case 23-30246-mvl7   Doc 223-1   Filed 07/17/24   Entered 07/17/24 07:07:10   Desc
Exhibit A - Settlement Agreement   Page 24 of 24

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first written above.

**TRUSTEE:**

**SCOTT M. SEIDEL, AS CHAPTER 7 TRUSTEE OF THE ESTATE OF WITH PURPOSE, INC.**

By: _____

Name:  Scott M. Seidel

**COLLATERAL AGENT:**

**WPI COLLATERAL MANAGEMENT, LLC**

By: _____

Name:  J. Paul Manning

Its:  Sole Member

**BANZAI CAPITAL PARTNERS, LLC**

By: _____

Name:  Toby Neugebauer

Its:  Authorized Signatory

**BANZAI ADVISORY GROUP, LLC**

By: _____

Name:  Toby Neugebauer

Its:  Authorized Signatory

**NEUGEBAUER FAMILY ENTERPRISE, LLC**

By: _____

Name:  Toby Neugebauer

Its:  Authorized Signatory

**TOBY NEUEGEBAUER**

By: _____

SIGNATURE PAGE TO JOINT PROSECUTION AGREEMENT