# AGREEMENT

This Agreement (this "Agreement") dated as of August [___], 2024 (the "Execution Date"), is made by and between **SCOTT M. SEIDEL** as the chapter 7 trustee of With Purpose, Inc. (the "Trustee") and **GLORIFI ACQUISITIONS, LLC** ("Agent"), who collectively are referred to herein as the "Parties" or in the singular case as a "Party").

## RECITALS

**WHEREAS**, on February 8, 2023 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 7 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court"), thereby initiating the bankruptcy case styled *In re With Purpose, Inc.*, Case No. 23-30246-mvl7 (the "Bankruptcy Case" and the estate thereof being referred to as "Estate");

**WHEREAS**, the Parties have agreed to settle the allowance of the proof of claim filed by Jackson Investment Group, LLC (Claim # 45) (the "Claim 45");

**WHEREAS**, as a result of the Parties' negotiations, and without admitting the validity of any allegations or any liability in respect thereto, the Parties have reached an agreement, the terms of which are set forth in this Agreement, providing for a settlement of the Claim 45, a sale of certain assets to Agent for $6 million to the Estate, and a sale of other assets to the Agent for $100,000 to the Estate, all on the terms set forth herein; and

**WHEREAS**, the Parties have determined that the terms of this Agreement are fair, reasonable, and adequate, and is in the best interest of the Parties and the Estate.

**NOW, THEREFORE**, in consideration of the foregoing recitals, and the terms, agreements, representation, and covenants set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

## AGREEMENT

## CONDITIONS PRECEDENT

1.  Recitals. The recitals and prefatory phrases and paragraphs set forth above are incorporated in full and made part of this Agreement.

2.  Effective Date. Unless otherwise stated, the obligations, representations and warranties stated in this Agreement shall become effective on the date upon which all of the following conditions precedent have occurred (the "Effective Date"):

    (a)    the Bankruptcy Court has entered an order in the Debtor's Bankruptcy Case, in a form reasonably acceptable to the Parties, approving this Agreement and making findings of fact and conclusions of law to the extent required to give effect to this

Agreement and such order has not been stayed, modified, or amended (the "Approval Order"), substantially in the form attached hereto as Exhibit A; and

(b)     the Trustee and the Agent shall have executed a Joint Prosecution Agreement substantially in the form attached hereto as Exhibit B (the "JPA").

3.     Appeals.  In the event the Approval Order is stayed pending appeal, the Agent shall be under no obligation to fund the Payment.

4.     Bankruptcy Court Approval.  The Trustee shall file all appropriate motions, notices and proposed orders seeking Bankruptcy Court approval of this Agreement and entry of the Approval Order, subject to the Agent's approval as to form, such approval not to be unreasonably withheld.

5.     Non-Approval. In the event the Agreement is not approved by the Bankruptcy Court on or before August 30, 2024, unless agreed to by the Parties:  (a) nothing herein shall be deemed a representation or admission by any Party as to any issue, (b) this Agreement will be deemed null and void, including the validity of any and all instruments executed by any of the Parties for its performance and implementation prior to its approval and the Effective Date, and (c) the Parties shall be returned to the status quo each Party held prior to entry into this Agreement.

6.     Non-Occurrence of the Effective Date.  In the event that the Approval Order has been entered, but the Effective Date shall have not occurred, then any Party may seek to enforce rights and obligations under this Agreement by seeking relief from the Bankruptcy Court, including relief for specific performance of other Parties' obligations hereunder. If the Effective Date shall not have occurred by September 20, 2024, this Agreement shall be null and void unless otherwise extended in writing by the Parties.

7.     Final Order.  Waiver of the fourteen day stay shall be requested.

**DEFINITIONS**

8.     "Agent Expenses" are defined herein.

9.     "Causes of Action" means any (a) claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, in tort, law, or equity, (b) all rights of setoff, counterclaim, or recoupment and claims on contracts or for breaches of duties imposed by law (c) the right to object to or otherwise contest claims or interests, (d) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (e) such claims and defenses as fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code.

10.     "Encumbered Estate Causes of Action" means Causes of Action that are subject to a valid and perfected lien or security interest as of the Petition Date.

2

11. "<u>Encumbered Net Proceeds</u>" means the proceeds from Encumbered Estate Causes of Action, and the proceeds from any other asset of the Estate that is encumbered by a valid and perfected lien or security interest as of the Petition Date.

12. "<u>Estate Causes of Action</u>" means Causes of Action owned by the Estate.

13. "<u>Gross Negligence</u>" means a final determination by the Bankruptcy Court that the party has engaged in intentional wrongdoing or a knowing extreme departure from the care a reasonable person would exercise in similar circumstances.

14. "<u>Special Counsel Fees</u>" are defined herein.

15. "<u>Unencumbered Estate Causes of Action</u>" means (a) Estate Causes of Action pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code, (b) Estate Causes of Action for breach of fiduciary duty including similar and related claims, (c) Estate Causes of Action for malpractice, (d) Estate Causes of Action for commercial torts unless such commercial tort claim is determined by the Bankruptcy Court to be the subject of a valid and perfected lien or security interest as of the Petition Date, and (e) any other Estate Causes of Action that are not Encumbered Estate Causes of Action.

16. "<u>Unencumbered Net Proceeds</u>" shall mean: (a) the proceeds obtained from the Unencumbered Estate Causes of Action; (b) the proceeds from any other asset of the Estate that is not subject to a valid and perfected lien or security interest as of the Petition Date; and (c) any other amounts that the Estate is entitled to distribute to general unsecured creditors.

**PAYMENT**

17. <u>Payment</u>. The Agent shall provide to the Estate $6 million cash for what is referenced in paragraph 41(a) which amount shall constitute free and clear cash, free of all liens, claims and encumbrances of any kind or type (the "<u>$6M Payment</u>"). In addition, the Agent shall provide to the Estate $100,000 for what is referenced in paragraphs 41(b) and (c) which amount shall be held by the Trustee pending further order of the Court (collectively with the $6M Payment, the "<u>Payment</u>").

18. <u>Deposit</u>. Prior to the filing by the Trustee of a motion for approval of this Agreement, the Agent shall deposit the sum of $250,000 to be held in the Trustee's trust account as a credit to the $6M Payment, and will be paid to the Trustee if the Agreement closes or Agent fails to close pursuant to the terms of the Agreement following entry of the Approval Order, or returned to Agent if this Agreement does not close for any other reason.

19. <u>Investing the $6M Payment</u>. The $6M Payment shall be invested in a high yield savings, money market or similar high yield account. For the avoidance of doubt, the $6M payment may be used as stated in section 19 below subject to any appropriate Court orders and such consents as required in this Agreement at any time, with unused funds invested as stated in this section pending further use and distribution.

20. <u>Use of $6M Payment</u>. The $6M Payment shall be used only as follows, absent consent of Agent:

3

    a) Special Counsel Expenses and Agent Expenses but not Special Counsel Fees.

    b) Following the application and allowance of the administrative expense claims of professionals retained in the Bankruptcy Case, the Trustee shall be entitled to use such proceeds to satisfy such claims consistent with this Agreement and any applicable order of the Bankruptcy Court and, pursuant to appropriate process, the Trustee's commission.

    c) Upon the conclusion of litigation of the Estate Causes of Action as solely determined by the Agent, the balance of the unused $6M Payment, the Estate's share of any Unencumbered Net Proceeds, and any other amounts the Estate is entitled to distribute subject to the terms of this Agreement, shall be distributed to creditors pursuant to the priorities set forth in the Bankruptcy Code.

## PROSECUTION OF CAUSES OF ACTION

21. <u>Agent Sole Authority</u>. Subject only to the major decisions described below, Agent shall have sole authority to prosecute, not prosecute, negotiate, settle or otherwise dispose or not dispose of the Estate Causes of Action. No other party shall be entitled to assert any Estate Causes of Action, as such sole authority over Estate Causes of Action is vested in the Agent.

22. <u>Claim Investigation</u>. The Agent shall have sole authority to retain professionals to investigate the merits of asserting Estate Causes of Action.

23. <u>Joint Prosecution Agreement</u>. The Agent and the Trustee shall enter into the JPA substantially in the form attached hereto as <u>Exhibit B</u>. The JPA shall vest discretion and authority to prosecute the Estate Causes of Action in the Agent; *provided, however*, that any settlement of an Estate Causes of Action in an amount of more than $5 million shall be subject to Bankruptcy Court approval, if required by the terms of such settlement. For the avoidance of doubt, the Trustee acknowledges that the Agent shall be empowered and entitled to bring suit for Estate Causes of Action in the name of and on behalf of Trustee and shall be further empowered to add the Trustee as a party to existing litigation or substitute the Trustee as a party to existing litigation. In the event the Agent is grossly negligent in the prosecution of Estate Causes of Action, the Trustee may seek relief from the Bankruptcy Court from this provision and the JPA. Major decisions require the Trustee's approval, which approval shall not be unreasonably withheld. Major decisions are limited to non-suiting, dismissing, or settling Estate Causes of Action. For the avoidance of doubt, at a minimum, Agent shall file suit asserting breach of fiduciary duty claims against Toby Neugebauer; the failure to file such claims shall be deemed gross negligence under this Agreement and shall constitute a default by Agent under this Agreement.

24. <u>Notice and Indemnification</u>. The Trustee and his counsel shall be kept apprised of all litigation of Estate Causes of Action and are entitled to advise, but not direct, the Agent's prosecution of any Estate Causes of Action. The Agent agrees to indemnify the Trustee and his

4

counsel in the event any sanctions are entered against the same as a result of the Agent's actions, inactions, omissions, and the like in the prosecution of any litigation controlled by the Agent.

25.     Special Litigation Counsel; Other Estate Professionals.  The Trustee shall timely file an application (the "Employment App") in the Bankruptcy Court to employ special litigation counsel ("Special Counsel") to the Estate to pursue the Estate Causes of Action, such Special Counsel selected by Agent.  The Trustee shall employ further other professionals to provide services to the Estate as may be reasonably requested by the Agent or Special Counsel, as selected by the Agent.

26.     Privileges.  The Parties agree to share work product, attorney/client and other privileges in furtherance of the JPA and the prosecution and defense of the matters currently pending or to be filed in the Bankruptcy Court, and with respect to related matters raised in any other jurisdiction, venue or proceeding.

## PENDING LITIGATION

27.     Prosecution of Adversary Proceeding.  The Trustee agrees that it will diligently prosecute the adversary proceeding, Adv. Pro. No. 24-03038-mvl, to completion including seeking to extend the temporary injunction established pursuant to that certain Order for Temporary Injunction [Adv. Proc. Docket No. 40] into a permanent injunction.

28.     Objection to Pending Motions.  The Trustee agrees that it will diligently object to the lift stay motions at Docket Nos. 199 and 201 and the conversion motion at Docket No. 217, and any additional motions or proceedings that are contrary to the purposes of this Agreement.

29.     Joint Standing.  The Trustee agrees that the Agent has joint standing to participate in the prosecution or defense, as applicable, of the above matters, and that in the event there is any dispute between the Agent and Trustee in the prosecution or defense, as applicable, of the above matters, the Agent shall assume the prosecution or defense, as applicable, of such matters.

30.     Delaware Litigation.  The Parties agree to seek a permanent stay or dismissal of the complaint filed in the United States District Court for the District of Delaware, thereby initiating Civil Proceeding 1:24-cv-00599.  The Agent may add or substitute the Trustee as a plaintiff pursuant to the JPA in furtherance of this provision.

31.     Georgia Litigation.  The Parties agree to seek a permanent stay or dismissal of the complaint filed in the United States District Court for the Northern District of Georgia, thereby initiating Civil Proceeding 1:24-cv-02148.  The Agent may add or substitute the Trustee as a plaintiff pursuant to the JPA in furtherance of this provision.

## SHARING OF UNENCUMBERED NET PROCEEDS

32.     Sharing of Unencumbered Net Proceeds.  In exchange for the consideration set forth in this Agreement, the Agent and the Trustee agree to the sharing of Unencumbered Net Proceeds.  The Trustee shall make the distribution in accordance with the table below, after first accounting for any fees owed to Special Counsel.

| UNENCUMBERED NET PROCEEDS | AGENT | ESTATE |
|---|---|---|
| Up to Preference | 100% | 0% |
| Preference to $30M | 80% | 20% |
| $30M to $50M | 50% | 50% |
| $50M to $60M | 40% | 60% |
| Over $60M | 20% | 80% |

33.     Preference.  The Agent will receive a distribution preference in the amount of (i) $6 million, plus (ii) advanced Special Counsel Fees, plus (iii) 1% per month return on the outstanding balance of (i) and (ii), compounded monthly (collectively, the "Preference").

34.     Litigation Fee and Expenses.  Expenses and costs incurred by Special Counsel in pursuit of the litigation pursuant to the JPA shall be paid by the Estate ("Special Counsel Expenses"), including from the $6M Payment.  "Special Counsel Fees" shall mean fees incurred by Special Counsel in pursuit of the litigation pursuant to the JPA, and fees, costs and expenses incurred by Agent's counsel in pursuit of the litigation pursuant to the JPA.  Special Counsel Fees shall be paid from the Unencumbered Net Proceeds and not the $6M Payment.  Agent is permitted to advance Special Counsel Fees, and any such amounts advanced by Agent shall be reimbursed to Agent from the Unencumbered Net Proceeds and not the $6M payment.  The Agent is not responsible for any fees and expenses incurred by the Trustee, which fees and expenses shall be paid by the Estate, including from the $6M Payment.

35.     Agent Expenses.  The Trustee shall reimburse from the Estate the Agent's fees, costs and expenses incurred after the Effective Date related to Bankruptcy Court matters.  The Agent shall periodically provide summary copies of invoices including aggregate amounts of fees, costs and expenses and total amount of time to the Trustee.  The Trustee shall pay such invoices within thirty (30) days of receipt of such invoice.  Invoices of professionals shall not be required to comply with the U.S. Trustee fee guidelines, nor shall such professional file fee applications.  The Bankruptcy Court shall determine any dispute regarding an invoice if the Parties are unable to consensually resolve any dispute regarding fees.

36.     Security Interests, Perfection and Priority.  The obligations owing to Agent hereunder shall be secured by (a) first priority lien and security interest in all of the Unencumbered Net Proceeds, and (b) a second priority lien and security interests in all of the Encumbered Net Proceeds.  Such liens and security interests shall be deemed unavoidable, fully and properly perfected by this Agreement and the Approval Order.

37.     Cash Collateral.  The Trustee stipulates and agrees that all funds recovered from Estate Causes of Action shall constitute the Agent's cash collateral, subject to the terms of this Agreement and in accordance with the priorities set forth in the immediately preceding paragraph.  Following the sharing under paragraph 31-32 of this Agreement, the Estate's share of Unencumbered Net Proceeds will be deemed property of the Estate free and clear of any and all liens, claims and encumbrances.

38.     Timing of Distributions.  All distributions of Unencumbered Net Proceeds shall be paid within thirty (30) days of the Estate's receipt of Unencumbered Net Proceeds without

further action or order of the Court. Except as otherwise provided in this Agreement, all distributions under this paragraph or otherwise shall be subject to the statutory Trustee fees.

39. <u>Encumbered Net Proceeds</u>. Encumbered Net Proceeds shall be held by the Trustee pending further order of the Court. All parties rights are preserved as to Encumbered Net Proceeds including the right to argue the proceeds are unencumbered, and to seek to surcharge the Encumbered Net Proceeds under 11 U.S.C. § 506(c).

## ALLOWANCE OF CLAIMS AND CLAIM OBJECTIONS

40. <u>Claim 45 Allowance</u>. Claim 45 shall be allowed on a final basis as a general unsecured claim in the amount of $10 million, and not be subject to any further objections or challenges of any kind.

41. <u>Claim Objections</u>. Pursuant to the JPA, the Agent and the Trustee shall jointly object to claims as appropriate. The Agent may unilaterally assert, file and prosecute claim objections and is authorized to do so without further order of the Court.

## PURCHASE OF ASSETS

42. Pursuant to 11 U.S.C. § 363, the Trustee shall sell, and the Agent shall purchase, free and clear of any and all liens, claims and encumbrances of any kind or type, the following assets:

   a) The Debtor's and Estate's rights given to Agent hereunder and under the JPA;

   b) the Debtor's and Estate's rights in the name "GloriFi"; and

   c) the stock, shares, units or similar expression of equity ownership in each of the Debtor's subsidiaries.

## BREACH

43. The occurrence of one or more of the following shall constitute a material breach hereunder: (i) the invalidation or modification of the JPA, in each case, in any way, without the advanced written consent of the Agent; (ii) the removal of the Trustee as the chapter 7 trustee of the Bankruptcy Case; (iii) the removal of any Special Counsel as counsel, unless by prior written consent of the Agent; (iv) a material breach of this Agreement or the JPA by the Trustee; (v) conversion of the Bankruptcy Case to any other chapter; or (vi) if the Approval Order shall be reversed, modified, or amended without the written consent of the Agent. Upon a material breach, the balance of the $6M Payment shall be immediately returned to the Agent, and the Agreement and JPA shall otherwise remain in full force. Upon a material breach of this Agreement or the JPA by the Agent, the Trustee may seek appropriate relief from the Bankruptcy Court.

## MISCELLANEOUS TERMS

44. <u>Entire Understanding</u>. This Agreement has been prepared after negotiations among the Parties and contains the entire understanding and agreement among the Parties with respect to the Claims, and any and all claims that have arisen or which could have arisen in connection with the Claims. No other representations, covenants, undertakings, or other prior or contemporaneous agreements, whether verbal or written, which are not specifically incorporated in this Agreement, shall be deemed in any way to exist or bind the Parties. The Parties acknowledge that no Party has executed this Agreement in reliance on any promise, representation, or warranty not expressly contained in this Agreement.

45. <u>Confidentiality</u>. Other than to the extent disclosed as may be necessary for enforcement of this Agreement or in seeking approval of this Agreement and the entry of the Approval Order or related orders, and except as may otherwise be agreed to by the Parties in writing or as required in the Debtor's Bankruptcy Case, the Parties agree to keep the terms of this Agreement confidential. The Parties also agree to keep any settlement discussions leading up to this Agreement confidential consistent with this paragraph.

46. <u>No Assumed Liabilities</u>. Notwithstanding anything to the contrary set forth herein, the Parties expressly acknowledge and agree that Agent will not assume, be obligated to pay, perform or otherwise discharge or in any other manner be liable or responsible for Liabilities of the Debtor or Estate, whether existing on date of the Approval order or arising thereafter, including on the basis of any law imposing successor liability, other than as expressly assumed hereunder and the obligations of Agent under this Agreement.

47. <u>Attorneys' Fees and Costs</u>. Unless otherwise provided in this Agreement, the Parties shall bear their own costs and attorneys' fees incurred in connection with the negotiation and consummation of this Agreement. Notwithstanding the foregoing, if any Party is required to enforce its rights under this Agreement, then the prevailing Party of any such action shall be entitled to its reasonable attorneys' fees and costs from the non-prevailing Party.

48. <u>Capacity</u>. By execution below, consistent with this Agreement, each Party agrees and affirmatively represents that it has the full capacity and authority to execute, perform, and be bound by each and every term of this Agreement.

49. <u>Related Claims</u>. If any action, claim or similar proceeding is filed or commenced in any court or tribunal asserting Estate Causes of Action or seeking relief in contravention of this Agreement, the Parties shall cooperate in opposing such relief, and to seek dismissal, stay or withdrawal of such matter, including seeking relief from the Bankruptcy Court.

50. <u>Rescission of Entire Agreement</u>. In the event that the Bankruptcy Court or any other court of competent jurisdiction declares the Agreement, or any material provision of the Agreement, invalid or unenforceable, the entire Agreement will be deemed rescinded and void ab initio.

51. <u>Ownership of Claims</u>. The Trustee acknowledges by virtue of signing this Agreement that the Trustee is the lawful owner of all rights, title, and interest in and to the Estate

Causes of Action, and that it has not heretofore assigned or transferred, or purported to assign or transfer, any of such claims, in whole or in part, to any other person or entity, and that it has the authority to enter into this Agreement and to bind each Party to its terms, subject to approval of the Bankruptcy Court.

52. _Insurance_.  Any obligation of any insurer to pay any defense costs is not a condition to the effectiveness of this Agreement, and the insurer's failure to pay any defense costs shall not affect the force and validity of this Agreement, or any obligation of any insurer.

53. _Notice to Parties_. Unless otherwise agreed to in writing, all notices or communications under this Agreement by any Party to the other Party shall be in writing, sent via email, and mailed by certified mail, return-receipt requested, or by overnight courier with a parcel tracking system, to counsel for the Parties.  Notices shall be deemed to have been given as of the date sent.  Notice shall be sent as follows:

| | |
|---|---|
| To Trustee: | Scott Seidel, Trustee<br>6505 W. park Blvd. Ste. 306<br>Plano, Texas 75093<br>Email: scott@scottseidel.com |
| With copies, which shall not constitute notice, to: | Munch Hardt Kopf & Harr, P.C.<br>Attn: Davor Rukavina, Esq.<br>Attn: Thomas D. Berghman, Esq.<br>500 N. Akard Street, Suite 4000<br>Dallas, Texas 75201<br>Phone: 214-855-7500<br>Email: drukavina@munsch.com<br>Email: tberghman@munsch.com |
| To Glorifi Acquisitions, LLC: | Glorifi Acquisitions, LLC<br>Attn: David Stockton<br>1100 Peachtree Street NE<br>Suite 2800<br>Atlanta, GA 30309-4528<br>Email: dstockton@ktslaw.com |
| With copies, which shall not constitute notice, to: | Kilpatrick Townsend & Stockton LLP<br>Attn: Paul M. Rosenblatt<br>1100 Peachtree Street NE<br>Suite 2800<br>Atlanta, GA 30309-4528<br>Email: PRosenblatt@ktslaw.com |

54. _Execution in Counterparts_. The Parties may execute this Agreement in counterpart originals in any number of actual, faxed, telecopied and/or PDF scanned counterparts. Each executed counterpart will be considered an original, and all of them together will constitute a

9

singular Agreement. No counterpart shall be altered or interlined and all of them together shall constitute but one and the same instrument.

      55.      <u>Governing Law</u>. This Agreement will be interpreted and construed under the laws of the State of Texas, the Bankruptcy Code and Bankruptcy Rules, regardless of the domicile of any Party or conflict of laws principles, and will be deemed for such purposes to have been made, executed, and performed in the State of Texas.

      56.      <u>Construction</u>. This Agreement shall be construed as if the Parties jointly participated in the preparation of this Agreement and any uncertainty and/or ambiguity shall not be interpreted against any one Party.

      57.      <u>Headings</u>. The section titles, captions, and headings contained in this Agreement are inserted as a matter of convenience and for reference, and shall in no way be construed to define, limit, or extend the scope of this Agreement or the effect of any of its provisions.

      58.      <u>Jurisdiction and Venue</u>. The Bankruptcy Court shall retain jurisdiction to enforce the terms of this Agreement. Venue relating to this Agreement shall be proper in the Bankruptcy Court for the Northern District of Texas.

      59.      <u>No Admission of Liability</u>. Nothing in this Agreement shall be construed as an admission of liability or any agreement to subject a Party to the personal jurisdiction of any particular court, except and solely to the extent necessary to enforce or interpret this Agreement. The Parties' agreement to settle is made without admitting any claims or contentions of liability or defenses.

      60.      <u>Binding on Successors, Assigns, and Others</u>. This Agreement and the covenants and conditions it contains shall be jointly and severally binding upon the Parties and their respective heirs, executors, administrators, conservators, plan administrators, agents, trustees, servants, employees, committees, beneficiaries, predecessors, successors (including any successor chapter 7 trustee), attorneys, insurers, transferees, and assigns.

      61.      <u>Amendments and Waivers</u>. Any amendment to this Agreement shall be in writing and shall conform to the same formalities as exhibited in this Agreement. No failure to exercise, nor delay in exercising, any right, remedy or power under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy or power under this Agreement preclude any other or further exercise thereof, or the exercise of any other right, remedy or power provided herein or by law or in equity.

      62.      <u>Further Assurances</u>. Each of the Parties agrees to execute such other documents and to take such other action as may be reasonably necessary to further the purposes of this Agreement.

      <u>IN WITNESS WHEREOF</u>, the Parties have caused this Agreement to be effective as of the last date of its full execution, and it shall be effective on the Effective Date.

| | |
|---|---|
| SCOTT M. SEIDEL AS CHAPTER 7 TRUSTEE OF THE ESTATE OF WITH PURPOSE, INC. | GLORIFI ACQUISITIONS, LLC |
| By: _____<br>Name: Scott M. Seidel<br>Title: Trustee | By:_____<br>Name:<br>Title: |

11

# EXHIBIT A

# FORM OF APPROVAL ORDER

Insert approval order

# EXHIBIT B

# JOINT PROSECUTION AGREEMENT

## JOINT PROSECUTION AGREEMENT

This JOINT PROSECUTION AGREEMENT (this "Joint Prosecution Agreement"), dated as of August [___], 2024, is made between Scott Seidel as Chapter 7 Trustee for the Estate of With Purpose, Inc., a Delaware Corporation (the "Trustee") and Glorifi Acquisitions, LLC, a Georgia Limited Liability Company (the "Agent").

### RECITALS

A. WHEREAS, the Trustee and Agent have entered into that certain Agreement, executed as of August [___], 2024 (the "Agreement"), pursuant to which the Trustee and Agent have agreed to enter into this Joint Prosecution Agreement to prosecute the Estate Causes of Action. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Agreement.

B. WHEREAS, the Agreement contemplates that prior to the Effective Date of the Agreement, the Trustee and Agent will enter into this Joint Prosecution Agreement to, among other things, pursue the Estate Causes of Action on behalf of and in the name of the Trustee and the Estate.

C. WHEREAS, the Agreement further contemplates that this Joint Prosecution Agreement shall provide for and account for costs incurred in the prosecution of the Estate Causes of Action borne by the Estate; and

D. WHEREAS, the Agreement further contemplates that this Joint Prosecution Agreement shall provide for a distribution of the proceeds from the Estate Causes of Action.

THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

### AGREEMENT

1. The foregoing recitals are incorporated herein as if fully set forth herein.

2. The Trustee hereby appoints the Agent as the exclusive agent of the Trustee to investigate, commence, prosecute, manage public relations, settle, and liquidate each of the Estate Causes of Action, in each case, in the name of the Trustee, including, for the avoidance of doubt, substituting Trustee as a party in the Georgia Litigation and adding Trustee as party in the Delaware Litigation, filing additional claims including, but not limited to, breach of fiduciary duty and malpractice and/or adding or substituting Trustee as a party in any other existing litigation or filing new litigation consistent with the terms of this Joint Prosecution Agreement seeking to recover $4.95 billion for the Estate; *provided, however*, that any settlement greater than $5 million shall, to the extent necessary to effect such settlement, be approved by the

Bankruptcy Court pursuant to Bankruptcy Rule 9019 and any applicable Local Rule.  Major Decisions require the Trustee's approval, which approval shall not be unreasonably withheld.  Major Decisions are limited to non-suiting, dismissing, or settling Estate Causes of Action.

      3.      Subject to the limitations of paragraph 2, the Agent is authorized to investigate, commence, prosecute, settle, and liquidate the Estate Causes of Action, or any portion thereof, in the sole discretion of Agent without further approval from Trustee or the Court, except as explicitly set forth in the Approval Order or the Agreement.

      4.      For the avoidance of doubt, nothing contained in this Joint Prosecution Agreement shall be construed to obligate the Agent to investigate, commence, prosecute settle, or liquidate any one of the Estate Causes of Action.

      5.      All proceeds derived from the investigation, commencement, prosecution, settlement, or liquidation of each of the Estate Causes of Action shall be payable and distributed to the Estate and paid consistent with the terms of the Agreement and Approval Order.

      6.      This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns; *provided, however*, that neither party hereto shall be permitted to assign its interest in this Joint Prosecution Agreement without the prior written consent of the other party.

      7.      This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of Texas, without regard to the laws of any other jurisdiction that might be applied because of the conflicts of laws principles of the State of Texas.

      8.      This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which, when taken together, shall constitute one and the same instrument.

*[The remainder of this page has been intentionally left blank.]*

      IN WITNESS WHEREOF, the parties have executed this Joint Prosecution Agreement as of the date first written above.

| SCOTT M. SEIDEL AS CHAPTER 7 TRUSTEE OF THE ESTATE OF WITH PURPOSE, INC. | GLORIFI ACQUISITIONS, LLC |
|---|---|
| By: _____ <br> Name: Scott M. Seidel <br> Title: Trustee | By:_____ <br> Name: <br> Title: |

3