Paul M. Rosenblatt, Esq.
Northern District of Texas Bar No. 614522GA
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309-4528
-and-
2001 Ross Avenue
Suite 4400
Dallas, TX USA 75201
Telephone: (404) 815-6321
Email:  prosenblatt@kilpatricktownsend.com

*Counsel to Jackson Investment Group, LLC*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re: § | Chapter 7 |
| § | |
| WITH PURPOSE, INC., § | CASE NO. 23-30246-mvl |
| § | |
| Debtor. § | Hearing Date: September 23-25, |
| § | 2024, 9:30 am (CT) |
| § | |

**JACKSON INVESTMENT GROUP, LLC'S OBJECTION TO AMENDED**
**MOTION TO CONVERT BANKRUPTCY CASE TO CHAPTER 11 PURSUANT**
<u>**TO SECTION 706(a) OF THE BANKRUPTCY CODE**</u>
**(ECF No. 275)**

Jackson Investment Group, LLC ("<u>JIG</u>"),[1] by and through its undersigned counsel, hereby objects to the *Amended Motion to Convert Bankruptcy Case to Chapter 11 Pursuant to Section 706(a) of the Bankruptcy Code* [ECF No. 275] (the "<u>Amended Conversion Motion</u>") filed by With

---

[1] JIG is a creditor owed no less than $10 million based on money loaned to the Debtor.  <u>See</u> Proof of Claim No. 45.

Purpose, Inc., the Chapter 7 debtor in the above-captioned case (the "Debtor"). In support of its objection, JIG respectfully shows the Court the following:

## SUMMARY

1.　Conversion of this case to Chapter 11 should be denied for three primary reasons: (a) the Debtor, acting through its controlling shareholder and director Toby Neugebauer, has engaged in multiple types of bad faith and abuse of process prior to and during this Chapter 7 case; (b) conversion to Chapter 11 will not resolve any issues and will create more issues; and (c) the case should remain in Chapter 7 because (i) the Trustee is an independent fiduciary, (ii) the DEGA Complaints upon which the proposed Chapter 11 plan is based are meritless, and (iii) the JIG 9019/Sale is the highest and best offer provided to the Trustee (and provides the best opportunity for maximizing recovery to creditors).

2.　As a preliminary matter, there is no independence between Toby Neugebauer ("Mr. Neugebauer"), the Debtor, the Collateral Agent, and the proposed CRO for the Chapter 11 case. All actions of these entities are coordinated and controlled by Mr. Neugebauer. The Debtor's proposed plan and disclosure statement are based on the DEGA Complaints. The DEGA Complaints are based solely on Mr. Neugebauer's unsupportable allegations. In fact, after many hours of depositions in this case during the past two weeks, not one witness was able to identify even one credible fact or piece of evidence to support the allegations in the DEGA Complaints. Mr. Neugebauer even said the DEGA Complaints were filed prior to investigating the matters therein, a clear violation of Rule 11. If the DEGA Complaints move forward, there is no question that the DEGA Defendants will seek early dismissal and the imposition of sanctions under Rule 11. By way of one example, DEGA Defendant Old Glory has already served a robust sanctions letter, with substantial supporting evidence attached thereto, showing that the allegations regarding

2

Old Glory in the DEGA Complaints are frivolous and nothing more than conspiratorial fantasies imagined by Mr. Neugebauer. *See* **Exhibit 1** attached hereto (copy of sanctions letter).

3. Mr. Neugebauer's bad faith and abuse of process began prepetition under his management of the Debtor, and continued postpetition in obstructing the Chapter 7 trustee in performing his duties to maximize the value of this estate. Prepetition, Mr. Neugebauer grossly mismanaged the Debtor ultimately driving it into bankruptcy, wasting almost $100 million in the process. This mismanagement went well beyond typical bad business decisions. Mr. Neugebauer engaged in self-dealing transactions for his benefit and to the detriment of the Debtor and its investors. Mr. Neugebauer lied to investors, threatened employees and investors, and fired members of the board who opposed his self dealing transactions.

4. The prepetition facts in a nutshell, GloriFi raised $53 million from respected investors by November 2021. Shortly thereafter, despite financial projections to the contrary, Mr. Neugebauer was asking the investors for more money. In the Spring of 2022, GloriFi was presented with the opportunity to go public at a $1.7 billion valuation. The investors supported this proposal. Instead of pursuing the $1.7 billion deal, Mr. Neugebauer, in violation of his duties, proposed a series of self-dealing transactions that would have transferred the assets of GloriFi to an entity owned by Mr. Neugebauer, provided an entity owned by Mr. Neugebauer with exorbitant marketing fees, and substantially increased Mr. Neugebauer's financial position in GloriFi. Independent Board members did not approve Mr. Neugebauer's alternative transactions. Rather than moving forward on the terms Mr. Neugebauer promised his investors just days prior, Mr. Neugebauer wrongfully removed the Board members who stood up to his self-dealing. Over the next 6 months, Mr. Neugebauer destroyed the value of GloriFi despite receiving an additional $50 million of funding from other sources.

5. Mr. Neugebauer's bad behavior did not stop on the Chapter 7 petition date. Following the commencement of this Chapter 7 case, Mr. Neugebauer engaged in one tactical effort after another to block the Trustee from achieving the highest and best offer for the estate's assets. These efforts included blatantly violating the automatic stay by commencing actions in other forums to assert estate causes of action without permission or stay relief. Such actions were designed to interfere with the Trustee's sale process, and were filed after the Trustee had obtained a bidding procedures order over Mr. Neugebauer's objection. The Trustee promptly commenced an adversary proceeding and obtained an injunction to stay Mr. Neugebauer's actions. Apparently displeased with the injunction, Mr. Neugebauer filed the present motion to convert this Chapter 7 case to a Chapter 11 case 18 months after the commencement of this Chapter 7 case. The conversion motion has one goal, to displace the Chapter 7 trustee, undo the injunction and put Mr. Neugebauer into control of the Debtor's estate. Mr. Neugebauer destroyed the enterprise value of the Debtor and has grossly complicated and increased the administrative expenses of this Chapter 7 case. He should not be rewarded by delivering to him control of the Debtor's estate and removing this case from a truly independent party, the Chapter 7 trustee.

6. Conversion of this Chapter 7 case to Chapter 11 will not resolve any of the present issues and will only create more complicated issues. Existing issues such as the validity, extent and priority of the Collateral Agent's liens and claims, currently the subject of a pending adversary proceeding, will be as relevant to a Chapter 11 case as they are to a Chapter 7 case. Mr. Neugebauer's liability for violating the automatic stay as a result of filing the DEGA Complaints will need to be adjudicated whether this case remains in Chapter 7 or 11. New issues will arise in Chapter 11 including whether to reconvert the case to Chapter 7, whether to appoint a Chapter 11

4

trustee, the sources of any funding to prevent a Chapter 11 administrative insolvency, and contested exclusivity, disclosure statement and plan confirmation issues.

7. Also pending before the Court for approval is the JIG 9019/Sale. The JIG 9019/Sale presents the highest and best offer presented to the Trustee. No other entity has provided a higher or better offer to the Trustee despite multiple opportunities and deadlines to do so. It is time to stop Mr. Neugebauer's attempts to derail this Chapter 7 case, and move forward with the highest and best offer provided to the Trustee, the JIG 9019/Sale.

**ARGUMENT**

8. Sections 706(a) and (d) of the Bankruptcy Code are applicable to a debtor's request to convert a Chapter 7 case to a Chapter 11 case. A Chapter 7 debtor does not have the unfettered right to convert a Chapter 7 case to a Chapter 11 case. Where a debtor engages in bad faith conduct prior to and during the course of the bankruptcy case, or where the debtor engages in abuse of process, the Court can and should deny a request to convert a case from Chapter 7 to Chapter 11. *See In re Jacobsen*, 609 F.3d 647, 660 (5th Cir. 2010) (bad faith and abuse of process are reasons to deny a motion to convert).

9. In *In re Zamora-Quezada*, 622 B.R. 865 (Bankr. S.D. Tex. 2017), the Bankruptcy Court for the Southern District of Texas denied a Chapter 7 debtor's motion to convert to Chapter 11. The debtor had failed to schedule assets, did not identify payments made within the 90 days prior to the petition date, and transferred significant assets to insiders prior to filing. The trustee filed avoidance actions seeking to avoid and recover preferential transfers. In response, the debtor filed a motion seeking to convert his case to Chapter 11, noting that its Chapter 11 plan would, among other things:

    a. Lift the stay on debtor's appeal of an adverse judgment by Hitachi (a creditor) in Ohio;

5

  b.  abate all avoidance litigation pending final outcome of that appeal;

  c.  cause the debtor's insiders to waive the statute of limitations for pursuing avoidance actions against them; and

  d.  if the debtor won the appeal against Hitachi, the plan would be a 100% plan, funded by the debtor's non-bankruptcy affiliates, but if the debtor lost the appeal, the plan would allow Hitachi to designate a new plan trustee to replace the debtor and the new plan trustee will be entitled to resume pursuit of avoidance actions to fund the plan.

*Id*. at 869-70.

  10. The *Zamora-Quezada* court noted that "pre-petition bad-faith conduct forfeits a debtor's right to convert to a Chapter 11 case as well as chapter 13 because that debtor is 'not a member of the class of honest but unfortunate debtor[s] that the bankruptcy laws were enacted to protect.'" *Id*. 878 (*quoting Marrama v. Citizens Bank of Massachusetts, 549 U.S. 365, 367 (2007)*). "In determining whether a debtor is eligible to be a Chapter 11 debtor, the bankruptcy court may look to § 1112(b)(1) which "governs when this Court must convert a Chapter 11 case to a Chapter 7 or dismiss the case." *Id*. at 879 (*quoting Gow Ming Chao*, 2011 WL 5855276, *6 (Bankr. S.D. Tex. Nov. 21, 2011)). The *Zamora-Quezada* court proceeded to quote section 1112 of the Bankruptcy Code and list the various statutory examples of cause identified in section 1112 including (i) a substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation and (ii) gross mismanagement of the estate. *See id*.

  11. The *Zamora-Quezada* court held that the debtor's filing was made to avoid collection efforts by Hitachi and "[w]hen taken in addition to the concealment of assets by filing incomplete or, alternatively, improper schedules, the Court is not hard pressed to find that Debtor and its principal have engaged in rampant bad faith conduct prior to and during the course of this bankruptcy proceeding." *Id*. at 883-84. The Court held that "it has been demonstrated that Debtor, vis-à-vis its principal, has caused both substantial and continuing losses to the estate and that there

6

is no likelihood of rehabilitating Debtor because it has no business purpose aside from winding down its operations." *Id*. at 886. This disqualified the debtor from operating in Chapter 11. *Id*.

12. In denying the debtor's motion to convert, the Court found: "that Debtor is not much more than a mere husk of its former self. In total, the Court finds Debtor has engaged in bad faith conduct prior to and during the course of this bankruptcy and is not eligible to be a debtor in Chapter 11 because of substantial and continuing losses to the estate and no likelihood of rehabilitation." *Id*. at 887.

***Mr. Neugebauer's PrePetition and Post Petition Bad Faith and Abuse of Process***

13. As will be evidenced at the upcoming September 23, 2024 hearing on this Amended Conversion Motion, Mr. Neugebauer has engaged in four (4) types of bad faith and abuse of process warranting denial of the Amended Motion to Convert.

14. *Personal gain*: Prepetition, Mr. Neugebauer directed the Debtor for selfish and improper financial reasons, rather than seeking to maximize the value of the Debtor for all stakeholders. He advanced improper self-dealing transactions that would benefit him personally to the detriment of other stakeholders, and refused to take the very course of action he promised the Company's stakeholders that would have taken the Debtor public at a $1.7 billion valuation.

15. *Obstruction or delay*: Mr. Neugebauer has directed the parties he controls including the Debtor and the Collateral Agent to take actions that have unduly delayed this Chapter 7 case, and hindered the ability of the Chapter 7 trustee to fairly administer the debtor's estate. He has substantially increased the cost of administering this Chapter 7 estate due to the Chapter 7 trustee's attempts to remedy Mr. Neugebauer's improper actions. For example, the improper filing of the DEGA Complaints resulted in this Chapter 7 estate incurring hundreds of thousands of dollars in legal fees.

16. *Harassment*: Both prepetition and postpetition, Mr. Neugebauer has engaged in an ongoing campaign of harassing creditors and other parties to support his improper actions. Prepetition, Mr. Neugebauer threatened to sue directors of the Debtor if they did not approve Mr. Neugebauer's self-dealing transactions. He even threatened to kill an investor for not supporting his self-dealing transactions. Postpetition, Mr. Neugebauer continues to threaten and harass creditors and other parties, now in an effort to drum up support for his Amended Conversion Motion. In that regard and as discussed below, Mr. Neugebauer engaged in deceitful tactics to obtain support for his RSA, including providing material misrepresentations to such creditors.

17. *Undermining the bankruptcy process*: Mr. Neugebauer has undermined this Chapter 7 case. On the cusp of the Chapter 7 Trustee's second attempt to monetize the assets of this estate through a fair auction, Mr. Neugebauer directed the filing of the DEGA Complaints, throwing the sale process into disarray. Mr. Neugebauer's goal was to undermine the Bidding Procedures Order entered by this Court. What followed was a series of events that ultimately culminated in first, Mr. Neugebauer settling with the Trustee, and second, the Trustee receiving the JIG 9019/Sale, a higher and better offer than Mr. Neugebauer's offer. Rather than participate in a controlled auction of the estate's assets, Mr. Neugebauer engaged in scorched earth tactics, accusing the Chapter 7 Trustee of fraud, objecting to the JIG 9019/Sale and pressing forward this Amended Conversion Motion. All told, the Chapter 7 estate has incurred a massive amount of legal fees that could have been avoided if Mr. Neugebauer had followed the Bidding Procedures Order and engaged in a process that countless bankruptcy estates have successfully performed before, a bankruptcy sale process as set forth in the Bidding Procedures Order. Mr. Neugebauer chose otherwise, and in the process has committed acts that further confirm why this case should remain in Chapter 7 and not be turned over to Mr. Neugebauer in a Chapter 11 case. To make

matters worse, Mr. Neugebauer now criticizes the Trustee for incurring the very fees Mr. Neugebauer's gamesmanship and delay tactics caused the Trustee to incur.

***Conversion To Chapter 11 Will Not Resolve
Any Issues And Will Create More Issues***

18.  The Debtor's proposed CRO testified in deposition that it will likely take 6 months to obtain confirmation of a Chapter 11 plan (an estimate that is ambitious, to say the least, when the history of this case is considered). By that time, the two year statute of limitations for Bankruptcy Code causes of action will have run, providing Mr. Neugebauer and others with *de facto* releases – which is exactly what Mr. Neugebauer has wanted all along.

19.  The validity, extent and priority of the Collateral Agent's liens and claims is currently the subject of a pending adversary proceeding with the Chapter 7 trustee. [Adv Pro No. 24-3038]. It is unclear what will happen to the pending adversary proceeding if the case is converted to Chapter 11. A trial is currently set for October 16-18, 2024. Conversion to Chapter 11 will only delay resolution of the important issues presented in the adversary proceeding, such as the validity, extent and priority of the Collateral Agent's liens and claims, and Mr. Neugebauer's liability for violating the automatic stay as a result of filing the DEGA Complaints. These issues will need to be resolved whether this case is in Chapter 7 or Chapter 11. One thing is certain if the case is converted to Chapter 11, resolution of the issues in the adversary proceeding will be delayed, further increasing costs and further complicating this case.

20.  Converting this case to Chapter 11 will raise many more issues that are not present or relevant to a Chapter 7 case. This Chapter 7 case by default has a trustee. If this case is converted to Chapter 11, based upon Mr. Neugebauer's prior and ongoing conduct, it is highly likely that the first issue that will arise in the Chapter 11 case is a request to appoint a Chapter 11 trustee. Such requests are expensive and time consuming. The Chapter 7 estate already has a

9

independent fiduciary in place (*i.e.,* the Chapter 7 trustee). The incredible and ridiculous fact that Mr. Neugebauer has now added the Chapter 7 trustee to the long list of individuals who Mr. Neugebauer believes somehow "conspired" against him is no reason to displace the chapter 7 trustee and convert this case to Chapter 11.

21. Alternatively, there will likely be requests to reconvert the case to Chapter 7. Section 1112(b)(4) of the Bankruptcy Code provides examples of "cause" to convert a Chapter 11 case to Chapter 7. Mr. Neugebauer is guilty of the first two examples listed – the Debtor has been out of business for almost 2 years resulting in a complete "absence of a reasonable likelihood of rehabilitation" and prepetition "gross mismanagement of the estate." *Id*.

22. The Amended Conversion Motion includes a section heading entitled "Conversion Seeks to Achieve the Central Purpose of Reorganization – Repayment." *See* Amended Conversion Mot. at 9. Nothing in the subsequent paragraphs of the Amended Conversion Motion describes (or even refers to) a reorganization. *See id.* ¶¶ 23-24. The Debtor's primary assets are litigation claims. The Debtor has no ability to reorganize. Instead, the Debtor simply seeks to liquidate on terms preferred by Mr. Neugebauer (and only after Mr. Neugebauer realized he either could not top, or was unwilling to top, the JIG offer). Simply stated, there is no business to rehabilitate, and Mr. Neugebauer grossly mismanaged the prepetition affairs of the Debtor. Had this Debtor filed Chapter 11 in the first place, grounds existed to immediately convert the case to Chapter 7. Those grounds are just as relevant today.

23. Mr. Neugebauer's proposed Plan and Disclosure Statement are fatally flawed and cannot be confirmed. Mr. Neugebauer's RSA was obtained through a combination of material misrepresentations and harassment. The Chapter 11 plan process will be long and arduous, resulting in needless delay and the incurrence of substantial legal fees.

10

24. The proposed Plan is a liquidating plan that creates a litigation trust to pursue estate causes of action. The litigation trust will be controlled by a Trust Committee. [275-1, p. 9 of 27, § 2.72]. Mr. Neugebauer will be in full control of the Trust Committee, as it proposes three members, one is Mr. Neugebauer and another is the Collateral Agent that Mr. Neugebauer controls. The Trustee Committee appoints the liquidating trustee. *Id*. at § 2.73. Thus, Mr. Neugebauer will be solely in control of the Liquidating Trust, a role Mr. Neugebauer is not qualified to have (as shown by his gross mismanagement and rampant self-dealing when in control of the Debtor prepetition).

25. The Plan is based on pursuing a variation of the DEGA Complaints. The variation is set forth in a proposed "First Amended Complaint" that is even more outlandish than the original complaints - the original complaints set a high bar for outlandishness. [ECF No. 275-4]. The First Amended Complaint adds a laundry list of breach of fiduciary duty and tortious interference claims that are devoid of factual support and defy reality. The claims even go so far as to claim "all defendants" (there are almost 30 of them) tortiously interfered with the Debtors prospective business relations with Donald Trump Jr. as well as an assortment of other entities. Despite the DEGA Complaints being stayed, one defendant (Old Glory Holding Company) in the DEGA Complaints already sent a Rule 11 letter to counsel for the DEGA Complaint. *See* **Exhibit 1** hereto. Mr. Neugebauer removed that defendant from the proposed First Amended Complaint. More Rule 11 letters are likely to follow.

26. The Disclosure Statement is also faulty. There is no reference to the appointment of a chief restructuring officer ("CRO") in the Disclosure Statement, which could mean that the Debtor has no intention of appointing a CRO despite representations to the contrary in the Amended Conversion Motion. Additionally, the Disclosure Statement fails to provide any

11

information about anticipated Chapter 11 administrative expenses, or if there will be sufficient funding to pay both Chapter 7 and 11 administrative claims in full, as contemplated under the Plan. The Disclosure Statements provides no liquidation analysis. Apart from repeating the conclusory statement that the plan "*should* provide greater recoveries than those available in a Chapter 7 Liquidation," the disclosure statement merely suggests that "other alternatives would involve delay, uncertainty, and substantial administrative costs." *Id.* (emphasis added). However, the Disclosure Statement provides no explanation or analysis regarding why continuing in Chapter 7 creates "delay, uncertainty, and substantial administrative costs" or why any of these would be greater than under the Plan in Chapter 11.

27. The failure to include a liquidation analysis means that the Disclosure Statement does not provide adequate information under Bankruptcy Code section 1125 and cannot be approved. *See, e.g., In re Divine Ripe, L.L.C.,* 554 B.R. 395, 401, 406 (Bankr. S.D. Tex. 2016) (to provide adequate information a disclosure statement must provide the estimated return to creditors under a Chapter 7 liquidation).

28. The RSA, likewise, provides no mention of a CRO. More importantly, the RSA does not align with the proposed Plan. For example, the proposed treatment of general unsecured creditors in the RSA is completely different from the treatment proposed in the Plan.

29. The treatment for general unsecured claims in the RSA provides:

| *General Unsecured Claims* | <ul><li>GUC Election of Treatment: Provided that the GUCs vote to accept the Plan, the GUCs may make an election of one of the following treatments:<br>(A) An amount equal to 2 times the amount distributable to GUCs if the Bidding Procedures consummated a sale pursuant to the minimum bid thresholds, *or*<br>(B) *Pro rata* beneficial interest in the Litigation Trust<ul><li>Claims satisfied by beneficial interests in the Litigation Trust to accrue interest at a rate of 8%</li></ul></li><li>If the GUC class votes to reject the Plan, GUCs shall receive *pro rata* beneficial interests in the Litigation Trust</li></ul> |
|---|---|

12

*See* ECF No. 275-1, p. 3 of 34.

30. The treatment for general unsecured claims in the Plan provides:

> 5.6  **Class 6: GUC Claims.** Holders of Allowed GUC Claims in excess of $20,000 shall receive a Pro Rata share of the GUC Cash Pool after payment of Allowed Class 5 Claims and a Pro Rata share of the Trust Interests in satisfaction of their Claims entitling them to receive their Pro Rata share of the distributions to holders of Trust Interests after payment of Claims in Classes 1-5.

*See* ECF No. 275-2, p. 13 of 27, § 5.4.

31. The RSA is completely misleading as to the treatment of general unsecured creditors in the proposed Plan.

***The Trustee is an Independent***
***Fiduciary, Mr. Neugebauer is Not***

32. The Chapter 7 case is being run by Scott Seidel, an independent fiduciary appointed pursuant to the Bankruptcy Code and the Office of the United States Trustee.

33. Mr. Neugebauer is seeking conversion to Chapter 11 for the sole purpose of placing Mr. Neugebauer in charge of the Debtor's estate. JIG has previously detailed Mr. Neugebauer's wrongdoing and mismanagement of the Debtor's prepetition affairs. *See* ECF No. 251 (JIG's *Supplemental Objection to Trustee's Motion for Approval of Compromise and Settlement Agreement with Collateral Agent and Mr. Neugebauer Parties and Related Relief*).

34. Given Mr. Neugebauer prepetition, postpetition and ongoing conduct, Mr. Neugebauer should not be placed in control of the Debtor's bankruptcy estate.

***The JIG 9019/Sale Is the Highest and***
***Best Offer Provided to the Trustee***

35. Pending before the Court for approval is the JIG 9019/Sale. The JIG 9019/Sale presents the highest and best offer presented to the Trustee. No other entity has provided a higher or better offer to the Trustee despite multiple opportunities and deadlines to do so. It is time to

move forward with the highest and best offer provided to the Trustee, the JIG 9019/Sale, and stop Mr. Neugebauer's repeated attempts to derail this Chapter 7 case.

## CONCLUSION

36. In response to the Trustee's Adversary Proceeding and the fact that the Trustee has determined that settling with Mr. Neugebauer is not in the best interests of the Debtor's estate, the Debtor (controlled by Mr. Neugebauer) is attempting to remove an independent fiduciary by converting the Debtor's case to Chapter 11. There is no good faith basis to convert the Debtor's Chapter 7 case. The Debtor has not been operational since November 2022. The Debtor's assets consist of little more than litigation claims. The Chapter 7 trustee, acting as a fiduciary for the estate and its creditors, is the best party to entrust with the estate's assets.

**WHEREFORE**, the Court should deny the Amended Conversion Motion and grant such other relief as is just and proper.

Dated: September 18, 2024

By: *Paul M. Rosenblatt*
**KILPATRICK TOWNSEND & STOCKTON LLP**
Paul M. Rosenblatt, Esq.
Northern District of Texas Bar No. 614522GA
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309-4528
-and-
2001 Ross Avenue
Suite 4400
Dallas, TX USA 75201
Telephone: (404) 815-6321
Facsimile: (404) 541-3373
Email: prosenblatt@kilpatricktownsend.com

*Counsel to Jackson Investment Group, LLC*

## **CERTIFICATE OF SERVICE**

    I hereby certify that on this 18th day of September, 2024, a true and correct copy of the foregoing was served by electronic transmission upon all parties eligible to receive service through this Court's CM/ECF system.

                                          */s/ Paul M. Rosenblatt*
                                          Paul M. Rosenblatt