| | |
|---|---|
| **From:** | Keri Findley |
| **Sent:** | Tuesday, November 30, 2021 8:44 AM CST |
| **To:** | William Izlar |
| **CC:** | Toby Neugebauer; Kylie Crawford |
| **Subject:** | Re: [External] introduction - Keri F and Toby N |
| **Attachments:** | scan_glorifi.pdf |

Hi Guys, I just realized I forgot to send this back. Really great meeting you yesterday and happy to help to make this a success. We should start a working group on the projects I can help on. Let me know when you want to get started

Keri

On Sat, Nov 13, 2021 at 4:17 PM William Izlar <william@withpurpose.com> wrote:

Keri,

Please find the NDA attached here. Let us know if you have any questions, otherwise we'll be on the lookout for an executed version.

Thanks,
William

William Izlar
Finance and Accounting
404-372-3299
william@withpurpose.com

-----Original Message-----
From: Toby Neugebauer <toby@doradocp.com>
Sent: Saturday, November 13, 2021 3:08 PM
To: Keri Findley <keri.findley@gmail.com>; William Izlar <william@withpurpose.com>
Cc: Kylie Crawford <kylie@doradocp.com>
Subject: Re: [External] introduction - Keri F and Toby N

EXHIBIT
225

Cell number 512 289 3106
William send Keri and NDA

EXHIBIT
4

Sent from my iPad

> On Nov 13, 2021, at 3:07 PM, Keri Findley <https://urldefense.proofpoint.com/v2/url?u=http-3A__keri.findley-40gmail.com&d=DwIGaQ&c=euGZstcaTDllvimEN8b7jXrwqOf-v5A_CdpgnVfiiMM&r=Mdd_jiXNXdVzL6AzqLcv0KLyD78TSUPqylhMOhGZ4E0&m=GOYJ_ZcfUn4_teA0WoN_S0AK7S_oNoDI2FMqF5bYgzk&s=vxokWTkcQMPbphF47Sb7clnAw

b_HbcQD6Vv_C4z03yM&e=> wrote:
>
> Hey Toby,
> I asked Kylie for your cell but never heard back. Sorry for the delay, but can you please send through when you have minute? Thanks
>
> Keri
>
> Sent from my iPhone
>
>> On Nov 9, 2021, at 2:20 PM, Keri Findley
<https://urldefense.proofpoint.com/v2/url?u=http-3A__keri.findley-40gmail.com&d=DwIGaQ&c=euGZstcaTDllvimEN8b7jXrwqOf-v5A_CdpgnVfiiMM&r=Mdd_jiXNXdVzL6AzqLcv0KLyD78TSUPqylhMOhGZ4E0&m=GOYJ_ZcfUn4_teA0WoN_S0AK7S_oNoDI2FMqF5bYgzk&s=vxokWTkcQMPbphF47Sb7clnAwb_HbcQD6Vv_C4z03yM&e=> wrote:
>>
>> I do! But more than once have had a Texan use EST as their default time so I always ask now so I don't schedule it for the wrong time.
>>
>> Talk to you tomorrow at 230 cst. Looking forward
>>
>> Sent from my iPhone
>>
>>>> On Nov 9, 2021, at 3:05 PM, Toby Neugebauer <toby@doradocp.com> wrote:
>>>
>>> Cst
>>> I thought you lived in austin
>>>
>>> Sent from my iPad
>>>
>>>>> On Nov 9, 2021, at 11:50 AM, Keri Findley
<https://urldefense.proofpoint.com/v2/url?u=http-3A__keri.findley-40gmail.com&d=DwIGaQ&c=euGZstcaTDllvimEN8b7jXrwqOf-v5A_CdpgnVfiiMM&r=Mdd_jiXNXdVzL6AzqLcv0KLyD78TSUPqylhMOhGZ4E0&m=GOYJ_ZcfUn4_teA0WoN_S0AK7S_oNoDI2FMqF5bYgzk&s=vxokWTkcQMPbphF47Sb7clnAwb_HbcQD6Vv_C4z03yM&e=> wrote:
>>>>
>>>> Which time zone are you?
>>>>
>>>> Sent from my iPhone
>>>>
>>>>>> On Nov 9, 2021, at 2:40 PM, Toby Neugebauer <toby@doradocp.com> wrote:
>>>>>
>>>>> Tommorow at 230
>>>>>

>>>>> Sent from my iPad
>>>>>
>>>>>>> On Nov 9, 2021, at 11:39 AM, Keri Findley
<https://urldefense.proofpoint.com/v2/url?u=http-3A__keri.findley-40gmail.com&d=DwIGaQ&c=euGZstcaTDllvimEN8b7jXrwqOf-v5A_CdpgnVfiiMM&r=Mdd_jiXNXdVzL6AzqLcv0KLyD78TSUPqylhMOhGZ4E0&m=GOYJ_ZcfUn4_teA0WoN_S0AK7S_oNoDI2FMqF5bYgzk&s=vxokWTkcQMPbphF47Sb7clnAwb_HbcQD6Vv_C4z03yM&e=> wrote:
>>>>>>
>>>>>> Hi Toby,
>>>>>> Look forward to connecting. When works for you?
>>>>>>
>>>>>> Keri
>>>>>>
>>>>>> Sent from my iPhone
>>>>>>
>>>>>>>> On Nov 8, 2021, at 9:00 AM, Joe Lonsdale <joe@8vc.com> wrote:
>>>>>>>
>>>>>>>
>>>>>>> Toby - please meet Keri as discussed and get her perspective on what you are building! I hope she might be helpful and think you'll both enjoy meeting.
>>>>>>>
>>>>>>> Best
>>>>>>>
>>>>>>> Joe

The information in this email is confidential and may be legally privileged. It is intended solely for the addressee. Access to this email by anyone else is unauthorized. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance on it, is prohibited and may be unlawful.
The information in this email is confidential and may be legally privileged. It is intended solely for the addressee. Access to this email by anyone else is unauthorized. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance on it, is prohibited and may be unlawful.

# MUTUAL CONFIDENTIALITY AGREEMENT

THIS MUTUAL CONFIDENTIALITY AGREEMENT (this "Agreement") is made as of Nov 30, 2021 (the "Effective Date"), by and between With Purpose, Inc., a Delaware corporation, and Ken Findley. The parties are collectively referred to herein as the "Parties."

1. Purpose. The purpose of this Agreement is to set forth the rights and obligations of the Parties with respect to the use, handling, protection, and safeguarding of Confidential Information (as defined below) which is and/or has been disclosed between the Parties in connection with a proposed business relationship between the Parties (the "Proposed Transaction").

2. Confidential Information.

(a) "Confidential Information" includes all proprietary or confidential information or material disclosed by one Party (in each such instance, the "Disclosing Party") to the other Party (in each such instance, the "Receiving Party") that has or could reasonably be expected to have commercial value in the business in which the Disclosing Party is engaged, in each case as disclosed by or on behalf of the Receiving Party to the Disclosing Party or one or more of its employees, affiliates, agents or legal or financial advisors (collectively, "Representatives"), including all notes, analyses, compilations, reports, forecasts, studies, samples, data, statistics, summaries, interpretations and other materials ("Notes") prepared by or for the Receiving Party or its Representatives that contain, are based on, or otherwise reflect or are derived from, in whole or in part, any of the foregoing regardless of the presence or absence of any stamp or other designation of confidentiality accompanying such information. All Confidential Information which may have been disclosed or provided by a Party to the other Party prior to the date of this Agreement shall be governed by the terms contained herein.

(b) Notwithstanding the foregoing, Confidential Information shall not include information that:

(i) was in the public domain or generally available to the public at the time it was communicated to the Receiving Party or its Representatives;

(ii) entered the public domain or became generally available to the public subsequent to the time it was communicated to the Receiving Party or its Representatives through no breach by the Receiving Party or its Representatives of this Agreement;

(iii) was known by the Receiving Party before receipt from the Disclosing Party;

(iv) was developed by the Receiving Party or its Representatives independently of and without violating the terms of this Agreement; or

(v) was or becomes available to the Receiving Party or its Representatives on a non-confidential basis from a third party.

3. Confidentiality and Non-Disclosure Obligations. Each of the Parties agrees that it and its Representatives will use any Confidential Information received from or on behalf of the other Party solely in connection with the matters discussed between the Parties and that such Confidential Information will be kept confidential, and that, except as otherwise required by law, regulation, or legal process, the Receiving Party will not disclose, divulge or communicate any of the Confidential Information of the Disclosing Party to any person, firm or entity, in any manner whatsoever, without the prior written consent of the Disclosing Party; provided that, notwithstanding the foregoing, the Receiving Party is permitted to transmit such Confidential Information to each of its Representatives (a) who it reasonably deems needs to know the Confidential Information to assist in the discussions between the Parties regarding the Proposed Transaction, and (b) who is informed of the terms of this Agreement that are applicable to such Representative. The Receiving Party shall be responsible for any breach of the terms of this Agreement applicable to its Representatives by its Representatives.

4. Permissible Disclosures. In the event that the Receiving Party, or its Representatives, receives a request or is required by law, regulation, or legal process to disclose all or any part of the Confidential Information of the Disclosing Party under the terms of a subpoena or order issued by a court or by a governmental body, or by law, rule, regulation, legal process (including, without limitation, deposition, interrogatory, request for documents, civil investigative demand, and any judicial, administrative or similar process), the Receiving Party and its Representatives shall be permitted to disclose such information without liability hereunder. In such event, the Receiving Party agrees (a) to, if legally permissible and reasonably practicable, notify the Disclosing Party promptly of the existence, terms, and circumstances surrounding such request, and (b) if disclosure of such Confidential Information is required, the Receiving Party or its Representatives will furnish only such portion of the Confidential Information as, in the opinion of counsel to the Receiving Party (or to its Representatives, as the case may be), the Receiving Party or its Representatives is legally compelled or required to disclose and will exercise its commercially reasonable efforts to obtain an order or other reliable assurance that confidential treatment will be accorded to the disclosed Confidential Information. Notwithstanding anything to the contrary contained herein, the Receiving Party or its Representatives will be permitted to disclose the Confidential Information of the Disclosing Party or any portion thereof upon the routine request of any government or regulatory body having or claiming to have authority to regulate or oversee any aspect of such Party's business or that of its affiliates, provided that such Party shall advise them of the confidential nature of such information and request confidential treatment of such information.

5. Disclosures of this Agreement. Each of the Parties agrees that he, she or it will not disclose to any person the existence of this Agreement, the potential or actual terms of any other agreement between the Parties or the fact that the Parties are engaged in discussions except to the extent required by law, rule or legal process or except to the extent subsequently agreed in writing by the Parties.

6. Return or Destruction of Confidential Information. At any time during or after the term of this Agreement, at the Disclosing Party's written request, the Receiving Party and its Representatives shall promptly return to the Disclosing Party all copies, whether in written, electronic or other form or media, of the Disclosing Party's Confidential Information, or destroy all such copies and certify in writing to the Disclosing Party that such Confidential Information has been destroyed. In addition, the Receiving Party shall also destroy all copies of any Notes created by or on behalf of the Receiving Party or its Representatives and certify in writing to the Disclosing Party that such copies have been destroyed. Notwithstanding the foregoing, the Receiving Party and its Representatives may retain Confidential Information in archived computer system backups in accordance with security or records retention policies, provided such information will continue to be protected under the confidentiality and use requirements contained in this Agreement.

7. Term. This Agreement, and all rights and obligations hereunder, shall terminate two years from the date hereof, except for Confidential Information that properly meets the definition of "trade secrets" thereunder which shall survive at all times that the definition is applicable.

8. No Representations or Warranties. Each Party makes no representation or warranty (express or implied) as to the accuracy or completeness of its Confidential Information. No Disclosing Party nor any of such Disclosing Party's Representatives shall be liable to any Receiving Party or any of such Receiving Party's Representatives relating to or resulting from such Receiving Party's or its Representatives' use of any of the Confidential Information or any errors therein or omissions therefrom.

9. No Transfer of Rights, Title or Interest. Each Party retains its entire right, title and interest, including all intellectual property rights, in and to all of its Confidential Information. Any disclosure or use of such Confidential Information hereunder shall not be construed as an assignment, grant, option, license or other transfer of any such right, title or interest whatsoever to any Receiving Party or any of such Receiving Party's Representatives.

10. No Other Obligation. The Parties agree that no Party shall be under any legal obligation of any kind whatsoever, or shall be otherwise obligated to enter into any business or contractual relationship, investment, or transaction, by virtue of this Agreement, except for the matters specifically agreed to herein. Any

Party may at any time, in its sole discretion with or without cause, terminate any and all discussions with the other Party.

11. Governing Law; Jurisdiction and Venue. This Agreement, for all purposes, shall be construed in accordance with the laws of Texas without regard to conflicts-of-law principles. Any action or proceeding by either Party to enforce this Agreement shall be brought only in any state or federal court located in the state of Texas, county of Dallas. The Parties hereby irrevocably submit to the exclusive jurisdiction of such courts and waive the defense of inconvenient forum to the maintenance of any such action or proceeding in such venue.

12. Remedies. The Parties agree that, in the event of any breach of the provisions of this Agreement, the non-breaching Party shall be entitled to seek equitable relief, including in the form of injunctions and orders for specific performance, in addition to all other remedies available to such Party at law or in equity. In any action or proceeding arising out of this Agreement, if a court of competent jurisdiction issues a final, non-appealable judgment, the prevailing Party will be entitled to recover all reasonable costs and reasonable attorneys' fees in obtaining such judgment.

13. No Modification; Waiver. No change, modification or alteration of this Agreement shall be valid unless the same is specified in writing and signed by all Parties. The failure of either Party at any time to enforce any right or remedy available to it under this Agreement or otherwise with respect to any breach or failure by the other Party shall not be construed to be a waiver of such right or remedy with respect to any other breach or failure by the other Party.

14. Construction; Severability. Notwithstanding any provision in this Agreement to the contrary, the parties agree that this Agreement shall be interpreted without giving effect to any principle of construction that would otherwise require this Agreement to be construed against a Party that drafted it solely because such Party drafted this Agreement. If any provision of this Agreement is inconsistent or contrary to any applicable law, rule or regulation, then said provisions shall be deemed to be modified to the extent required to comply with said law, rule or regulation and as so modified, said provision and this Agreement shall continue in full force and effect.

15. Successors; Assignment; No Joint Venture. This Agreement shall be binding upon the successors, executors, heirs, representatives, administrators and assigns of the Parties, but neither of the Parties shall assign this Agreement without the prior written consent of the other Party. This Agreement will not create a joint venture, partnership or other formal business relationship or entity of any kind, or an obligation to form any such relationship or entity. Each party will act as an independent contractor and not as an agent of the other party for any purpose, and neither will have the authority to bind the other.

16. Entire Agreement. This Agreement constitutes the entire agreement between the parties in regard to the confidentiality of matters disclosed pursuant to this Agreement, supersedes any prior oral or written representations in regard to said matters and may not be modified, except in writing, signed by all parties hereto. It is understood that the terms of access to Confidential Information contained in any data room or website, if any, shall be treated consistently with the understandings and agreements contained herein.

17. Notices. Any notice under this Agreement will be in writing and will be deemed to have been duly given when delivered personally, when sent via email or three (3) days after such notice is deposited in the United States mail, registered, postage prepaid, and addressed to each Party at such Party's address shown on the signature page to this Agreement.

18. Counterparts; Electronic Delivery. This Agreement may be executed in two or more identical counterparts, each of which shall be deemed to be an original and all of which taken together shall be deemed to constitute the Agreement when a duly authorized representative of each Party has signed a counterpart. The Parties intend to sign and deliver this Agreement by electronic transmission. Each Party agrees that the delivery of the Agreement by electronic transmission shall have the same force and effect as delivery of original signatures.

[*Signature page follows*]

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the date first written above.

**With Purpose, Inc.**

By: ______________________________
Name:
Title:

Address:

Email:

[~~ENTITY~~ NAME] Individual

By: Keri Fin______________________
Name: Keri Findley
Title: Individual

Address: 2505 Pecos St
Austin TX 78703

Email: Keri.Findley@gmail.com