*HIGHLY CONFIDENTIAL*

# PRIVATE CONVERTIBLE NOTE TERM SHEET

March ~~APRIL~~ 31, 2022

*This Non-Binding Term Sheet (the "Term Sheet") sets forth proposed terms of a private placement of convertible debt by With Purpose, Inc. d/b/a GloriFi, Inc. (the "Company") and certain qualified purchasers (the "Transaction"). This Term Sheet is solely for discussion purposes and does not create a binding obligation on any party to consummate or negotiate the contemplated transactions, and any such obligation will be created only by the execution and delivery of the definitive agreements, the provisions of which will supersede this Term Sheet and all other understandings between the parties. Without limiting the generality of the foregoing, all terms and conditions contained in this Term Sheet are subject to further refinement and detail as the parties shall mutually agree, as shall be set forth in the definitive agreements. The Term Sheet does constitute or form part of any binding obligation to buy or sell any interests in the Company, nor shall it or any part of it or the fact of its distribution form the basis of, or be relied on in connection with, any contract or commitment or investment decisions relating thereto, nor does it constitute a recommendation regarding the interests in the Company.*

| | |
|---|---|
| **Transaction** | The placement by the Company of at least $40.0 million of convertible notes, with a target of $75.0 million and a maximum of $100.0 million |
| **Issuer** | With Purpose, Inc. d/b/a GloriFi, Inc. (the "Company"). |
| **Size of the Offering** | At least $40.0 million |
| **Use of Proceeds** | General corporate purposes including hiring, software and product development, startup development, as well as professional and advisory fees and expenses, amongst various other costs. |
| **Structure** | Convertible promissory notes ("Convertible Notes") which represent unsecured general obligations of the Company on a junior subordinated basis to any Senior Debt. |
| **Interest Rate** | 7.0% paid in-kind, accrued on an annual basis (365-day basis). |
| **Conversion** | The Convertible Notes are convertible upon issuance of the next round of common stock issued by the Company in an equity financing in which the Company raises at least $5.0 million (excluding debt that is converting to preferred stock or common stock) which closes before the Maturity Date (as defined below), at the lower of (i) a 20% discount to the lowest price per share paid by investors purchasing the Equity securities, or (ii) the price per share determined by reference to the Valuation Cap, on a fully-diluted basis (but not considering the conversion of this note and other similar notes). |
| **Valuation Cap** | Initially, the Valuation Cap shall be set at $750 million total enterprise value, on a fully diluted "pre-money" basis. If the Convertible Notes remain outstanding after the first anniversary of the closing of the Transaction, then the Valuation Cap shall be reduced to $375 million. |
| **Automatic Conversion** | In the event the Company issues and sells any Equity Securities (as defined below) with an aggregate gross sales price of not less than $[50].0 million (excluding the amount of any Notes (or other debt of the Company) that are converted into the Equity Securities) to investors prior to the repayment or conversion of these Notes (a "Qualified Financing"), then the entire outstanding principal amount of the Notes, together with all accrued and unpaid interest thereon, shall automatically convert without any further action by the Holder upon the closing of such Qualified Financing, into Equity Securities of the same class and/or series issued by the Company in the Qualified Financing. "Equity Securities" shall be defined as |



EXHIBIT
232

EXHIBIT
34

| | |
|---|---|
| | common stock interests or preferred stock interests of the Company. |
| **Maturity Date** | The entire outstanding principal amount of the Convertible Notes, together with all accrued and unpaid interest thereon, shall become immediately due and payable upon demand made in writing by each holder of Convertible Notes to the Company any time upon or after 60 months following the closing of the Transaction. |
| **Prepayment Upon a Sale Transaction** | Unless previously converted as provided for in the indenture, the Company shall prepay the entire outstanding principal amount of the Convertible Notes, plus all accrued and unpaid interest thereon, upon the occurrence of a Sale Transaction occurring prior to the Maturity Date. |
| **No Optional Prepayment** | The Company shall not be entitled to prepay the Convertible Notes, in whole or in part, prior to the Maturity Date, except as specifically permitted in the event of a Sale Transaction. |
| **Investor Suitability** | This instrument and any securities issuable pursuant hereto have not been registered under the Securities Act of 1933, as amended (the "Securities Act"), or under the securities laws of certain states. These securities may not be offered, sold or otherwise transferred, pledged or hypothecated except as permitted in the final documentation memorializing the transaction and under the act and applicable state securities laws pursuant to an effective registration statement or an exemption therefrom.<br><br>The Investor is an accredited investor as such term is defined in Rule 501 of Regulation D under the Securities Act, and acknowledges and agrees that if not an accredited investor at the time of the transaction, the Company may void the purchase transaction and return the amount funded by the investor in cash. The Investor has been advised that the Convertible Notes and the underlying securities have not been and will not be registered under the Securities Act, or any state securities laws and, therefore, cannot be resold unless they are registered under the Securities Act and applicable state securities laws or unless an exemption from such registration requirements is available. The Investor is purchasing the Convertible Notes and the securities to be acquired by the Investor hereunder for its own account for investment, not as a nominee or agent, and not with a view to, or for resale in connection with, the distribution thereof, and the Investor has no present intention of selling, granting any participation in, or otherwise distributing the same. The Investor has such knowledge and experience in financial and business matters that the Investor is capable of evaluating the merits and risks of such investment, is able to incur a complete loss of such investment without impairing the Investor's financial condition and is able to bear the economic risk of such investment for an indefinite period of time. |
| **Amendments** | The Convertible Notes may be amended with the consent of the Company, the Administrative Agent, and holders holding a majority of the aggregate principal amount of the Convertible Notes then outstanding. |
| **Senior Debt** | Senior Debt shall include all obligations of the Company and its subsidiaries that is not expressly or contractually subordinated. for avoidance of doubt senior to series 1 Convert Notes |
| **Governance Provisions and Other Changes** | In connection with the closing the Convertible Notes financing, the existing Board of Directors of the Company shall implement the following changes:<br>i. the Company's bylaws and other related corporate documents shall be amended to appoint J. Nicholas Ayers' as a Director for a period of ~~two (2)~~ 1 year years, eliminating his lifetime Director appointment;<br>ii. the Company's bylaws and other related corporate documents shall be amended to appoint Toby R. Neugebauer as a Director for a period of two (2) years;<br>iii. the Board of Directors shall be reconstituted and composed of five ~~(5)~~ 7 members to include: |

– Board expanded to 7 people
– 2 Year Term
TRN JNA

| | |
|---|---|
| | a. Toby R. Neugebauer<br>b. Keri Findley<br>c. Vivek Ramaswamy<br>d. J. Nicholas Ayers<br>e. One nominee from a selection proposed by Christopher Gaertner and Thomas Morgan Jr.<br><br>iv. the Class B shares held by entities controlled by Mr. Neugebauer and his family and/or affiliates shall be converted into Class A shares, with no special voting rights nor super-majority voting privileges;<br><br>v. the letter of intent entered into by the Company and DHC Acquisition Corp. dated February 3, 2022, and extended on March 10, 2022 (the "LOI") shall be amended such that the commitments thereunder are contingent upon the closing of the Transaction;<br><br>vi. the closing of the Transaction shall be dependent upon the revised LOI being in effect;<br><br>vii. upon signing of this Term Sheet, the Board of Directors shall initiate a professional search effort to identify a new management team inclusive of a Chief Financial Officer, a General Counsel, a Chief Operating Officer, a Chief Executive Officer, and any other vacant positions the Board of Directors views necessary to support the activities of the Company (together the "Key New Managers");<br><br>viii. the Key New Managers shall each be approved and hired by a vote of the Board of Directors, whereby each Director receives a single vote. |

Toby Neugebauer CEO
Chris / Tom / Toby approve CFO / GC / COO
– Board members to be approved by ~~DH~~ Chris / Tom / Toby

TMT TRN



CONFIDENTIAL

WPI_Trustee_9019_01070477

The parties hereto hereby agree to the foregoing as of the date first written above.

**DHC Acquisition Corp.**

By: ______________________________
Name: ~~Christopher W. Gaertner~~ THOMAS MORGAN JR
Title: Co-Chief Executive Officer

**With Purpose, Inc.**

By: ______________________________
Name: Toby R. Neugebauer
Title: Chairman & Co-Founder