Frank J. Wright, Esq.
Texas Bar No. 22028800
Jeffery M. Veteto, Esq.
Texas Bar No. 24098548
Law Offices of Frank J. Wright, PLLC
1800 Valley View Lane, Suite 250
Farmers Branch, TX 75234
Telephone: (214) 935-9100
Email: frank@fjwright.law
      jeff@fjwright.law

**COUNSEL FOR THE DEBTOR**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| WITH PURPOSE, INC., | § | Case No.: 23-30246-mvl7 |
| | § | |
| DEBTOR. | § | Chapter 7 |
| | § | |

**DEBTOR'S AMENDED EMERGENCY MOTION TO COMPEL TRUSTEE
TO FILE COMPLAINTS TO PRESERVE CAUSES OF ACTION**

**TO THE HONORABLE PRESIDING JUDGE:**

Debtor **With Purpose, Inc.** (the "**Debtor**"), files this, its *Amended Emergency Motion to Compel Trustee to File Complaints to Preserve Causes of Action* ("**Amended Motion**"), seeking an order compelling Scott M. Seidel (the "**Trustee**"), the duly appointed chapter 7 trustee of the bankruptcy estate (the "**Estate**"), to file suit on causes of action before the potential expiration of their respective statutes of limitations. In support of the Motion, the Debtor would respectfully show as follows:

**I.
PRELIMINARY STATEMENT**

1. Debtor files this Amended Motion to address material developments that have occurred since the filing of the original Motion [Dkt. 394] on January 22, 2025, including the filing of

the *Memorandum Opinion Denying Conversion to Chapter 11 and Granting the Trustee's Compromise with Jackson Investment Group Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure* (the "**Memorandum Opinion**") [Dkt. 396] on January 22, 2025, the entry of the Order Denying Motion to Convert Case to Chapter 11 [Dkt. 398] on January 24, 2025, the entry of the Order Granting Trustee's Motion for Approval of Compromise and Settlement with, and Sale to, Jackson Investment Group, LLC [Dkt. 399] on January 24, 2025, and the Trustee's Objection to Motion to Compel Trustee to File Complaints [Dkt. 400] filed on January 24, 2025.

2. The Debtor, its Estate, and other parties are fast approaching the edge of a known cliff – but how it is traversed remains shrouded in clouds. On February 8, 2025, the two year extension of time for the Trustee to commence an action, provided by 11 U.S.C. § 108(a), expires as does the time for the commencement of any "action or proceeding under section 544, 545, 547, 548 [and] 553[.]" This bankruptcy case was filed nearly two years ago with the primary assets being causes of action; yet, to date the Trustee has not filed a single one other than the adversary proceeding with WPI Collateral Management, LLC (the "Collateral Agent") which is primarily over ownership of causes of action. Certainly, the issue of who has the right to proceed on all such actions became hotly contested in the bankruptcy case and in the adversary proceeding. Although the Court issued its Memorandum Opinion after the initial filing of this Motion, there is no indication that the underlying Jackson Agreement has actually closed and become effective, nor has there been a final ruling in the adversary proceeding regarding the ownership and control of the causes of actions, such that parties may directly preserve the actions against limitations and/or appeal the rulings.

3. As it stands now, it is still the Trustee's duty to preserve all causes of action he believes the Estate presently owns for the benefit of creditors; this undoubtedly included causes of action against Mr. Neugebauer and others that the Trustee has already indicated an intent to promptly proceed against. Until the Jackson Agreement is signed and the $6,100,000 is funded, the Trustee has

the ability and obligation to file the causes of action; in fact, it is in his best interest as a fiduciary, under the circumstances, to file the causes of action, especially the ones that he knows might otherwise not get timely filed.

4. The Trustee has not agreed to an express release of any party (although Debtor maintains that the Jackson Agreement includes disguised releases). Whether those causes of action are subsequently controlled by the Agent, are determined to be owned by another party, or ultimately remain with the Estate following reversal of the order denying conversion, it is imperative that the Trustee take immediate action to avoid the irreparable harm of limitations expiring. This case is unique in that a stay during the pendency of an appeal can not stay the statute of limitations from expiring so that causes of action would still be available to the Estate in the event an appellate court reverses this Court's order denying conversion.

5. The Debtor respectfully requests that the Court enter an order compelling the Trustee to file all known actions that would otherwise expire during the pendency of an appeal before February 8, 2025, to preserve the status quo.

## II.
## DEBTOR'S STANDING

6. The Trustee once again raises the issue of the Debtor's standing. The Trustee previously raised this issue at the commencement of the hearing on the Conversion Motion and the Jackson 9019 Motion and the Court ruled that the Debtor had standing as to both motions, particularly since they were being tried together.[1] The relief sought by this Motion is directly related to those motions and the Debtor's continuing rights therein as the Debtor prepares to appeal the Court's rulings. The Debtor acknowledges that the standing of a debtor-out-of-possession is limited; however, it would be improper to conclude that a debtor lacks standing to seek redress in contemplation of the

---

[1] "Conversion Motion" and "Jackson 9019 Motion" are defined later in this Motion.

**DEBTOR'S AMENDED EMERGENCY MOTION TO COMPEL TRUSTEE — PAGE 3 OF 15**

exercise of its appellate rights where it clearly had standing on the underlying motions. Seeking to compel action by the Trustee is the Debtor's only recourse in this Court to avoid the irreparable harm of losing causes of action forever; not even a stay pending appeal can stop the statutes of limitations from running.

7. The parties here, including the Trustee, acknowledge that the potential value of overall causes of action may be in the billions. [Dkt. 242-1, P. 15 (Jackson Agreement is "seeking to recover $4.95 billion for the Estate")]. This amount is magnitudes greater than the overall debt scheduled and the administrative expenses incurred thus far. [Dkt. 31; Dkt. 386]. And even the recent demand letter sent by the Trustee's counsel to a former director of the Debtor asserts a damage claim on behalf of the estate of $1.7 billion. A true and correct copy of the demand letter is attached as **Exhibit A**. A Chapter 7 debtor has standing with respect to a sale of assets or to otherwise participate in litigation surrounding assets of the estate "if there could be a surplus after all creditors' claims are paid." *Kahn v. Helvetia Asset Recovery, Inc.*, No. SA-14-CA-1109, 2015 U.S. Dist. LEXIS 172142, at *2-3 (W.D. Tex. 2015); *see also In re First Conn. Consulting Grp.*, 579 B.R. 673, 684 (Bankr. D. Conn. 2018). Under the terms of the Jackson Settlement, the Estate receives 80% of all recoveries in excess of $60 million. Therefore, the Debtor has independent standing due to the prospective surplus, in addition to continuing standing in relation to the Conversion Motion and Jackson 9019 Motion.

### III.

### PROCEDURAL BACKGROUND

8. On February 8, 2023 (the "**Petition Date**"), the Debtor filed its voluntary petition under Chapter 7 of the Title 11 of the United States Code ("**Bankruptcy Code**"). [Dkt. 1]. On March 8, 2023, the Debtor filed Schedules stating that it owned "significant and valuable causes of actions against third parties." [Dkt. 31]. Debtor identified a number of these causes of action therein, including

four pending JAMS Proceedings, with aggregate demands in excess of $145 million. *Id.* at Addendum P. 3.[2]

9. Beginning in November 29, 2023, the Trustee sought to sell Debtor's assets, including its causes of action. [Dkt. 151].[3] In the First Sale Motion, the Trustee represented to the Court that he:

> with the assistance of his counsel, has undertaken a review of hundreds of thousands of pages of discovery and Debtor materials and has identified potential claims and causes of action [ ] against many of those who were in positions of power or influence within the Debtor's organization. *Id.* at ¶ 8.

10. The Trustee further stated that he "had developed facts that likely support potential Causes of Action related to the demise of the Debtor against the 4 to 6 upper tier management and investor parties [ ] who were primarily involved in strategy and direction of the Debtor" and he was "aware of multiple credible allegations that fiduciary duties and contracts were breached as the Debtor faced multiple liquidity crises and as businesses once on the Debtor's Monopoly board appeared in the market – backed by those who had access to the Debtor's confidential information." [*Id.* at ¶ 9]. The Trustee reaffirmed these positions in an amended sale motion filed on April 10, 2024. [Dkt. 186].

11. Objections to the sale were filed [Dkt. 189, 191], but bid procedures were approved on May 17, 2024 [Dkt. 197]. The Trustee twice extended the bid deadline [Dkt. 212, 215] but canceled his sale hearing [Dkt. 214] and ultimately never accepted a bid thereunder.

A. **The Bankruptcy Motions**

12. On July 10, 2024, Debtor filed its *Motion to Convert Bankruptcy Case to Chapter 11 Pursuant to Section 706(a) of the Bankruptcy Code* [Dkt. 217] (the "**Conversion Motion**")[4]. On July 17, 2024, the

---

[2] To date the Trustee has not prosecuted the JAMS Proceedings.

[3] The "First Sale Motion" shall mean *Trustee's Motion for Entry of (I) an Order, (A) Approving Bid and Noticing Procedures, (B) Scheduling an Auction and Hearing, and (C) Granting Related Relief; and (II) an Order (A) Approving Sale of Debtor Assets Free and Clear of All Liens, Claims, Encumbrances and Interests, and (B) Granting Related Relief* [Dkt. 151]

[4] For definition purposes, "Conversion Motion" shall be construed to include the amended motion filed on August 26, 2024, at Docket No. 275.

**DEBTOR'S AMENDED EMERGENCY MOTION TO COMPEL TRUSTEE                                                     - PAGE 5 OF 15**

Trustee filed his *Motion for Approval of Compromise and Settlement under Bankruptcy Rule 9019 with the Collateral Agent and with Neugebauer Parties and for Approval of Postpetition Financing* [Dkt. 223] (the "**Collateral Agent 9019 Motion**"). Therein, the Trustee stated that:

> he and his professionals have undertaken a detailed and comprehensive analysis of the Debtor's books and records and potential causes of action owned by the Estate. In sum, the Trustee believes that colorable causes of action exist against everyone that the proverbial finger has been pointed at[.]
> *Id.* at ¶ 14.

13. On July 22, 2024, the Court entered its *Order Abating Lift Stay and Conversion Motions* [Dkt. 227] pending resolution of the Collateral Agent 9019 Motion. On July 30, 2024, the Trustee filed his *Motion for Emergency Status and Scheduling Conference Regarding Compromise or Sale of Estate Claims* [Dkt. 231] indicating an intent to abort the settlement with the Collateral Agent.

14. On August 12, 2024, the Trustee filed his *Motion for Approval of Compromise and Settlement under Bankruptcy Rule 9019 and Sale of Assets* (the "**Jackson 9019 Motion**") [Dkt. 258], thereby abandoning the Collateral Agent settlement in favor of a proposed agreement with Jackson Investment Group, LLC ("**JIG**") and its affiliate GloriFi Acquisitions, LLC, the agent under the certain Agreement with the Trustee (the "**Agent**"). On August 15, 2024, the Bankruptcy Court orally lifted the abatement and set both the Conversion Motion and Jackson 9019 Motion for trial at the same time. Discovery was conducted on an extremely expedited basis over a few weeks, which included numerous depositions and document production, but most potential defendants not already before the Bankruptcy Court objected to participating in discovery and failed to produce any documents.

15. The trial commenced on September 23, 2024, and continued over six days concluding on October 17, 2024. Not until December 6, 2024 – 50 days later – did the Bankruptcy Court issue an oral bench ruling on the eve of the adversary proceeding trial. The Bankruptcy Court indicated in its oral bench ruling an intent to deny the Conversion Motion and approve the Jackson 9019 Motion;

however, another 46 days elapsed before the Memorandum Opinion was issued on January 22, 2024 with the written orders on the Conversion Motion and the Jackson 9019 Motion following 2 days later.

### B. The Adversary Proceeding

16. On May 30, 2024, the Trustee initiated adversary proceeding *Scott M. Seidel v. Toby Neugebauer et al.*, Adversary Case No. 24-03038-mvl, before the Bankruptcy Court [Adv. Dkt. 1] (the "**Adversary Proceeding**"). The Trustee alleged causes of action including (i) declaratory judgment; (ii) permanent injunction; (iii) wrongful foreclosure related to the foreclosure and ownership of certain causes of action and rights against third parties, among other allegations. [Adv. Dkt. 44]. Defendants filed counterclaims for declaratory judgment and attorneys' fees. [Adv. Dkt. 49]. The Adversary Proceeding seeks to resolve the disputes concerning ownership of and security interests in various causes of action via the parties' claims for declaratory relief.

17. On June 18, 2024, the Bankruptcy Court issued its *Order for Temporary Injunction* [Adv. Dkt. 40], which enjoined certain parties from "prosecution of the DEGA Litigation" and from "any and all attempts to exercise control over, or sell or otherwise dispose of, any alleged collateral or other property that is, arguably, property of the Estate." By operation of its own terms, the Temporary Injunction was "effective immediately" and remains in place by oral order of the Court.

18. On November 20, 2024, Jackson Investment Group, LLC ("**JIG**") filed a *Complaint in Intervention* against WPI Collateral Management, LLC. [Adv. Dkt. 90].

19. Beginning December 9, 2024, the Bankruptcy Court held a multi-day trial in the Adversary Proceeding. Various parties filed post-trial briefs on January 6, 2025. [Adv. Dkt. 133-136]. No ruling has been issued in the Adversary Proceeding.

**C.   Demand on the Trustee**

20. On January 17, 2025, the Debtor and the Collateral Agent each made demands on the Trustee to file causes of action prior to the expiration of the Section 108 statute of limitations and the Section 546 statute of limitations on February 8, 2025. Some tort claims and breach of contract claims (which this Court commented were low-hanging fruit) may expire on February 8, 2025, given that the facts underlying many of the claims occurred beginning in early 2022. Accordingly, any claim with a one or two-year statute of limitations (for instance, defamation and fraud under both Georgia and Delaware law) may expire and claims with a three-year statute of limitations (for instance, breach of contract and breach of fiduciary duty under Delaware law) may expire when based on facts occurring prior to Feb. 8, 2022. Copies of the demand letters are attached as **Exhibit B** and **Exhibit C** hereto.

21. On January 20, 2025, the Trustee's counsel responded and refused to file the actions. A copy of the email of Trustee's counsel is attached as **Exhibit D** hereto.

22. The Trustee has been on notice of these causes of action for over a year and to this date has taken no action to preserve them and has now refused to take any such action.

## IV.
## ARGUMENTS & AUTHORITIES

23. Pursuant to 11 U.S.C. § 704(a), a chapter 7 trustee has a fiduciary duty to "collect and reduce to money the property of the estate for which such trustee serves" and to "be accountable for all property received[.]" "It is fundamental that a chapter 7 trustee's fiduciary duties are non-delegable." *In re LTHM Hous. - Operations, LLC*, No. 14-33899, 2014 Bankr. LEXIS 4894, at *8 (Bankr. S.D. Tex. 2014). "The trustee and only the trustee is ultimately responsible for the administration of the estate, including most significantly the safeguarding and responsible disposition of estate assets[.]" *Id.* at *9 (quoting *In re Guyana Dev. Corp.*, 201 B.R. 462, 476-77 (Bankr. S.D. Tex. 1996) (internal citation omitted)).

24. At present, the Trustee remains in full control and responsibility for all Estate property – including specifically all of the causes of action which have become the soul of this bankruptcy case.[5] Not even when the Jackson Agreement closes will the Trustee be legally divested of his duties under Section 704. The Court acknowledges as much in its Memorandum Opinion, stating "[n]othing prevents a trustee from partnering with an interested party toward estate recoveries, as part of his duty to maximize value for creditors, **so long as** the Trustee retains his own independent discretion and fiduciary relationship to the Court." [Dkt. 369, P. 60] (bolded emphasis in original). The Trustee's role to preserve Estate property is absolute regardless of the circumstances.

25. The Memorandum Opinion is unequivocal that the Trustee cannot abrogate his fiduciary duties:

> Given the sharing of the Trustee's privilege, the retention of counsel and the sharing of estate litigation proceeds, the Court finds this list of "Major Decisions" overly restrictive for a duly appointed estate fiduciary to the extent that such provision can be read to materially alter the Trustee's fiduciary duties to the estate or the duty of candor to the Court. **Should the Agent wish to prosecute jointly the Estate Causes of Action with the Trustee as the JPA provides, the Court expects and requires that the Trustee's discretion not be arbitrarily limited.** If the Agent wishes to sue "on behalf of" the Trustee, then the Trustee's judgment on material matters and litigation decisions should be reasonably sought and considered. Accordingly, as part of the approval of the Jackson Compromise, **the Court will order that the Trustee be *reasonably consulted* with respect to material decisions on whether to prosecute, not prosecute, negotiate, settle or otherwise dispose or not dispose of the Estate Causes of Action.** The Court is not giving the Trustee a veto right, but he is certainly entitled to a consultation right such that the Court can find solace that although an independent estate professional may not be steering the ship, he is effectively aware of what is going on in the captain's bridge. **Again, these are estate claims, and only the Trustee is the estate fiduciary.** [*Id.* at P. 62] (italicized emphasis in original; bolded emphasis added)

---

[5] "[T]he Court has described these motions as a 'battle for the soul of the case[.]'" [Dkt. 369, P. 18].

**DEBTOR'S AMENDED EMERGENCY MOTION TO COMPEL TRUSTEE** - **PAGE 9 OF 15**

26. The Trustee has acknowledged the existence of colorable and valuable causes of action on behalf of the Estate which include breach of contract and breach of fiduciary duty claims. [Dkt. 151, 186, 223, 258]. Specifically, the Trustee testified that the Estate has colorable claims against Kerri Findley, Joe Lonsdale, Joe Ricketts, Peter Thiel, and Vivek Ramaswamy. [October 16, 2024, Transcript, P. 214, L. 4-25; P. 215, L. 1]. The Court has also now found there are colorable claims. [Dkt. 369, P. 65]. Even recently, the Debtor learned of litigation on analogous facts involving some of the DEGA Defendants, which futher supports that the DEGA Defendants work together. A copy of that complaint is attached as **Exhibit E** hereto.[6] The Trustee is long-tenured and well-aware of the statutorily extended deadlines under Section 108 and 546.[7] The Trustee has an affirmative fiduciary duty to act reasonably to preserve these causes of action from expiration.

27. Extensive – and expensive litigation – transpired over the past six months concerning the ownership and control of these causes of action and rights. It is without question that there is substantial value here. Debtor sees no reasonable rationale for allowing any such actions to expire by

---

[6] Manuel "Manny" Rios is the lead defendant in this lawsuit. Ms. Findley acknowledged in her deposition that she had lent money to Mr. Rios after GloriFi, admittedly on a different matter, though as Debtor understands it Ms. Findley is similarly involved in this analogous litigation. *See* **Exhibit F**, Excerpt of the Deposition of Kerri Findley.

[7] TRUSTEE: "It's critically important, because now we're starting to run up on statute of limitations. The case is coming up on two years old." [October 16, 2024, Transcript, P. 86, L. 2-4]
. . .
MR. RUKAVINA: ". . .108 extends limitations for the estate by two years. Correct?"
TRUSTEE: "Correct." [*Id.* at P. 123, L. 16-18].
. . .
TRUSTEE: ". . . I think that you get timing issues with regard to these statute of limitations that are almost here." [*Id.* at P. 150, L. 20-22].
. . .
(Discussing theoretical reconversion to Chapter 7 "in six months") TRUSTEE: "Right. There'll be another half-million dollars [of admin claims]. And the statutes may have run." [*Id.* at P. 151, L. 15-17].
. . .
MR. WRIGHT: ". . . And the two-year statute of limitations will be coming upon on what, February 8?"
TRUSTEE: "That's my understanding, yes sir."
MR. WRIGHT: "Of this coming February, right?"
TRUSTEE: "Yes, sir." [*Id.* at P. 165, L. 2-6]
. . .
MR. WRIGHT: "And you'd have to come to court in time to beat out the statute of limitations, right?"
TRUSTEE: "Correct." [*Id.* at P. 211, L. 6-8].

---

limitations while parties still have appellate remedies to pursue. It would be a breach of those fiduciary duties for the Trustee to sit idly by, despite knowing that ownership of those causes of action remains contested via the adversary proceeding and an appeal might still overturn the orders resulting from the Memorandum Opinion. Where the costs to file the causes of action is exceedingly low – certainly in comparison to the legal fees and expenses incurred by the Trustee to this point – there can be no excuse to not file the causes of action now to preserve them from expiring.[8]

28. Before the Memorandum Opinion was issued, the Trustee took the position that "the Bankruptcy Court has already approved a joint prosecution agreement which empowers the Agent identified therein, and not the Trustee, with the power to intervene." *Id.* The substance of the Memorandum Opinion makes clear that the Jackson Agreement has not been approved as written. [Dkt. 369, P. 61-62]. The Memorandum Opinion approves the Jackson Agreement only with ordered revisions. *Id.* The Trustee was well aware of this even before the Memorandum Opinion, having filed now three extensions of the Jackson Agreement. [Dkt. 364, 387, 392]. There is nothing in the record to indicate whether the Jackson Agreement has, in fact, closed.

29. Pursuant to the terms of the Jackson Agreement – as reiterated within the extensions – the agreement is expressly subject to approval of the Bankruptcy Court:

> Non-Approval. In the event that the Agreement is not approved by the Bankruptcy Court on or before August 30, 2024, unless agreed to by the Parties: (a) nothing herein shall be deemed a representation or admission by any Party as to any issue, (b) this Agreement will be deemed null and void, including the validity of any and all instruments executed by any of the Parties for its performance and implementation prior to its approval and the Effective Date, and (c) the Parties shall be returned to the status quo each Party held prior to entry into this Agreement.
>
> Non-Occurrence of the Effective Date. In the event that the Approval Order has been entered, but the Effective Date shall not have occurred, then any Party may seek to enforce rights and obligations under this Agreement by seeking relief from the Bankruptcy Court, including relief for specific

---

[8] Even the necessary drafting has been completed in the form of a proposed complaint provided as an exhibit to the Conversion Motion. [Dkt. 275, Exhibit D].

performance of other Parties' obligations hereunder. If the Effective Date shall not have occurred by September 20, 2024, this Agreement shall be null and void unless otherwise extended in writing by the Parties. [Dkt. 242-1, ¶¶ 4-5].

30. The "non-approval" deadline and the "effective date" deadline have now been extended past the impending limitations deadline – to February 14, 2025, and February 28, 2025, respectively. [Dkt. 392, ¶ 2].

31. That said, "the obligations, representations and warranties" of the Jackson Agreement **do not become effective until the Trustee and Agent have signed the Joint Prosecution Agreement** and "the Bankruptcy Court has entered an order in the Debtor's Bankruptcy Case, in a form reasonably acceptable to the Parties, approving this Agreement and making findings of fact and conclusions of law to the extent required to give effect to this Agreement and such order has not been stayed, modified, or amended[.]" [Dkt. 242-1, ¶ 2] (bolded emphasis added).

32. By the terms of the existing Jackson Agreement, it is not effective until both the Trustee and Agent have signed off. The Trustee is not divested of any duties and responsibilities until that has occurred. Therefore, at present, the Jackson Agreement may remain of no force or effect and the Trustee may remain the only person vested with authority to assert the causes of action in question. The Trustee cannot guarantee that no causes of action will expire unless he acts.

33. One hallmark of the Jackson Agreement was the alleged lack of any express releases.[9] If the Trustee fails to act, deferring to a potentially yet-empowered Agent, the effect will certainly be uncompensated releases. Likewise, the Trustee's aggressive litigation strategy in the bankruptcy case and adversary proceeding would be illogical and would have been a waste of Estate funds if the Trustee were to now elect to allow even a portion of the causes of action to expire.

---

[9] In the hearings it was acknowledged that the Agent – controlled by Jackson – would not sue Jackson and that it was likely Nick Ayers and his affiliated entities, who supported the Jackson proposal via counsel who is now sought to be retained as special counsel, would not be sued as well.

34. Entry of the orders described by the Memorandum Opinion simply does not resolve the problem that limitations are about to expire.

35. Furthermore, it would be inequitable to allow limitations to expire on claims that the Debtor sought to bring upon conversion to Chapter 11 where an impediment to its appellate rights has been occasioned by the timing of the written order on the Conversion Motion. In the event the denial of the Conversion Motion is reversed on appeal, the Debtor's loss of causes of action to limitations would be irreparably harmful and the failure by the Trustee to protect the same causes of action under the unique circumstances herein would amount to a breach of his statutory duties.

36. Similarly, should the Jackson Agreement be closed following the written order, the Agent will have fifteen days or less to evaluate the otherwise privileged work product of the Trustee concerning the causes of action. [Dkt. 242-1, ¶ 26]. In consideration of what the Trustee has previously described as voluminous records and investigation, this is hardly sufficient time to make reasoned decisions on the numerous causes of action before they expire under the applicable statutes of limitation.

37. To be clear, the Debtor seeks relief under this Motion only as a means to preserve the status quo for a limited period of time. The Debtor is not requesting an order compelling the Trustee to actively prosecute these actions in the coming days; but instead, merely to file all actions – which the Trustee has acknowledged are "colorable causes of action" – to protect them from being barred by limitations.

38. The Debtor contends, at a minimum, that the Trustee should be compelled to file the proposed complaint attached to its Conversion Motion as Exhibit D. [Dkt. 275, Ex. D].

## V.
## CONCLUSION

39. For the reasons set forth above, the Debtor respectfully requests that the Court enter an order compelling the Trustee to file all causes of action it believes the Estate owns before February 8, 2025, including without limitation those in the proposed complaint attached to Debtor's Conversion Motion [Dkt. 275], and providing the Debtor such other and further relief to which they may be justly entitled.

DATED: January 27, 2025

Respectfully submitted,

**LAW OFFICES OF FRANK J. WRIGHT, PLLC**

By: */s/ Frank J. Wright*
Frank J. Wright
Texas Bar No. 22028800
Jeffery M. Veteto
Texas Bar No. 24098548

1800 Valley View Lane
Farmers Branch, TX 75234
Telephone: (214) 935-9100
Email: frank@fjwright.law
jeff@fjwright.law

**COUNSEL FOR WITH PURPOSE, INC.**

## CERTIFICATE OF CONFERENCE

I hereby certify that on January 17, 2025, Counsel for the Debtor sent via email a letter to Counsel for the Trustee and the Trustee, with its proposed special counsel copied, concerning the relief requested by the Motion. On January 20, 2025, Counsel for the Trustee responded via email, indicating that the Trustee would not take the actions sought by the Motion. Counsel for the Debtor understands the Trustee to be opposed to the relief sought by this Motion.

*/s/ Jeffery M. Veteto*
Jeffery M. Veteto

## CERTIFICATE OF SERVICE

  I hereby certify that on January 27, 2025, a true and correct copy of the foregoing document was served on all parties consenting to electronic service of this case *via* the Court's *ECF system* for the Northern District of Texas.

            */s/ Frank J. Wright*
            Frank J. Wright