***EXECUTION VERSION***

# AGREEMENT

This Agreement (this "Agreement") dated as of January 28, 2025 (the "Execution Date"), is made by and between **SCOTT M. SEIDEL** as the chapter 7 trustee of With Purpose, Inc. (the "Trustee") and **GLORIFI ACQUISITIONS, LLC** ("Agent"), who collectively are referred to herein as the "Parties" or in the singular case as a "Party).

## RECITALS

**WHEREAS**, on February 8, 2023 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 7 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court"), thereby initiating the bankruptcy case styled *In re With Purpose, Inc.*, Case No. 23-30246-mvl7 (the "Bankruptcy Case" and the estate thereof being referred to as "Estate");

**WHEREAS**, the Parties have agreed to settle the allowance of the proof of claim filed by Jackson Investment Group, LLC (Claim # 45) (the "Claim 45");

**WHEREAS**, as a result of the Parties' negotiations, and without admitting the validity of any allegations or any liability in respect thereto, the Parties have reached an agreement, the terms of which are set forth in this Agreement, providing for a settlement of the Claim 45, a sale of certain assets to Agent for $6 million to the Estate, and a sale of other assets to the Agent for $100,000 to the Estate, all on the terms set forth herein; and

**WHEREAS**, the Parties have determined that the terms of this Agreement are fair, reasonable, and adequate, and is in the best interest of the Parties and the Estate.

**NOW, THEREFORE**, in consideration of the foregoing recitals, and the terms, agreements, representation, and covenants set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

## AGREEMENT

## CONDITIONS PRECEDENT

1. Recitals. The recitals and prefatory phrases and paragraphs set forth above are incorporated in full and made part of this Agreement.

2. Effective Date. Unless otherwise stated, the obligations, representations and warranties stated in this Agreement shall become effective on the date upon which all of the following conditions precedent have occurred (the "Effective Date"):

(a) the Bankruptcy Court has entered an order in the Debtor's Bankruptcy Case, in a form reasonably acceptable to the Parties, approving this Agreement and making findings of fact and conclusions of law to the extent required to give effect to this

Agreement and such order has not been stayed, modified, or amended (the "Approval Order"), substantially in the form attached hereto as Exhibit A; and

(b) the Trustee and the Agent shall have executed a Joint Prosecution Agreement substantially in the form attached hereto as Exhibit B (the "JPA"), as well as the Ancillary Agreements as provided for in paragraph 42 below.

3. Appeals. In the event the Approval Order is stayed pending appeal, the Agent shall be under no obligation to fund the Payment.

4. Bankruptcy Court Approval. The Trustee shall file all appropriate motions, notices and proposed orders seeking Bankruptcy Court approval of this Agreement and entry of the Approval Order, subject to the Agent's approval as to form, such approval not to be unreasonably withheld.

5. Non-Approval. In the event the Agreement is not approved by the Bankruptcy Court on or before February 14, 2025, unless agreed to by the Parties: (a) nothing herein shall be deemed a representation or admission by any Party as to any issue, (b) this Agreement will be deemed null and void, including the validity of any and all instruments executed by any of the Parties for its performance and implementation prior to its approval and the Effective Date, and (c) the Parties shall be returned to the status quo each Party held prior to entry into this Agreement.

6. Non-Occurrence of the Effective Date. In the event that the Approval Order has been entered, but the Effective Date shall have not occurred, then any Party may seek to enforce rights and obligations under this Agreement by seeking relief from the Bankruptcy Court, including relief for specific performance of other Parties' obligations hereunder. If the Effective Date shall not have occurred by February 28, 2025, this Agreement shall be null and void unless otherwise extended in writing by the Parties.

7. Final Order. Waiver of the fourteen day stay shall be requested.

## DEFINITIONS

8. "Agent Expenses" are defined herein.

9. "Causes of Action" means any (a) claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, in tort, law, or equity, (b) all rights of setoff, counterclaim, or recoupment and claims on contracts or for breaches of duties imposed by law (c) the right to object to or otherwise contest claims or interests, (d) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (e) such claims and defenses as fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code.

10. "Encumbered Estate Causes of Action" means Causes of Action that are subject to a valid and perfected lien or security interest as of the Petition Date.

11. "Encumbered Net Proceeds" means the proceeds from Encumbered Estate Causes of Action, and the proceeds from any other asset of the Estate that is encumbered by a valid and perfected lien or security interest as of the Petition Date.

12. "Estate Causes of Action" means Causes of Action owned by the Estate.

13. "Gross Negligence" means a final determination by the Bankruptcy Court that the party has engaged in intentional wrongdoing or a knowing extreme departure from the care a reasonable person would exercise in similar circumstances.

14. "Special Counsel Fees" are defined herein.

15. "Unencumbered Estate Causes of Action" means (a) Estate Causes of Action pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code, (b) Estate Causes of Action for breach of fiduciary duty including similar and related claims, (c) Estate Causes of Action for malpractice, (d) Estate Causes of Action for commercial torts unless such commercial tort claim is determined by the Bankruptcy Court to be the subject of a valid and perfected lien or security interest as of the Petition Date, and (e) any other Estate Causes of Action that are not Encumbered Estate Causes of Action.

16. "Unencumbered Net Proceeds" shall mean: (a) the proceeds obtained from the Unencumbered Estate Causes of Action; (b) the proceeds from any other asset of the Estate that is not subject to a valid and perfected lien or security interest as of the Petition Date; and (c) any other amounts that the Estate is entitled to distribute to general unsecured creditors.

**PAYMENT**

17. Payment. The Agent shall provide to the Estate $6 million cash for what is referenced in paragraph 42(a) which amount shall constitute free and clear cash, free of all liens, claims and encumbrances of any kind or type (the "$6M Payment"). In addition, the Agent shall provide to the Estate $100,000 for what is referenced in paragraphs 42(b) and (c) which amount shall be held by the Trustee pending further order of the Court (collectively with the $6M Payment, the "Payment").

18. Deposit. Prior to the filing by the Trustee of a motion for approval of this Agreement, the Agent shall deposit the sum of $250,000 to be held in the Trustee's trust account as a credit to the $6M Payment, and will be paid to the Trustee if the Agreement closes or Agent fails to close pursuant to the terms of the Agreement following entry of the Approval Order, or returned to Agent if this Agreement does not close for any other reason.

19. Investing the $6M Payment. The $6M Payment shall be invested in a high yield savings, money market or similar high yield account. For the avoidance of doubt, the $6M payment may be used as stated in section 19 below subject to any appropriate Court orders and such consents as required in this Agreement at any time, with unused funds invested as stated in this section pending further use and distribution.

20. Use of $6M Payment. The $6M Payment shall be used only as follows, absent consent of Agent:

a) Special Counsel Expenses and Agent Expenses but not Special Counsel Fees.

b) Following the application and allowance of the administrative expense claims of professionals retained in the Bankruptcy Case, the Trustee shall be entitled to use such proceeds to satisfy such claims consistent with this Agreement and any applicable order of the Bankruptcy Court and, pursuant to appropriate process, the Trustee's commission.

c) Upon the conclusion of litigation of the Estate Causes of Action as solely determined by the Agent, the balance of the unused $6M Payment, the Estate's share of any Unencumbered Net Proceeds, and any other amounts the Estate is entitled to distribute subject to the terms of this Agreement, shall be distributed to creditors pursuant to the priorities set forth in the Bankruptcy Code.

**PROSECUTION OF CAUSES OF ACTION**

21. Agent Sole Authority. Subject only to the major decisions described below, Agent shall have sole authority to prosecute, not prosecute, negotiate, settle or otherwise dispose or not dispose of the Estate Causes of Action. No other party shall be entitled to assert any Estate Causes of Action, as such sole authority over Estate Causes of Action is vested in the Agent.

22. Claim Investigation. The Agent shall have sole authority to retain professionals to investigate the merits of asserting Estate Causes of Action.

23. Joint Prosecution Agreement. The Agent and the Trustee shall enter into the JPA substantially in the form attached hereto as Exhibit B. The JPA shall vest any and all discretion and authority to prosecute the Estate Causes of Action in the Agent; *provided, however*, that any settlement of an Estate Causes of Action in an amount of more than $5 million shall be subject to Bankruptcy Court approval, if required by the terms of such settlement. For the avoidance of doubt, the Trustee acknowledges that the Agent shall be empowered and entitled to bring suit for Estate Causes of Action in the name of and on behalf of Trustee and shall be further empowered to add the Trustee as a party to existing litigation or substitute the Trustee as a party to existing litigation. In the event the Agent is grossly negligent in the prosecution of Estate Causes of Action, the Trustee may seek relief from the Bankruptcy Court from this provision and the JPA. Major decisions require the Trustee's approval, which approval shall not be unreasonably withheld. Major decisions are limited to non-suiting, dismissing, or settling Estate Causes of Action; and notwithstanding anything herein to the contrary, the Agent shall at all times reasonably and timely consult with the Trustee with respect to material decisions regarding whether to prosecute Estate causes of action, not to prosecute them, negotiations regarding the same, and all issues related to potentially settling, abandoning, or otherwise disposing of Estate causes of action. For the avoidance of doubt, at a minimum, Agent shall file suit asserting breach of fiduciary duty claims against Toby Neugebauer; the failure to file such claims shall be deemed

gross negligence under this Agreement and shall constitute a default by Agent under this Agreement.

24. Notice and Indemnification. The Trustee and his counsel shall be kept apprised of all litigation of Estate Causes of Action and are entitled to advise, but not direct, the Agent's prosecution of any Estate Causes of Action. The Agent agrees to indemnify the Trustee and his counsel in the event any sanctions are entered against the same as a result of the Agent's actions, inactions, omissions, and the like in the prosecution of any litigation controlled by the Agent.

25. Special Litigation Counsel; Other Estate Professionals. The Trustee shall timely file an application (the "Employment App") in the Bankruptcy Court to employ special litigation counsel ("Special Counsel") to the Estate to pursue the Estate Causes of Action, such Special Counsel selected by Agent. The Trustee shall employ further other professionals to provide services to the Estate as may be reasonably requested by the Agent or Special Counsel, as selected by the Agent.

26. Privileges. The Parties agree to share work product, attorney/client and other privileges in furtherance of the JPA and the prosecution and defense of the matters currently pending or to be filed in the Bankruptcy Court, and with respect to related matters raised in any other jurisdiction, venue or proceeding.

## PENDING LITIGATION

27. Prosecution of Adversary Proceeding. The Trustee agrees that it will diligently prosecute the adversary proceeding, Adv. Pro. No. 24-03038-mvl, to completion including seeking to extend the temporary injunction established pursuant to that certain Order for Temporary Injunction [Adv. Proc. Docket No. 40] into a permanent injunction.

28. Objection to Pending Motions. The Trustee agrees that it will diligently object to the lift stay motions at Docket Nos. 199 and 201 and the conversion motion at Docket No. 217, and any additional motions or proceedings that are contrary to the purposes of this Agreement.

29. Joint Standing. The Trustee agrees that the Agent has joint standing to participate in the prosecution or defense, as applicable, of the above matters, and that in the event there is any dispute between the Agent and Trustee in the prosecution or defense, as applicable, of the above matters, the Agent shall assume the prosecution or defense, as applicable, of such matters.

30. Delaware Litigation. The Parties agree to seek a permanent stay or dismissal of the complaint filed in the United States District Court for the District of Delaware, thereby initiating Civil Proceeding 1:24-cv-00599. The Agent may add or substitute the Trustee as a plaintiff pursuant to the JPA in furtherance of this provision.

31. Georgia Litigation. The Parties agree to seek a permanent stay or dismissal of the complaint filed in the United States District Court for the Northern District of Georgia, thereby initiating Civil Proceeding 1:24-cv-02148. The Agent may add or substitute the Trustee as a plaintiff pursuant to the JPA in furtherance of this provision.

## SHARING OF UNENCUMBERED NET PROCEEDS

32. Sharing of Unencumbered Net Proceeds. In exchange for the consideration set forth in this Agreement, the Agent and the Trustee agree to the sharing of Unencumbered Net Proceeds. The Trustee shall make the distribution in accordance with the table below, after first accounting for any fees owed to Special Counsel.

| UNENCUMBERED NET PROCEEDS | AGENT | ESTATE |
|---|---|---|
| Up to Preference | 100% | 0% |
| Preference to $30M | 80% | 20% |
| $30M to $50M | 50% | 50% |
| $50M to $60M | 40% | 60% |
| Over $60M | 20% | 80% |

33. Preference. The Agent will receive a distribution preference in the amount of (i) $6 million, plus (ii) advanced Special Counsel Fees, plus (iii) 1% per month return on the outstanding balance of (i) and (ii), compounded monthly (collectively, the "Preference").

34. Litigation Fee and Expenses. Expenses and costs incurred by Special Counsel in pursuit of the litigation pursuant to the JPA shall be paid by the Estate ("Special Counsel Expenses"), including from the $6M Payment. "Special Counsel Fees" shall mean fees incurred by Special Counsel in pursuit of the litigation pursuant to the JPA, and fees, costs and expenses incurred by Agent's counsel in pursuit of the litigation pursuant to the JPA. Special Counsel Fees shall be paid from the Unencumbered Net Proceeds and not the $6M Payment. Agent is permitted to advance Special Counsel Fees, and any such amounts advanced by Agent shall be reimbursed to Agent from the Unencumbered Net Proceeds and not the $6M payment. The Agent is not responsible for any fees and expenses incurred by the Trustee, which fees and expenses shall be paid by the Estate, including from the $6M Payment.

35. Agent Expenses. The Trustee shall reimburse from the Estate the Agent's fees, costs and expenses incurred after the Effective Date related to Bankruptcy Court matters. The Agent shall periodically provide summary copies of invoices including aggregate amounts of fees, costs and expenses and total amount of time to the Trustee. The Trustee shall pay such invoices within thirty (30) days of receipt of such invoice. Invoices of professionals shall not be required to comply with the U.S. Trustee fee guidelines, nor shall such professional file fee applications. The Bankruptcy Court shall determine any dispute regarding an invoice if the Parties are unable to consensually resolve any dispute regarding fees.

36. Security Interests, Perfection and Priority. The obligations owing to Agent hereinunder shall be secured by (a) first priority lien and security interest in all of the Unencumbered Net Proceeds, and (b) a second priority lien and security interests in all of the Encumbered Net Proceeds. Such liens and security interests shall be deemed unavoidable, fully and properly perfected by this Agreement and the Approval Order.

37. Cash Collateral. The Trustee stipulates and agrees that all funds recovered from Estate Causes of Action shall constitute the Agent's cash collateral, subject to the terms of this Agreement and in accordance with the priorities set forth in the immediately preceding paragraph. Following the sharing under paragraph 32-33 of this Agreement, the Estate's share of

Unencumbered Net Proceeds will be deemed property of the Estate free and clear of any and all liens, claims and encumbrances.

38. Timing of Distributions. All distributions of Unencumbered Net Proceeds shall be paid within thirty (30) days of the Estate's receipt of Unencumbered Net Proceeds without further action or order of the Court. Except as otherwise provided in this Agreement, all distributions under this paragraph or otherwise shall be subject to the statutory Trustee fees.

39. Encumbered Net Proceeds. Encumbered Net Proceeds shall be held by the Trustee pending further order of the Court. All parties rights are preserved as to Encumbered Net Proceeds including the right to argue the proceeds are unencumbered, and to seek to surcharge the Encumbered Net Proceeds under 11 U.S.C. § 506(c).

## ALLOWANCE OF CLAIMS AND CLAIM OBJECTIONS

40. Claim 45 Allowance. Claim 45 shall be allowed on a final basis as a general unsecured claim in the amount of $10 million, and not be subject to any further objections or challenges of any kind.

41. Claim Objections. Pursuant to the JPA, the Agent and the Trustee shall jointly object to claims as appropriate. The Agent may unilaterally assert, file and prosecute claim objections and is authorized to do so without further order of the Court.

## PURCHASE OF ASSETS

42. Pursuant to 11 U.S.C. § 363, the Trustee shall sell, and the Agent shall purchase, free and clear of any and all liens, claims and encumbrances of any kind or type, the following assets:

a) The Debtor's and Estate's rights given to Agent hereunder and under the JPA;

b) the Debtor's and Estate's rights in the name "GloriFi"; and

c) the stock, shares, units or similar expression of equity ownership in each of the Debtor's subsidiaries.

The purchase of these assets shall be memorialized in separate agreements and assignments as are satisfactory to the Estate and the Agent (the "Ancillary Agreements").

## BREACH

43. The occurrence of one or more of the following shall constitute a material breach hereunder: (i) the invalidation or modification of the JPA, in each case, in any way, without the advanced written consent of the Agent; (ii) the removal of the Trustee as the chapter 7 trustee of

the Bankruptcy Case; (iii) the removal of any Special Counsel as counsel, unless by prior written consent of the Agent; (iv) a material breach of this Agreement or the JPA by the Trustee; (v) conversion of the Bankruptcy Case to any other chapter; or (vi) if the Approval Order shall be reversed, modified, or amended without the written consent of the Agent. Upon a material breach, the balance of the $6M Payment shall be immediately returned to the Agent, and the Agreement and JPA shall otherwise remain in full force. Upon a material breach of this Agreement or the JPA by the Agent, the Trustee may seek appropriate relief from the Bankruptcy Court.

## MISCELLANEOUS TERMS

44. Entire Understanding. This Agreement has been prepared after negotiations among the Parties and contains the entire understanding and agreement among the Parties with respect to the Claims, and any and all claims that have arisen or which could have arisen in connection with the Claims. No other representations, covenants, undertakings, or other prior or contemporaneous agreements, whether verbal or written, which are not specifically incorporated in this Agreement, shall be deemed in any way to exist or bind the Parties. The Parties acknowledge that no Party has executed this Agreement in reliance on any promise, representation, or warranty not expressly contained in this Agreement.

45. Confidentiality. Other than to the extent disclosed as may be necessary for enforcement of this Agreement or in seeking approval of this Agreement and the entry of the Approval Order or related orders, and except as may otherwise be agreed to by the Parties in writing or as required in the Debtor's Bankruptcy Case, the Parties agree to keep the terms of this Agreement confidential. The Parties also agree to keep any settlement discussions leading up to this Agreement confidential consistent with this paragraph.

46. No Assumed Liabilities. Notwithstanding anything to the contrary set forth herein, the Parties expressly acknowledge and agree that Agent will not assume, be obligated to pay, perform or otherwise discharge or in any other manner be liable or responsible for Liabilities of the Debtor or Estate, whether existing on date of the Approval order or arising thereafter, including on the basis of any law imposing successor liability, other than as expressly assumed hereunder and the obligations of Agent under this Agreement.

47. Attorneys' Fees and Costs. Unless otherwise provided in this Agreement, the Parties shall bear their own costs and attorneys' fees incurred in connection with the negotiation and consummation of this Agreement. Notwithstanding the foregoing, if any Party is required to enforce its rights under this Agreement, then the prevailing Party of any such action shall be entitled to its reasonable attorneys' fees and costs from the non-prevailing Party.

48. Capacity. By execution below, consistent with this Agreement, each Party agrees and affirmatively represents that it has the full capacity and authority to execute, perform, and be bound by each and every term of this Agreement.

49. Related Claims. If any action, claim or similar proceeding is filed or commenced in any court or tribunal asserting Estate Causes of Action or seeking relief in contravention of

this Agreement, the Parties shall cooperate in opposing such relief, and to seek dismissal, stay or withdrawal of such matter, including seeking relief from the Bankruptcy Court.

50. Rescission of Entire Agreement. In the event that the Bankruptcy Court or any other court of competent jurisdiction declares the Agreement, or any material provision of the Agreement, invalid or unenforceable, the entire Agreement will be deemed rescinded and void ab initio.

51. Ownership of Claims. The Trustee acknowledges by virtue of signing this Agreement that the Trustee is the lawful owner of all rights, title, and interest in and to the Estate Causes of Action, and that it has not heretofore assigned or transferred, or purported to assign or transfer, any of such claims, in whole or in part, to any other person or entity, and that it has the authority to enter into this Agreement and to bind each Party to its terms, subject to approval of the Bankruptcy Court.

52. Insurance. Any obligation of any insurer to pay any defense costs is not a condition to the effectiveness of this Agreement, and the insurer's failure to pay any defense costs shall not affect the force and validity of this Agreement, or any obligation of any insurer.

53. Notice to Parties. Unless otherwise agreed to in writing, all notices or communications under this Agreement by any Party to the other Party shall be in writing, sent via email, and mailed by certified mail, return-receipt requested, or by overnight courier with a parcel tracking system, to counsel for the Parties. Notices shall be deemed to have been given as of the date sent. Notice shall be sent as follows:

| | |
|---|---|
| To Trustee: | Scott Seidel, Trustee<br>6505 W. park Blvd. Ste. 306<br>Plano, Texas 75093<br>Email: scott@scottseidel.com |
| With copies, which shall not constitute notice, to: | Munch Hardt Kopf & Harr, P.C.<br>Attn: Davor Rukavina, Esq.<br>Attn: Thomas D. Berghman, Esq.<br>500 N. Akard Street, Suite 4000<br>Dallas, Texas 75201<br>Phone: 214-855-7500<br>Email: drukavina@munsch.com<br>Email: tberghman@munsch.com |

| | |
|---|---|
| To Glorifi Acquisitions, LLC: | Glorifi Acquisitions, LLC<br>2655 Northwinds Parkway<br>Alpharetta, Georgia 30009<br>Attn: Richard L. Jackson<br>Telecopy Number: 678-495-5356<br>Telephone Number: 770-643-5605<br>Email: rlj@jacksonhealthcare.com |
| With copies, which shall not constitute notice, to: | Kilpatrick Townsend & Stockton LLP<br>Attn: Paul M. Rosenblatt<br>1100 Peachtree Street NE<br>Suite 2800<br>Atlanta, GA 30309-4528<br>Email: PRosenblatt@ktslaw.com |

54. Execution in Counterparts. The Parties may execute this Agreement in counterpart originals in any number of actual, faxed, telecopied and/or PDF scanned counterparts. Each executed counterpart will be considered an original, and all of them together will constitute a singular Agreement. No counterpart shall be altered or interlined and all of them together shall constitute but one and the same instrument.

55. Governing Law. This Agreement will be interpreted and construed under the laws of the State of Texas, the Bankruptcy Code and Bankruptcy Rules, regardless of the domicile of any Party or conflict of laws principles, and will be deemed for such purposes to have been made, executed, and performed in the State of Texas.

56. Construction. This Agreement shall be construed as if the Parties jointly participated in the preparation of this Agreement and any uncertainty and/or ambiguity shall not be interpreted against any one Party.

57. Headings. The section titles, captions, and headings contained in this Agreement are inserted as a matter of convenience and for reference, and shall in no way be construed to define, limit, or extend the scope of this Agreement or the effect of any of its provisions.

58. Jurisdiction and Venue. The Bankruptcy Court shall retain jurisdiction to enforce the terms of this Agreement. Venue relating to this Agreement shall be proper in the Bankruptcy Court for the Northern District of Texas.

59. No Admission of Liability. Nothing in this Agreement shall be construed as an admission of liability or any agreement to subject a Party to the personal jurisdiction of any particular court, except and solely to the extent necessary to enforce or interpret this Agreement. The Parties' agreement to settle is made without admitting any claims or contentions of liability or defenses.

60. Binding on Successors, Assigns, and Others. This Agreement and the covenants and conditions it contains shall be jointly and severally binding upon the Parties and their

respective heirs, executors, administrators, conservators, plan administrators, agents, trustees, servants, employees, committees, beneficiaries, predecessors, successors (including any successor chapter 7 trustee), attorneys, insurers, transferees, and assigns.

61. Amendments and Waivers. Any amendment to this Agreement shall be in writing and shall conform to the same formalities as exhibited in this Agreement. No failure to exercise, nor delay in exercising, any right, remedy or power under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy or power under this Agreement preclude any other or further exercise thereof, or the exercise of any other right, remedy or power provided herein or by law or in equity.

62. Further Assurances. Each of the Parties agrees to execute such other documents and to take such other action as may be reasonably necessary to further the purposes of this Agreement.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be effective as of the last date of its full execution, and it shall be effective on the Effective Date.

SCOTT M. SEIDEL AS CHAPTER 7 TRUSTEE OF THE ESTATE OF WITH PURPOSE, INC.

By: ____________________
Name: Scott M. Seidel
Title: Trustee

GLORIFI ACQUISITIONS, LLC

By: ____________________
Name: Richard L. Jackson
Title: Chief Executive Officer

respective heirs, executors, administrators, conservators, plan administrators, agents, trustees, servants, employees, committees, beneficiaries, predecessors, successors (including any successor chapter 7 trustee), attorneys, insurers, transferees, and assigns.

61. Amendments and Waivers. Any amendment to this Agreement shall be in writing and shall conform to the same formalities as exhibited in this Agreement. No failure to exercise, nor delay in exercising, any right, remedy or power under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy or power under this Agreement preclude any other or further exercise thereof, or the exercise of any other right, remedy or power provided herein or by law or in equity.

62. Further Assurances. Each of the Parties agrees to execute such other documents and to take such other action as may be reasonably necessary to further the purposes of this Agreement.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be effective as of the last date of its full execution, and it shall be effective on the Effective Date.

SCOTT M. SEIDEL AS CHAPTER 7 TRUSTEE OF THE ESTATE OF WITH PURPOSE, INC.

By: ____________________
Name: Scott M. Seidel
Title: Trustee

GLORIFI ACQUISITIONS, LLC

By: ____________________
Name: Richard L. Jackson
Title: Chief Executive Officer

**EXHIBIT A**

**FORM OF APPROVAL ORDER**

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed January 24, 2025**

Michelle V. Larson

**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 23-30246-mvl-7 |
| WITH PURPOSE, INC., | § | |
| | § | (Chapter 7) |
| Debtor. | § | |

## ORDER GRANTING TRUSTEE'S MOTION FOR APPROVAL OF COMPROMISE AND SETTLEMENT WITH, AND SALE TO, JACKSON INVESTMENT GROUP, LLC

CAME ON FOR HEARING the *Trustee's Motion for Approval of Compromise and Settlement Under Bankruptcy Rule 9019 and Sale of Assets* [docket no. 258] (the "Motion"), filed by Scott M. Seidel (the "Trustee"), the duly appointed Chapter 7 trustee of With Purpose, Inc. (the "Debtor"), the debtor in this bankruptcy case (the "Bankruptcy Case"), and of its bankruptcy estate (the "Estate"). By the Motion, the Trustee requests the Court's approval of the *Agreement* attached as Exhibit A to the Motion and introduced into evidence at said hearing (the "Agreement") between the Trustee and GloriFi Acquisitions, LLC (the "Agent"), as part of an overall settlement (the "Proposed Settlement") between the Trustee and Jackson Investment Group, LLC ("JIG").

Capitalized terms used in this Order and not defined herein have the meanings assigned to them in the Agreement. The Trustee provided proper, timely, adequate and sufficient notice of, and a fair and reasonable opportunity to object and be heard, with respect to the Motion and the hearings related thereto.

On January 22, 2025, the Court entered its *Memorandum Opinion Denying Conversion to Chapter 11 and Granting the Trustee's Compromise with Jackson Investment Group Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure* [docket no. 396] (the "Memorandum Opinion"). For the reasons stated in the Memorandum Opinion,[1] including the Court's core jurisdiction to enter this Order, it is hereby:

ORDERED that the Motion is GRANTED as provided for herein; it is further

ORDERED that any objections to the Motion or the relief requested therein that have not been withdrawn, waived or settled and all reservations of rights are OVERRULED on the merits with prejudice; it is further

ORDERED that the Proposed Settlement is APPROVED; it is further

ORDERED that the Agreement is APPROVED and that it shall govern according to its terms, and that the Trustee is authorized and directed to immediately execute and deliver the Agreement and all related documents, and thereafter, is authorized without need for further order to implement, effectuate, and perform the Agreement; it is further

ORDERED that the Agreement shall be effective only upon the payment of the $6,100,000.00 consideration under the Agreement to the Trustee, less the $250,000.00 previously

[1] The findings and conclusions of law set forth herein and in the Memorandum Opinion constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the conclusions of law constitute findings of fact, they are adopted as such. The Court's findings also shall include any oral findings of fact and conclusions of law made by the Court on December 6, 2024.

deposited as earnest money, immediately upon which the Trustee shall file a notice of the receipt of such funds with the Court; it is further

ORDERED that, without limiting the generality of the foregoing approval of the Agreement, the Agent shall at all times reasonably and timely consult with the Trustee with respect to material decisions, that are otherwise the Agent's decisions under the Agreement, regarding whether to prosecute Estate causes of action, not to prosecute them, negotiations regarding the same, and all issues related to potentially settling, abandoning, or otherwise disposing of Estate causes of action, which obligation shall be actionable under this Order even if not expressly stated in the Agreement, and which obligation the Agent agrees to pursuant to its signature to this Order below; it is further

ORDERED that the Agent shall have all authority and agency over Estate Causes of Action as provided for in the Agreement, including section 21 thereof, and may appear and be heard in any court, and prosecute any Estate Cause of Action, for and in the name of the Estate, subject to the Joint Prosecution Agreement, the Agreement, and all provisions of this Order applicable to the same; it is further

ORDERED that the $6,000,000.00 payment to the Trustee under section 17 of the Agreement shall be free and clear, unencumbered funds and property of the Estate; it is further

ORDERED that the sale of the following property of the Estate: (i) the Debtor's Estate's rights to the Agent under the Agreement and the Joint Prosecution Agreement; (ii) all rights of the Debtor and the Estate to the name "GloriFi," including in any trademark; and (iii) all stock, shares, or similar expressions of equity ownership in each of the Debtor's subsidiaries, shall, pursuant to 11 U.S.C §§ 363(b) and (f) (including but not limited to (f)(4)), be free and clear of all liens, claims, interests, and encumbrances of any kind or type, and the Trustee is authorized and directed to

execute and to deliver to the Agent such documents and instruments as may be prepared by the Agent and as may be reasonably necessary or advisable to evidence such sale, and that all such liens, claims, interests and encumbrances as may exist or be asserted against items (ii) and (iii) in this paragraph shall be adequately protected by attaching to the $100,000.00 payment to the Trustee under section 17 of the Agreement with the same validity, extent, and priority as otherwise exists, but subject to all defenses, avoidance actions, and other rights of the Trustee regarding the same, and that the Trustee may not use any portion of said $100,000.00 pending further order of the Court; it is further

ORDERED that the foregoing sale of property of the Estate within the meaning of 11 U.S.C. § 541(a) shall be without warranty and on an "as is, where is" basis; it is further

ORDERED that effective as of the closing date for the Agreement, the sale and assignment of the purchased Estate property to the Agent shall constitute a legal, valid and effective transfer, notwithstanding any requirement for approval or consent by any person, and will vest the Agent with all right, title and interest of the Debtor and Trustee in and to the purchased Estate property, free and clear of all liens, claims, interests and encumbrances of any kind or type pursuant to 11 U.S.C. § 363(f); it is further

ORDERED that all parties-in-interest, including each creditor, are COMMANDED and ENJOINED from interfering in any way with, or contesting the ownership of, or asserting any liens, claims, interests, and encumbrances against, the Agent or as to the purchased Estate property, and all persons or entities in possession or control of any of the purchased Estate property are directed to surrender possession or control to the Agent on the Agreement closing date or as soon thereafter as able; it is further

ORDERED that the provisions of this Order authorizing the sale and transfer of the purchased Estate property shall be self-executing, and: (i) all liens, claims, interests, and encumbrances on the purchased Estate property shall be unconditionally released, discharged and terminated as to the Agent and the purchased Estate property; (ii) neither the Trustee nor the Agent shall be required to execute or file releases, termination statements, assignments, consents or other instruments in order to effectuate, consummate or implement the provisions of this Order; and (iii) the Trustee and Agent shall be authorized, but not directed, to file any such releases, termination statements, assignments, consents or other instruments in any jurisdiction to record the release, discharge and termination of the liens, claims, interests, and encumbrances on the purchased Estate property pursuant to the terms of this Order including filing, registering or otherwise recording a certified copy of this Order which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all liens, claims, interests, and encumbrances on the purchased Estate property; it is further

ORDERED that all governmental units are COMMANDED and ORDERED to effectuate the sale of the purchased Estate property including, if necessary, to accept for filing or recording this Order and any reasonably appropriate document or instrument from the Agent evidencing such sale, and this Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, local, tribal or foreign government agency, department or office; it is further

ORDERED that any proceeds or recoveries that may be collected by Agent, including with respect to the payment of any Special Counsel's (as defined in the Agreement) fees or expenses and including with respect to the Preference (as defined in the Agreement), shall be property of the Estate, subject to the rights of the Agent thereto and subject to alleged security interests and

Case 23-30246-mvl7 Doc 390 Filed 01/21/25 Entered 01/21/25 15:01:30 Desc Main Document Page 6 of 9

liens that may exist, and the Agent shall account to the Trustee and the Estate for all such proceeds or recoveries and may not effectuate a setoff against the same without approval of the Court; it is further

ORDERED that the Preference to be paid to the Agent, is fair and reasonable, and is APPROVED, without need for further application or order; it is further

ORDERED that, with respect to the Agent Expenses as provided in section 35 of the Agreement, the Court shall retain exclusive jurisdiction to determine any disputes regarding same, and that any of the Trustee or the Agent may seek one or more orders from this Court determining the same; it is further

ORDERED that the Agent shall have unavoidable, first-priority and perfected security interests and liens in all Unencumbered Net Proceeds (which, for the avoidance of doubt, does not include any of the $6,100,000.00 paid to the Trustee under section 17 of the Agreement), and unavoidable, second-priority and perfected security interests in all Encumbered Net Proceeds, as provided for in section 36 of the Agreement, without need for recording any U.C.C. financing statements, but which statements the Agent may record notwithstanding the automatic stay and without need for further order; it is further

ORDERED that, section 38 of the Agreement notwithstanding, the Trustee may not distribute any of the Unencumbered Net Proceeds without further order of the Court upon such motion as is appropriate, but the Trustee shall use his reasonable, good faith efforts to seek such relief when there are sufficient Unencumbered Net Proceeds, and the Agent may seek such relief at any time by appropriate motion; it is further

ORDERED that, with respect to any Encumbered Net Proceeds, the same may not be used or distributed by the Trustee pending an adjudication of alleged security interest and lien rights, and subject to the Estate's rights under 11 U.S.C. § 506(c); it is further

ORDERED that, for the avoidance of doubt, nothing in the Agreement or this Order permits the payment of any administrative expense, including professional fees, for which approval of the Court is otherwise required, unless and until such approval is otherwise sought and obtained as is otherwise appropriate; it is further

ORDERED that nothing in the Memorandum Opinion or this Order determines or prejudices any asserted security interest or lien against any Estate cause of action, and that all such alleged security interests and liens, as well as all defenses, avoidance actions, and other issues and claims related to the same are fully preserved; it is further

ORDERED that Claim No. 45, filed by JIG, is ALLOWED as a general unsecured claim in the amount of $10,000,000.00; it is further

ORDERED that, for the avoidance of doubt, the retention of Special Counsel (as defined in the Agreement) shall be subject to such approval by the Court as is otherwise appropriate; it is further

ORDERED that, for purposes of the investigation, prosecution, and potential recovery of Estate claims under the Agreement, the Trustee and the Agent shall share attorney-client and attorney work-product privileges with the Special Counsel; it is further

ORDERED that, for the avoidance of doubt, the Court's approval of the Agreement is *in toto* and the failure to specifically recite any provision of the Agreement in this Order in no way diminishes its effectiveness; it is further

ORDERED that the Agent is not a successor to, alter ego of or continuation of the Debtor under any theory of law or equity; it is further

ORDERED that the Agent is not assuming, nor be deemed to have assumed, any liability or obligation of the Debtor or its Estate; it is further

ORDERED that the automatic stay pursuant to 11 U.S.C. § 362 is hereby modified to the extent necessary, without further order of the Court, to allow the Agent to deliver any notice provided for in the Agreement and to take any and all actions permitted or required under the Agreement in accordance with the terms and conditions thereof; it is further

ORDERED that the Agent is a good-faith purchaser within the meaning of 11 U.S.C. § 363(m) and is entitled to the protections afforded thereby, and neither the Trustee nor the Agent have engaged in any conduct that would cause or permit the Agreement or any of the transactions contemplated thereby to be avoided or subject to monetary damages under 11 U.S.C. § 363(n), or that would prevent the application of 11 U.S.C. §§ 363(m) or 364(e); it is further

ORDERED that to the extent this Order is inconsistent with any prior order or pleading in this Chapter 7 case, the terms of this Order shall govern. To the extent there is any inconsistency between the terms of this Order, the Memorandum Opinion, the December 6, 2024 preliminary oral bench ruling, and the terms of the Asset Purchase Agreement, the terms of this Order shall govern; it is further

ORDERED that this Order constitutes a final order within the meaning of 28 U.S.C. § 158(a), and notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), and pursuant to Bankruptcy Rules 7062 and 9014, and any applicable local rules, this Order shall not be stayed and shall be effective and enforceable immediately upon its entry, and time is of the

essence in closing the transactions referenced herein in order to preserve value for the Estate, and Trustee and Agent are hereby authorized to close the Agreement as soon as practicable; it is further

ORDERED that the Court shall retain jurisdiction over the Agreement and the parties to the Agreement in full, including to interpret and to enforce the Agreement, which jurisdiction shall be core, including to supervise the Agent, grant relief to the Agent, control all funds and proceeds collected by the Agent, to approve compromises reached by the Agent as provided for in the Agreement, and to remove the Agent as provided for in the Agreement.

### END OF ORDER ###

AGREED:

| | |
|---|---|
| **MUNSCH HARDT KOPF & HARR, P.C.**<br><br>By: /s/ Davor Rukavina<br>Davor Rukavina, Esq.<br>Texas Bar No. 24030781<br>Thomas D. Berghman<br>Texas Bar No. 24082683<br>Brenda L. Funk<br>Texas Bar No. 24012664<br>Conor P. White<br>Texas Bar No. 24125722<br>4000 Ross Tower<br>500 N. Akard Street<br>Dallas, Texas 75201-6659<br>Telephone: (214) 855-7500<br>Facsimile: (214) 855-7584<br>Email: drukavina@munsch.com<br><br>**COUNSEL FOR SCOTT SEIDEL, CHAPTER 7 TRUSTEE** | By: Paul M. Rosenblatt *(w/permission)*<br><br>**KILPATRICK TOWNSEND & STOCKTON LLP**<br><br>Paul M. Rosenblatt, Esq.<br>Northern District of Texas Bar No. 614522GA<br>1100 Peachtree Street NE, Suite 2800<br>Atlanta, GA 30309-4528<br>-and-<br>2001 Ross Avenue<br>Suite 4400<br>Dallas, TX USA 75201<br>Telephone: (404) 815-6321<br>Facsimile: (404) 541-3373<br>Email: prosenblatt@kilpatricktownsend.com<br><br>**COUNSEL TO JACKSON INVESTMENT GROUP, LLC AND GLORIFI ACQUISITIONS, LLC** |

# EXHIBIT B

## JOINT PROSECUTION AGREEMENT

*EXECUTION VERSION*

# JOINT PROSECUTION AGREEMENT

This JOINT PROSECUTION AGREEMENT (this "Joint Prosecution Agreement"), dated as of January 28, 2025, is made between Scott Seidel as Chapter 7 Trustee for the Estate of With Purpose, Inc., a Delaware Corporation (the "Trustee") and GloriFi Acquisitions, LLC, a Georgia Limited Liability Company (the "Agent").

## RECITALS

A. WHEREAS, the Trustee and Agent have entered into that certain Agreement, executed as of January 28, 2025 (the "Agreement"), pursuant to which the Trustee and Agent have agreed to enter into this Joint Prosecution Agreement to prosecute the Estate Causes of Action. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Agreement.

B. WHEREAS, the Agreement contemplates that prior to the Effective Date of the Agreement, the Trustee and Agent will enter into this Joint Prosecution Agreement to, among other things, pursue the Estate Causes of Action on behalf of and in the name of the Trustee and the Estate.

C. WHEREAS, the Agreement further contemplates that this Joint Prosecution Agreement shall provide for and account for costs incurred in the prosecution of the Estate Causes of Action borne by the Estate; and

D. WHEREAS, the Agreement further contemplates that this Joint Prosecution Agreement shall provide for a distribution of the proceeds from the Estate Causes of Action.

THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## AGREEMENT

1. The foregoing recitals are incorporated herein as if fully set forth herein.

2. The Trustee hereby appoints the Agent as the exclusive agent of the Trustee to investigate, commence, prosecute, manage public relations, settle, and liquidate each of the Estate Causes of Action, in each case, in the name of the Trustee, including, for the avoidance of doubt, substituting Trustee as a party in the Georgia Litigation and adding Trustee as party in the Delaware Litigation, filing additional claims including, but not limited to, breach of fiduciary duty and malpractice and/or adding or substituting Trustee as a party in any other existing litigation or filing new litigation consistent with the terms of this Joint Prosecution Agreement seeking to recover more than a billion dollars for the Estate; *provided, however*, that any settlement greater than $5 million shall, to the extent necessary to effect such settlement, be approved by the Bankruptcy Court pursuant to Bankruptcy Rule 9019 and any applicable Local Rule. Major decisions are limited to non-suiting, dismissing, or settling Estate Causes of Action; and notwithstanding anything herein to the contrary, the Agent shall at all times

reasonably and timely consult with the Trustee with respect to material decisions regarding whether to prosecute Estate causes of action, not to prosecute them, negotiations regarding the same, and all issues related to potentially settling, abandoning, or otherwise disposing of Estate Causes of Action.

3. Subject to the limitations of paragraph 2, the Agent is authorized to investigate, commence, prosecute, settle, and liquidate the Estate Causes of Action, or any portion thereof, in the sole discretion of Agent without further approval from Trustee or the Court, except as explicitly set forth in the Approval Order or the Agreement.

4. For the avoidance of doubt, nothing contained in this Joint Prosecution Agreement shall be construed to obligate the Agent to investigate, commence, prosecute settle, or liquidate any one of the Estate Causes of Action.

5. All proceeds derived from the investigation, commencement, prosecution, settlement, or liquidation of each of the Estate Causes of Action shall be payable and distributed to the Estate and paid consistent with the terms of the Agreement and Approval Order.

6. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns; *provided, however*, that neither party hereto shall be permitted to assign its interest in this Joint Prosecution Agreement without the prior written consent of the other party.

7. This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of Texas, without regard to the laws of any other jurisdiction that might be applied because of the conflicts of laws principles of the State of Texas.

8. This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which, when taken together, shall constitute one and the same instrument.

*[The remainder of this page has been intentionally left blank.]*

IN WITNESS WHEREOF, the parties have executed this Joint Prosecution Agreement as of the date first written above.

SCOTT M. SEIDEL AS CHAPTER 7 TRUSTEE OF THE ESTATE OF WITH PURPOSE, INC.

By: ______________________
Name: Scott M. Seidel
Title: Trustee

GLORIFI ACQUISITIONS, LLC

By: ______________________
Name: Richard L. Jackson
Title: Chief Executive Officer

IN WITNESS WHEREOF, the parties have executed this Joint Prosecution Agreement as of the date first written above.

SCOTT M. SEIDEL AS CHAPTER 7 TRUSTEE OF THE ESTATE OF WITH PURPOSE, INC.

By: ____________________
Name: Scott M. Seidel
Title: Trustee

GLORIFI ACQUISITIONS, LLC

By: ____________________
Name: Richard L. Jackson
Title: Chief Executive Officer