Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas D. Berghman, Esq.
Texas Bar No. 24082683
Conor P. White, Esq.
Texas Bar No. 24125722
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 4000
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

ATTORNEYS FOR
SCOTT M. SEIDEL, TRUSTEE

Chase J. Potter
Texas State Bar No. 24088245
potter@imcplaw.com
Joshua L. Shepherd
Texas State Bar No. 24058104
shepherd@imcplaw.com
Jesse A. Okiror
Texas State Bar No. 24065843
jesse@imcplaw.com
IACUONE MCALLISTER POTTER PLLC
Energy Square One
4925 Greenville Ave., Suite 1112
Dallas, Texas 75206
(214) 432-1536 – Telephone

COUNSEL FOR THE AGENT AND
SPECIAL COUNSEL FOR TRUSTEE

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Chapter 7** |
| **WITH PURPOSE, INC.,** | § | |
| | § | **Case No. 23-30246-mvl-7** |
| **Debtor.** | § | |

# TRUSTEE'S NOTICE OF INTENT TO RETAIN EXPERTS AND MOTION TO PAY ASSOCIATED EXPENSES

**NO HEARING WILL BE CONDUCTED HEREON, AND ANY HEARING SCHEDULED HEREON MAY BE CANCELLED WITHOUT FURTHER NOTICE, UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT, 1100 COMMERCE STREET, SUITE 1254, DALLAS, TEXAS 75242 BEFORE CLOSE OF BUSINESS ON AUGUST 12, 2026, WHICH IS AT LEAST 21 DAYS FROM THE DATE OF SERVICE HEREOF.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.**

**IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING**

**THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN, AND THE HEARING SCHEDULED ON THIS MOTION MAY BE CANCELLED, WITHOUT FURTHER NOTICE.**

TO THE HONORABLE MICHELLE V. LARSON,
UNITED STATES BANKRUPTCY JUDGE:

Scott M. Seidel (the "Trustee"), the duly appointed chapter 7 trustee in the above-captioned bankruptcy case (the "Bankruptcy Case"), files this *Notice of Intent to Retain Experts and Motion to Pay Associated Expenses* (the "Motion"), respectfully stating as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. BACKGROUND

2. On February 8, 2023 (the "Petition Date"), With Purpose, Inc. (the "Debtor") filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code[1], thereby initiating the Bankruptcy Case and creating its bankruptcy estate (the "Estate").

3. On January 24, 2025, the Court entered its *Order Granting Trustee's Motion for Approval of Compromise and Settlement With, and Sale To, Jackson Investment Group, LLC* [Dkt. No. 399] (the "9019 Order"), thereby approving the *Agreement* [Dkt. No. 409-1] (the "JIG 9019") between the Trustee and GloriFi Acquisitions, LLC (the "Agent").

4. Thereafter, by Order entered on May 22, 2025 [Dkt. No. 537], the Court approved the Trustee's retention of the law firm of Iacuone McAllister Potter PLLC ("Special Counsel" or "IMcP"), as special counsel to the Trustee for the Estate.

[1] 11 U.S.C. §§ 101, *et seq.*

5. Represented by Special Counsel, the Trustee instituted multiple different adversary proceedings against multiple different defendants in order to pursue valuable Estate causes of action. Whether pending before this Court, the District Court, or in arbitration, there remain many separate and active proceedings (the "Litigation").

## III. RELIEF REQUESTED

6. By this Motion, the Trustee (i) provides Notice that Trustee intends to retain those experts necessary to assist the Trustee, the Agent, and Special Counsel with the prosecution of the Litigation, and (ii) seeks the authority to transfer a total of $500,000.00 to Special Counsel (the "Expert Funds"), to be held in trust by the Special Counsel, and the Expert Funds used solely for payment of the associated expert fees and costs as expenses of the Estate.

## IV. ARGUMENTS AND AUTHORITIES

### A. Notice of Intent to Retain Experts

7. Due to the nature of the claims and causes of action, the Trustee's prosecution of the Litigation will necessitate the retention of various experts (collectively, the "Experts"), and time is of the essence in securing the Experts' services, most if not all of whom require retainers and timely monthly payments for the Experts' services. It is anticipated that these Experts will address the following subject matters:

a. The nature, quality, functionality, and completeness of software, source code, engineering, and system architecture developed by various defendants in the Litigation; whether defendants' work product conformed to the applicable specifications, requirements, and accepted professional and industry standards for software development of this type; the nature and extent of any defects, deficiencies, or failures in that work product; and the objective value of the work

product actually delivered relative to the amounts the Debtor was charged and paid.

b. Whether the conduct of certain law firms that represented the Debtor conformed to the applicable standards and rules of professional conduct and ethics governing conflicts of interest and their duties owed to the Debtor;

c. The nature and amount of damages suffered by the Debtor and its estate as a result of the conduct and transactions at issue in the Litigation;

d. The financial condition of the Debtor at the time of certain transfers to various defendants in the Litigation;

e. Whether the conduct of certain Defendants in the Litigation conformed to fiduciary duties owed to the Debtor and standards of corporate governance; and

f. Any other matter that is necessary for the Trustee to prosecute the Litigation.

8. As is clear, rather than the underlying bankruptcy and its administration of the Estate, these Experts will be unique to one or more of the proceedings that comprise the Litigation. In such instances, Courts have routinely held that such experts are not "professional persons" within the meaning of section 327(a) of the Bankruptcy Code, and thus require no prior court approval for their retention.

9. For example, in *Cyrus II*, the Chapter 7 trustee filed a notice -- rather than an application to employ under section 327(a) -- disclosing the retention of seven testifying experts in an adversary proceeding prosecuting alter-ego, fraudulent transfer, and breach of fiduciary duty claims on behalf of the estate. *In re Cyrus II Partnership*, 2008 WL 3003824 (Bankr. S.D. Tex. July 31, 2008). Judge Isgur held that the experts need not be retained as "professional persons" under section 327 because that phrase is reserved for those whose services are *central* to the administration of the estate, and expert opinions offered in adversary litigation do not meet that

standard. *Id.* at *3–6.

10. Indeed, the term "professional persons," as used in section 327(a) "…is a term of art reserved for those persons who play an intimate role in the reorganization of a debtor's estate." *In re Johns-Manville Corp.*, 60 B.R. 612, 619 (Bankr. S.D.N.Y. 1986). As recognized by the *Johns-Manville* Court:

> The catch all language "or other professional persons" cannot be considered other than in the context of the intimate relationship of the player to services peculiar to the administration of the reorganization process. To hold otherwise opens the door to unnecessary court involvement in potentially absurd hiring situations. … The penumbra of the § 327(a) term "other professional persons" is quite obviously not intended to cover *without limitation* all those persons of education, ability and accomplishment in any calling who may be regarded as professionals based upon considerations of societal, governmental or academic accreditation, or their own self-esteem.

*Id.* at 620. *See also Matter of Seatrain Lines, Inc.*, 13 B.R. 980, 981 (Bankr. S.D.N.Y. 1981) ("In the context of a debtor proceeding, persons in occupations ordinarily considered professions are not necessarily professionals whose retention by the estate requires court approval. For the purposes of section 327(a), 'professional person' is limited to persons in those occupations which play a central role in the administration of the debtor proceeding.").

11. Applying this standard, courts have consistently found section 327 inapplicable to expert witnesses retained in connection with adversary or collateral litigation. In *Napoleon*, the Chapter 7 trustee's special litigation counsel retained three testifying experts to prosecute a malpractice claim on behalf of the estate. *In re Napoleon*, 233 B.R. 910 (Bankr. D.N.J. 1999). The *Napoleon* Court held that section 327 was not implicated because those experts "in no way assisted the Trustee with the administration of the bankruptcy case." *Id*. at 913–14. Similarly, an accounting firm retained as an expert in collateral intellectual property litigation was not a section 327 professional because "[a]n expert witness is not in the position to formulate strategy or to manage

the estate and the liabilities of the estate" and therefore plays "only a tangential role" in the proceedings. *In re That's Entertainment Mktg. Grp., Inc.*, 168 B.R. 226, 230 (N.D. Cal. 1994); *see also Matter of First Am. Health Care of Ga., Inc.*, 208 B.R. 996, 997–98 (Bankr. S.D. Ga. 1996) (accounting firm retained to provide expert witness services in a collateral criminal proceeding fell "outside the scope of Section 327(a).").

12. There are compelling policy considerations that independently support the conclusion that section 327 is not implicated when retaining experts. First, requiring section 327 approval for expert retention would improperly inject the Court into the management of litigation strategy — an area where the Trustee and Special Counsel are better positioned to exercise their judgment:

> It seems somewhat improper for the Bankruptcy Court to be intimately involved in directing and overseeing litigation which is to be brought before it, or before the District Court. The Trustee and the Attorney for the Trustee are in a better position to evaluate the merits and the possible return to the estate. It therefore appears that this is an area where the Court should maintain some discrete distance if there are not countervailing factors requiring the Court's intrusion. In this way, the Court may avoid the appearance of impropriety, partiality, or influence.

*In re Babcock Dairy Co. of Ohio, Inc.*, 70 B.R. 691, 693 (Bankr. N.D. Ohio 1987). Second, a noticed approval requirement would further create an unjust tactical disadvantage by compelling the Trustee to disclose the identity of its testifying experts to party-opponents earlier than the applicable rules of discovery otherwise require. As the *Babcock* Court further explained:

> Further, a requirement that all expert witnesses be approved by the Court, after notice and hearing, could lead to possible abuse. It has been implied that MMPA's Motion stems from their desire to learn the identity of the Trustee's expert witness at a time when his identity was not otherwise obtainable. Whether that is true in this case or not, it is evident that there is some possibility of abuse if the Trustee can be required, by a party opponent, to disclose the identity of an expert witness at a hearing on the expert's approval.

*Id*. at 694. Third, as this Court has recognized, adversary proceedings constitute traditional civil

litigation, and the bankruptcy court will treat them as the same.

13. In this case, the Trustee has determined that the Expert Funds are necessary for retaining the Experts and necessary for prosecution of the Litigation, and *not* the Trustee's administration of the underlying Bankruptcy Case. The notice provided by this Motion, including the anticipated subject matters on which it is anticipated that the Experts will be retained, is intended to strike a balance between (i) informing the Court and parties of the Trustee's intention with respect to expert retention in the Litigation, without (ii) creating an unjust tactical disadvantage to the Trustee and inappropriately involving the Court in directing litigation.

**B. Payment of Expert Fees as Expenses**

14. The Expert Funds associated with the retention of the Experts constitute expenses incurred in connection with the Litigation. In turn, the terms of the JIG 9019 state: "Expenses and costs incurred by Special Counsel in pursuit of the litigation pursuant to the JPA shall be paid by the Estate ("Special Counsel Expenses"), including from the $6M Payment." [Dkt. No. 409-1, ¶ 34].

15. By this Motion, the Trustee seeks entry of an order, pursuant to section 363(b)(1), approving and authorizing the Trustee to transfer a total of $500,000.00 for use as the Expert Funds of the $6M Payment[2] to Special Counsel, to be held in trust and utilized solely for payment of the associated Expert fees and costs (and retainers), as expenses of the Estate and as common in civil litigation. The Trustee, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). "Section 363 of the Bankruptcy Code addresses the debtor's use of property of the estate and incorporates a business judgment standard. . . . The business judgment standard in section 363 is flexible and encourages discretion."

[2] As that term is defined within the JIG 9019.

*ASARCO, Inc. v. Elliott Mgmt. (In re Asarco, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011).

16. In a case factually similar to the case at bar, a liquidating trustee similarly sought advance authorization to use estate funds to pay the necessary expenses of litigation -- including specifically the fees of legal and financial experts required before suit could be filed. *In re Tubular Techs., LLC*, 372 B.R. 820 (Bankr. D.S.C. 2007). After due consideration, the *Tubular* Court characterized the request as one properly governed by § 363(b)(1), applied the good-business-reason standard, and granted the motion upon finding that pursuit of the underlying litigation was in the best interest of the estate. *Id*. This "good-business-reason" inquiry applied by the *Tubular* Court is, in substance, the same flexible business judgment standard the Fifth Circuit described in *ASARCO* -- and that standard is readily satisfied here.

17. In connection with the prosecution of the Litigation expressly authorized and contemplated under the JIG 9019 for the benefit of the Estate, the Trustee, in consultation with the Special Counsel, has determined that it is necessary to retain the Experts. Due to the sheer scope of the various Litigation, and the multitude of discrete topics to be analyzed, multiple Experts will be necessary. Further, whether due to the amount in controversy, or the technical nature of the subject matter, or both, in many of the proceedings, these Experts will be one of potentially only a handful of individuals across the country with the expertise and experience necessary to engage in the necessary analysis. Securing these individuals as Experts, and doing so in a timely manner, is paramount to the Trustee's prosecution of the various Litigation for the ultimate benefit of the Estate and creditors.

18. Accordingly, the ability to immediately utilize the Expert Funds to engage and pay the Experts represents a sound business purpose and is in the best interests of the Estate. The Expert Funds is fair, reasonable, and appropriate when considering the breadth of the Litigation and the

caliber of the Experts which are necessary. While not a waiver of the Trustee's ability to seek the Court's approval for use of additional amounts in the future, the Expert Funds serve as the current ceiling on the Estate expenses associated with the retention of the Experts. Thus, the Court and parties in interest have clarity on the total funds available to the Trustee, while also providing the Trustee with necessary access to immediately utilize the Expert Funds in connection with those Experts necessary for prosecution of the Litigation.

19. To further protect the Estate in connection with the transfer of the Expert Funds, Special Counsel shall hold the Expert Funds in a segregated trust account and shall use the Expert Funds solely for the payment of Expert fees, costs, and retainers as described herein. Special Counsel shall indemnify and hold harmless the Trustee and the Estate from and against any loss, misappropriation, or misuse of the Expert Funds arising from Special Counsel's negligence, willful misconduct, or breach of the foregoing undertaking. Special Counsel shall further provide the Trustee with an accounting of the Expert Funds upon request and shall promptly return to the Estate any portion of the Expert Funds not used for the purposes described herein.

## V. CONCLUSION AND PRAYER

WHEREFORE, premises considered, the Trustee respectfully requests that this Court enter the Proposed Order: (a) approving the Motion; (b) finding section 327(a) of the Bankruptcy Code inapplicable to the retention of the Experts; (c) authorizing the transfer of a total of $500,000.00 (the Expert Funds) to Special Counsel, pursuant to section 363(b)(1) of the Bankruptcy Code, to be held in trust, and used solely for payment of the fees associated with the retention of the Experts, as expenses of the Estate; (d) directing that Special Counsel indemnify and hold harmless the Trustee and the Estate from and against any loss, misappropriation, or misuse of the Expert Funds, and that Special Counsel provide an accounting of, and return to the Estate, any unused portion of

the Expert Funds; and (e) granting all other and further relief to which the Trustee may be entitled to at law or in equity.

A proposed form of order granting the relief requested herein is attached to this Motion as a separate exhibit.

**[*Remainder of page left intentionally blank*]**

Dated: July 22, 2026

Respectfully submitted,

*/s/ Thomas Berghman*
Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas D. Berghman, Esq.
Texas Bar No. 24082683
Conor P. White, Esq.
Texas Bar No. 24125722
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 4000
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

ATTORNEYS FOR
SCOTT M. SEIDEL, TRUSTEE

**AND**

**CHASE J. POTTER**
Texas Bar No. 24088245
E-Mail: potter@imcplaw.com
**JOSHUA L. SHEPHERD**
Texas State Bar No. 24058104
E-Mail: shepherd@imcplaw.com
**JESSE A. OKIROR**
Texas State Bar No. 24065843
E-Mail: jesse@imcplaw.com

**IACUONE MCALLISTER POTTER PLLC**
Energy Square One
4925 Greenville Ave., Suite 1112
Dallas, Texas 75206
Telephone: (214) 432-1536

**COUNSEL FOR THE AGENT AND**
**SPECIAL COUNSEL FOR TRUSTEE**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 21, 2026, he caused true and correct copies of the foregoing document to be served (i) via the Court's CM/ECF system on all parties entitled to notice thereby, and (ii) via first-class United States mail, postage prepaid, upon the parties identified on the attached service list who are not registered CM/ECF participants.

By: *_/s/ Thomas Berghman_*
Thomas D. Berghman